# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIFESCAN INC., and JOHNSON & JOHNSON HEALTH CARE SYSTEMS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> JEFFREY C. SMITH, GEOFFREY S. SWINDLE, STEVEN L. HADLOCK, SAHILY PAOLINE, DAVID GRANT, JUSTIN LEAVITT, BLAINE SMITH, ALISON WISTNER, ADAM KOOPERSMITH & ZB, N.A., <br><br> Defendants. | Civil Action <br> No. 2:17-CV-05552-CCC-CLW <br><br><br> *Filed Electronically* <br><br><br><br> **Return Date:** <br> **February 5, 2018** |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2), FED. R. CIV. P. 12(B)(3), AND FED. R. CIV. P. 12(B)(6).

*Jonathan P. McHenry*
*Leo J. Hurley, Jr.*
*Jeffrey P. Mongiello*
*Connell Foley LLP*
*Harborside 5*
*185 Hudson Street, Suite 2510*
*Jersey City, NJ 07311*
*201.521.1000*
*201.521.0100*
*Attorneys for Defendants, JEFFREY C. SMITH, STEVEN L. HADLOCK, SAHILY PAOLINE, DAVID GRANT, & BLAINE SMITH*

*Of Counsel and On the Brief*:
Jonathan McHenry
Leo J. Hurley, Jr.
*On the Brief:*
Jeffrey P. Mongiello

4230856-1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................ 3

LEGAL ARGUMENT ...................................................................... 8

POINT I ................................................................................ 8

PLAINTIFFS HAVE FAILED TO ARTICULATE A BASIS
FOR PERSONAL JURISDICTION, MANDATING THE
DISMISSAL OF THE AMENDED COMPLAINT PURSUANT
TO FED. R. CIV. P. 12(b)(2).

POINT II .............................................................................. 16

THE DISTRICT OF NEW JERSEY IS NOT A PROPER
VENUE FOR THIS LITIGATION, AND THE AMENDED
COMPLAINT MUST BE DISMISSED PURSUANT TO FED. R.
CIV. P. 12(b)(3).

POINT III ............................................................................. 21

THE AMENDED COMPLAINT MUST BE DISMISSED
PURSUANT TO FED. R. CIV. P. 12(b)(6) AS IT FAILS TO
STATE A SINGLE CLAIM UPON WHICH RELIEF MAY BE
GRANTED.

A.      Plaintiffs Failed to Plead Any Claim Sounding in
Fraud against Any of the Defendants with the Requisite
Specificity. ....................................................................22

1.   Plaintiffs failed to specifically articulate and plead with
particularity their fraud claim, as required by Fed. R. Civ. P.
9(b), and this Court must dismiss the claim. ...................................24

2.   Fed. R. Civ. P. 9(b) and the inadequacies of Plaintiffs'
pleading mandate the dismissal of Plaintiffs' claim for aiding
and abetting fraud. .........................................................26

3.   Plaintiffs' failure to articulate a colorable cause of action
sounding in fraud is fatal to their claim of conspiracy to
commit fraud. ..............................................................27

i

# TABLE OF CONTENTS

B.      Plaintiffs' Failure to Articulate Facts Showing That They Directly Conferred a Benefit Upon Defendants Mandates the Dismissal with Prejudice of the Unjust Enrichment Claim....................29

C.      Because No Relationship Between Plaintiffs and Defendants Has Been Alleged, Plaintiffs' Claim for Negligent Misrepresentation Must Be Dismissed with Prejudice.................................33

D.      Plaintiffs Have Failed to State a Colorable Claim of Tortious Interference Against Defendants, and the Court Must Dismiss the Count...........................................................................................37

CONCLUSION ..................................................................................... 40

4230856-1

# TABLE OF AUTHORITIES

## *Cases*

Alin v. Am. Honda Motor Co., No. 08-4825, 2010 U.S. Dist.
  LEXIS 32584, at *40 (D.N.J. Mar. 31, 2010) ........................................31

Am. Corp. Soc'y v. Valley Forge Ins. Co., 424 F. App'x 86, 90
  (3d Cir. 2011) ...............................................................................28

Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 698
  (D.N.J. 2011) ....................................................................... 10, 25, 30

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ...................................... 21, 36

Banco Popular N. Am. v. Gandi, 876 A.2d 253, 263 (N.J. 2005) ..........................28

Barr Labs., Inc. v. Bolar Pharm. Co., No. 91-4374, 1992 U.S.
  Dist. LEXIS 22882, at *7 (D.N.J. Dec. 23, 1992)................................38

Bockman v. First Am. Mktg. Corp., 459 F. App'x 157, 160 (3d
  Cir. 2012)....................................................................................16

C.O. Truxton, Inc. v. Blue Caribe, Inc., No. 14-4231, 2014 U.S.
  Dist. LEXIS 168457, at *16 (D.N.J. Dec. 5, 2014)...................... 18, 19

Cafaro v. HMC, No. 07-2793, 2008 U.S. Dist. LEXIS 71740, at
  *24 (D.N.J. Sep. 5, 2008) ........................................................29

Canadian Nat'l Ry. v. Vertis, Inc., 811 F. Supp. 2d 1028, 1034
  (D.N.J. 2011) ...............................................................................30

Cerciello v. Canale, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) .........................9, 11

CLP Packaging Sols. v. Sports Pouch Bev. Co., No. 07-1532,
  2008 U.S. Dist. LEXIS 39868, at *9 (D.N.J. May 15, 2008) ..............................19

Cooper v. Samsung Elecs. Am., Inc., No. 07-3853, 2008 U.S.
  Dist. LEXIS 75810, at *29-30 (D.N.J. Sep. 29, 2008).........................31

Cottman Transmission Sys. v. Martino, 36 F.3d 291, 294-95
  (3d Cir. 1994) ....................................................................... 16, 17

Database Amer., Inc. v. Bellsouth Advertising & Pub. Corp.,
  825 F. Supp. 1195, 1209 (D.N.J. 1993) .........................................9, 10

# TABLE OF AUTHORITIES

DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d
Cir. 1981)............................................................................................8

DiGiorgio Corp. v. Mendez & Co., 230 F. Supp. 2d 552, 564-
65 (D.N.J. 2002) ................................................................................37

Dist. 1199P Health & Welfare Plan v. Janssen, L.P., 784 F.
Supp. 2d 508, 533 (D.N.J. 2011)......................................................28

Eaton Corp. v. Maslym Holding Co., 929 F. Supp. 792, 796
(D.N.J. 1996) ......................................................................................8

Eberhart v. LG Elecs. USA, Inc., 188 F. Supp. 3d 401, 410
(D.N.J. 2016) ............................................................................... 35, 36

Educ. Testing Serv. v. Katzman, 631 F. Supp. 550, 558 n.10
(D.N.J. 1986) ....................................................................................12

Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 493
(D.N.J. 1998) ....................................................................................39

Fagan v. Fischer, No. 14-7013, 2016 U.S. Dist. LEXIS 10042,
at *52 (D.N.J. Jan. 28, 2016)............................................................26

Fatouros v. Lambrakis, 627 F. App'x 84, 87 (3d Cir. 2015)....................8

Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ............21

Frato v. Swing Staging, Inc., No. 10-5198, 2011 U.S. Dist.
LEXIS 91754, at *10-11 (D.N.J. Aug. 17, 2011) .............................19

Frederico v. Home Depot, 507 F.3d 188, 200-03 (3d. Cir. 2007)............. 22, 24, 29

Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367-68 (N.J.
1997)..................................................................................................24

Goodyear Dunlop Tires Operations S.A. v. Brown, 564 U.S.
915, 928-29 (2011) .........................................................................9, 10

Graco, Inc. v. PMC Glob., Inc., No. 08-1304, 2009 U.S. Dist.
LEXIS 26845, at *68 n.14 (D.N.J. Mar. 31, 2009)...........................38

Gray v. Bayer Corp., No. 08-4716, 2009 U.S. Dist. LEXIS
48181, at *5-6 (D.N.J. June 8, 2009) ................................................28

iv

# TABLE OF AUTHORITIES

Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) .................................................................................... 30

Gretzula v. Camden Cty. Tech. Sch. Bd. of Educ., 965 F. Supp. 2d 478, 488, 491 (D.N.J. 2013) ............................................ 30

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) ................................................................. 9

Hemy v. Perdue Farms, Inc., No. 11-888, 2011 U.S. Dist. LEXIS 137923, at *66-70 (D.N.J. Nov. 30, 2011) ............... 33

Hillsborough Rare Coins, LLC v. ADT LLC, No. 16-916, 2017 U.S. Dist. LEXIS 67113, at *32-33 (D.N.J. May 2, 2017) ........ 28

Hoffman v. Liquid Health, Inc., No. 14-1838, 2014 U.S. Dist. LEXIS 90075, at *33 (D.N.J. July 2, 2014) ....................... 33

HS Real Co., LLC v. Sher, 526 F. App'x 203, 206 (3d Cir. 2013) .................................................................................... 9

In re K-Dur Antitrust Litigation, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) ................................................................... 30

Johnson v. Draeger Safety Diagnostics, Inc., No. 13-2439, 2013 U.S. Dist. LEXIS 101188, at *20 (D.N.J. July 19, 2013) ........ 35

Kaufman v. i-Stat Corp., 754 A.2d 1188, 1195 (N.J. 2000) ................ 35

KBZ Commc'ns Inc. v. CBE Techs. LLC, 634 F. App'x 908, 912 n.7 (3d Cir. 2015) ....................................................... 27

Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984) ................................................................................. 11

Kennedy v. Am. Airlines Inc., 195 F. Supp. 3d 646, 657 n.15 (D.N.J. 2016) ................................................................... 37

Kronfeld v. First Jersey Nat. Bank, 638 F. Supp. 1454, 1465 (D.N.J. 1986) ................................................................... 34

Leroy v. Great W. United Corp., 443 U.S. 173, 183-84 (1979) ............... 16

v

# TABLE OF AUTHORITIES

Lightning Lube Lightning Lube, Inc. v. Witco Corp., 4 F.3d
    1153, 1167 (3d Cir. 1991) ............................................................ 37, 39

Lorven Techs., Inc. v. Insight Techs., Inc., No. 16-7397, 2017
    U.S. Dist. LEXIS 95255, at *6-7 (D.N.J. June 21, 2017) ...................................17

Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004) ........................... 24, 25, 35

Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494,
    505 (D.N.J. 2009) ....................................................................... 30, 32

Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983
    F.2d 551, 554 (3d Cir. 1992) ...........................................................9

Metro. Life Ins. Co. v. Bank One, N.A., No. 03-1882, 2012
    U.S. Dist. LEXIS 137119, at *17-18 (D.N.J. Sep. 25, 2012) ..............................18

Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d
    494, 511 (D.N.J. 1999) .................................................................25

O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316
    (3d Cir. 2007); Fed. R. Civ. P. 4(k) ................................................8, 10

People Express Airlines v. Consol. Rail Corp., 495 A.2d 107,
    112 (N.J. 1985) ....................................................................... 34, 35

Princeton Ophthalmic, LLC v. Corinthian Ophthalmic, Inc., No.
    14-5485, 2017 U.S. Dist. LEXIS 167889, at *40 (D.N.J. Oct.
    10, 2017) ...............................................................................33

Prudential Ins. Co. of Am. v. Bank of Am., 14 F. Supp. 3d 591,
    616 (D.N.J. 2014) ......................................................................26

Rapid Models & Prototypes, Inc. v. Innovated Sols., 71 F.
    Supp. 3d 492, 505-06 (D.N.J. 2014) ...................................................34

Reed v. Scheffler, 218 F. Supp. 3d 275, 279 (D.N.J. 2016) .................................21

Rehrer v. Atiyeh, No. 14-8031, 2015 U.S. Dist. LEXIS 129034,
    at *5 (D.N.J. Sep. 25, 2015) ...........................................................10

# TABLE OF AUTHORITIES

Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc., No.
    17-949, 2017 U.S. Dist. LEXIS 150853, at *16-24 (S.D. Ind.
    Sep. 18, 2017) ............................................................................ 12, 23

Roll v. Singh, No. 07-4136, 2008 U.S. Dist. LEXIS 50125, at
    *61-62 (D.N.J. June 26, 2008) ...............................................34

Rush v. Savchuk, 444 U.S. 320, 332 (1980) ...................................... 10, 11

Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,
    742 F.2d 786, 791 (3rd Cir. 1984) ..........................................25

State of N.J., Dep't of Treasury, Div. of Inv. ex rel. McCormac
    v. Qwest Commc'ns Int'l, Inc., 904 A.2d 775, 784 (N.J.
    Super. Ct. App. Div. 2006) ......................................................26

Trans USA Prods. v. Howard Berger Co., No. 07-5924, 2008
    U.S. Dist. LEXIS 61069, at *24 (D.N.J. Aug. 4, 2008) .......................38

Van v. Borough of N. Haledon, No. 05-5595, 2009 U.S. Dist.
    LEXIS 52221, at *27 (D.N.J. June 17, 2009) .......................37

Victory Int'l v. Perry Ellis Int'l, No. 07-0375, 2008 U.S. Dist.
    LEXIS 634, at *16 (D.N.J. Jan. 2, 2008) ...............................14

VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J.
    1994) .......................................................................................30

Walden v. Fiore, 134 S. Ct. 1115, 1122, 1124 (2014) .......................... 10, 11

Westmont Dev. Grp., LLC v. Twp. of Haddon, 625 F. Supp. 2d
    178, 198 (D.N.J. 2009) .............................................................35

Wiatt v. Winston & Strawn LLP, 838 F. Supp. 2d 296, 317
    (D.N.J. 2012) ........................................................................ 28, 29

Zodda v. Nat'l Union Fire Ins. Co., No. 13-7738, 2015 U.S.
    Dist. LEXIS 26206, at *25 (D.N.J. Mar. 4, 2015) ................22

# TABLE OF AUTHORITIES

***Statutes***

28 U.S.C. § 1332 .................................................................................8

28 U.S.C. § 1391 ........................................................................... 17, 19

***Rules***

Federal Rule of Civil Procedure 9(b) .................................................. *passim*

Federal Rule of Civil Procedure 12(b) ................................................. *passim*

New Jersey Court Rule 4:4-4 ...............................................................8

## **PRELIMINARY STATEMENT**

Whether by mistake or by design, Plaintiffs' Amended Complaint is written as if it seeks redress for the allegedly wrongful conduct of a corporate entity. Plaintiffs, however, have filed suit against individual employees of a corporate entity, and not against any corporation.

Throughout the Amended Complaint, Plaintiffs equate employees with their corporate employer and its subsidiaries, treating them as interchangeable and indistinguishable. Apparently, Plaintiffs hope that this Court will substitute these individual Defendants as stand-ins for their employer and render them liable for conduct that their employer and its subsidiaries are alleged to have engaged in.

Put simply, Plaintiffs have taken potential causes of action against a corporate entity, and have instead, for some reason, and without a legal justification to do so, chosen to sue the individual employees in hopes of holding someone—anyone—accountable of a purportedly "brazen scheme" to defraud them.

In their rush to detail perceived corporate wrongdoing, Plaintiffs neglected to allege the precise conduct or actions taken by any single Defendant that exposes them to liability. While the Amended Complaint is replete with vague accusations formulated in conclusory statements pointed generally at the "Defendants," it never actually articulates any specific conduct engaged in by any individual Defendant for which they can or should be held liable.

As a result of this shoddy and misguided pleading, the Amended Complaint suffers from multiple fatal defects that mandate dismissal.

Without any allegation of specific conduct by any individual Defendant, Plaintiffs have failed to establish that any of the Defendants have purposefully

4230856-1

availed themselves of the jurisdiction of the forum state. As such, this Court cannot exercise personal jurisdiction over these non-resident Defendants.

Without any allegation of specific conduct by any individual Defendant, Plaintiffs cannot demonstrate that substantial events involving Defendants occurred in New Jersey. For this reason, venue is improper in the District of New Jersey.

Without any allegation of specific conduct by any individual Defendant, Plaintiffs have failed to state a claim that gives rise to any cause of action against any Defendant.

The Amended Complaint must be dismissed.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On July 31, 2017, LifeScan, Inc. ("LifeScan") and Johnson & Johnson Health Care Systems, Inc. ("JJHCS") (collectively, "Plaintiffs") filed a twenty-seven (27) page, one hundred and three (103) paragraph Complaint ("the Complaint") in the United States District Court for the District of New Jersey, alleging that Jeffrey C. Smith, Geoffrey S. Swindle, Steven L. Hadlock, and Sahily Paoline are liable to Plaintiffs pursuant to claims of Fraud; Aiding and Abetting Fraud; Unjust Enrichment; and Civil Conspiracy. (Dkt. 1.)

On November 22, 2017, Plaintiffs filed a thirty-three (33) page, one hundred and forty-one (141) paragraph First Amended Complaint ("the Amended Complaint"), alleging that Jeffrey C. Smith, Geoffrey S. Swindle, Steven L. Hadlock, Sahily Paoline, David Grant, Justin Leavitt, Blaine Smith, Alison Wistner, Adam Koopersmith, and Z.B., N.A. are liable to Plaintiffs pursuant to claims of Fraud, including Aiding and Abetting Fraud and Conspiracy to Commit Fraud; Unjust Enrichment; Negligent Misrepresentation; and Tortious Interference. (Dkt. 41.)

LifeScan, a California corporation, is a wholly owned subsidiary of Johnson & Johnson that is engaged in the business of manufacturing and marketing blood-glucose test strips. (Id., ¶ 11.) JJHCS, a New Jersey corporation, is also a wholly owned subsidiary of Johnson & Johnson that "processes and pays claims and rebates submitted by insurance companies in connection with insurance reimbursements paid on products manufactured by Johnson & Johnson subsidiaries, including LifeScan." (Id., ¶ 12.)

Jeffrey Smith is alleged, on information and belief, to be a Utah resident and the former Chief Executive Officer of Alliance Medical Holdings, LLC ("Alliance"). (Id., ¶ 13.)

3

Swindle is alleged, on information and belief, to be a Utah resident; the founder of Alliance; and former Chief Strategy Officer of Alliance. (Id., ¶ 14.)

Hadlock is alleged, on information and belief, to be a Utah resident and the Director of Pharmacy Operations of Alliance. (Id., ¶ 15.)

Paoline is alleged, on information and belief, to be a Utah resident; the Senior Vice President of Pharmacy Operations of Alliance; and former Pharmacist in Charge of Medsource Rx. (Id., ¶ 16.)

Grant is alleged, on information and belief, to be a Utah resident and the General Counsel of Alliance. (Id., ¶ 17.)

Leavitt is alleged, on information and belief, to be a Utah resident and the former Chief Financial Officer of Alliance. (Id., ¶ 18).

Blaine Smith is alleged, on information and belief, to be a Utah resident and the Chief Revenue Officer of Alliance. (Id., ¶ 19.)

Wistner is alleged, on information and belief, to be a Utah resident; a director of Alliance; and Managing Director of Mercato Partners. (Id., ¶ 20.)

Koopersmith is alleged, on information and belief, to be an Illinois resident; a director of Alliance; and partner at the Pritzker Group. (Id., ¶ 21).

ZB, N.A., is alleged to be a national banking association with its principal place of business in Utah. (Id., ¶ 22). Zions First National Bank is a division of ZB. (Id.)

Non-party Alliance is alleged to be a Delaware corporation with its principal place of business in the State of Utah. (Id., ¶ 23.)

The Amended Complaint accuses Defendants of running, through Alliance, "a brazen scheme to defraud Plaintiffs." (Id., ¶ 4.) Plaintiffs allege that Defendants conspired "to obtain blood glucose test strips manufactured by LifeScan and intended for sale only to beneficiaries of healthcare plans that cover test strips under a durable medical equipment benefit ("DME Plans"). Instead, Defendants

4

diverted the test strips for retail sale to beneficiaries of insurance plans that cover test strips under a pharmacy benefit ("Pharmacy Plans")". (Id.) According to Plaintiffs, "[t]est strips paid for by Pharmacy Plans ('Retail Strips') have a substantially higher list price and are reimbursed by insurance at a correspondingly higher rate than test strips paid for by DME Plans ('DME Strips')," and as a result LifeScan issues rebates to Pharmacy Plans but not DME Plans. (Id., ¶ 6.)

Plaintiffs claim that "Defendants, acting through businesses they controlled or finance, obtained the lower-priced DME Strips, sold them to beneficiaries of Pharmacy Plans, and submitted fraudulent insurance claims to the Pharmacy Plans to obtain the higher reimbursement rate for Retail Strips." (Id., ¶ 7.) Plaintiffs contend that Defendants profited as a result of "causing LifeScan to pay substantial rebates to Pharmacy Plans." (Id., ¶ 8.)

Said differently, and at the core of Plaintiffs' claim, is the allegation that "Defendants made and conspired to make over one million false statements since 2009 . . . [and] to obtain the approximately $65 reimbursement insurers pay for Retail Strips instead of the approximately $32 reimbursement (and sometimes as low as $10 reimbursement) that commercial insurers pay for DME Strips." (Id., ¶ 90.)

Plaintiffs allege that "[t]he Alliance Defendants, who are current or former officers or directors of Alliance, actively participated in, provided substantial assistance to, or conspired to further Alliance's foundational practice of fraud." (Id., ¶ 81.)

Plaintiffs assert that Jeffrey Smith "was the driving force behind the fraud." (Id., ¶ 82.) According to Plaintiffs, Jevan Woolley, Alliance Executive Vice President, and Jose Vargas, Alliance's Director of Procurement, have stated that Jeffrey Smith "designed and orchestrated the fraud" by "direct[ing] Mr. Vargas to purchase DME Strips, not Retail Strips, to be sold and reimbursed as Retail

Strips." (Id.) Plaintiffs further allege that Alliance Chief Financial Officer Scott Klossner testified that Jeffrey Smith continued with the fraud after objections were raised to him by other executives and board members. (Id.)

Plaintiffs claim that Hadlock and Paoline "knew of and implemented the complex scheme to build a network of pharmacies to execute the fraudulent insurance claims and conceal Alliance's role from PBMs, Pharmacy Plans, and test strip manufacturers." (Id., ¶¶ 83, 84.) Plaintiffs also allege that Woolley discussed the fraud with Paoline. (Id., ¶ 84.)

Plaintiffs assert that Grant "knew of and implemented the fraudulent scheme and assisted in concealing Alliance's role from PBMs." (Id., ¶ 85.) Plaintiffs claim that Swindle discussed the fraud with Grant, and that after Swindle left the company and signed a confidentiality agreement, Grant sent a letter to Swindle "reminding him of his confidentiality obligations in order to keep him from disclosing the fraud." (Id.; id., ¶ 89.)

Plaintiffs allege that Leavitt and Blaine Smith "knew of and provided substantial assistance for the fraud." (Id., ¶ 86.) Plaintiffs claim that Woolley discussed the fraud with Leavitt and Smith. (Id.)

Plaintiffs allege that Wistner and Koopersmith "became aware that fraud was Alliance's foundational practice no later than June 2015," when Swindle notified them of it. (Id., ¶¶ 87, 88.) Plaintiffs also claim that Wistner and Koopersmith "continued to authorize, supervise, and abet the operation of the business [they] knew to be based on fraud." (Id.)

Plaintiffs further allege an intricate relationship between Zions Bank and Alliance, where according to Plaintiffs, Zions Bank funded Alliance to engage in a fraudulent scheme. (See generally id., ¶¶ 93–109.) For example, Plaintiffs assert, that "[h]aving acknowledged that Alliance's business was premised on fraud, Zions Bank proceeded to structure the Credit Agreement for the express purpose of

6

assisting and enabling this fraud. Indeed, helping Alliance to conceal its widespread fraud was the essential rationale for the Credit Agreement." (<u>Id.</u>, ¶ 100.)

In April 2017, Alliance and many of the Alliance Pharmacies filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas. (<u>Id.</u>, ¶ 78.)

On November 22, 2017, Plaintiffs filed the First Amended Complaint. Defendants Jeffrey Smith, Hadlock, Paoline, Grant, and Blaine Smith (collectively "the Defendants" or "the individual Defendants") have jointly filed this Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6).

7

## LEGAL ARGUMENT

### POINT I

**PLAINTIFFS HAVE FAILED TO ARTICULATE A BASIS FOR PERSONAL JURISDICTION, MANDATING THE DISMISSAL OF THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2).**

Plaintiffs make no specific allegation indicating that suit can properly be brought against Defendants in a New Jersey court. Yet Plaintiffs baldly assert that the Court has personal jurisdiction over each Defendant, who are all pleaded as residents of Utah. Because this Court cannot exercise personal jurisdiction over Defendants, the Amended Complaint must be dismissed.

Pursuant to 28 U.S.C. § 1332, a federal district court may exercise jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. See O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007); Fed. R. Civ. P. 4(k). New Jersey's long-arm statute allows a court to exercise personal jurisdiction over non-resident defendants to the full extent allowed under the due process requirements of the United States Constitution. See N.J.Ct. R. 4:4-4; Eaton Corp. v. Maslym Holding Co., 929 F. Supp. 792, 796 (D.N.J. 1996). Accordingly, a party's amenability to suit in New Jersey "must be judged by Fourteenth Amendment standards." DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the Court must accept as true the allegations in the complaint. Fatouros v. Lambrakis, 627 F. App'x 84, 87 (3d Cir. 2015). For a plaintiff to meet its burden of establishing personal jurisdiction, the plaintiff "must establish[] jurisdictional facts through sworn affidavits or other

8

competent evidence." Cerciello v. Canale, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (quotation omitted).

A defendant's contacts with a forum state could give rise to two types of personal jurisdiction: general jurisdiction and specific jurisdiction. To establish general jurisdiction, a plaintiff must demonstrate that a defendant "engaged in 'continuous and systemic' contacts with the forum state." Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 554 (3d Cir. 1992). On the other hand, a plaintiff seeking to show specific jurisdiction must present evidence demonstrating that "the cause of action arose specifically from defendant's particular activities within the forum state." Id.

General jurisdiction is premised upon a finding that "the defendant has continuous and systematic contacts with the state which are unrelated to the subject matter of the lawsuit." Database Amer., Inc. v. Bellsouth Advertising & Pub. Corp., 825 F. Supp. 1195, 1209 (D.N.J. 1993); see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). A plaintiff seeking to establish general jurisdiction faces a higher burden than is required to establish specific jurisdiction, and "must show significantly more than mere minimum contacts." Id. Neither regular purchases of goods from a forum state nor the sales of goods to a forum state are sufficient, on their own, to subject a defendant to general jurisdiction. Goodyear Dunlop Tires Operations S.A. v. Brown, 564 U.S. 915, 928-29 (2011).

For establishing specific jurisdiction, a plaintiff must demonstrate that three elements have been met. HS Real Co., LLC v. Sher, 526 F. App'x 203, 206 (3d Cir. 2013). First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum. Id. Second, the plaintiff's claims "must arise out of or relate to at least one of the contacts with the forum." Id. (internal citations and quotations omitted). Third, the exercise of jurisdiction

must comport with traditional notions of "fair play and substantial justice." O'Connor, 496 F.3d at 317.

"Because the existence of specific jurisdiction depends on a link between the defendant's activity and the resulting harm, specific jurisdiction is necessarily claim- and defendant-specific." Rehrer v. Atiyeh, No. 14-8031, 2015 U.S. Dist. LEXIS 129034, at *5 (D.N.J. Sep. 25, 2015) (citing Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 698 (D.N.J. 2011)). When there are multiple defendants, a plaintiff must set out each individual defendant's contact with the forum state. See Rush v. Savchuk, 444 U.S. 320, 332 (1980).

Plaintiffs have failed to demonstrate how this Court may exercise general jurisdiction over the Defendants. The Supreme Court has applied general jurisdiction only to non-resident corporate defendants, and not to non-resident individual defendants. See Goodyear, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."). The Amended Complaint is nonetheless devoid of any claim that any of the Defendants had contact with New Jersey outside the allegations of the litigation, which also prevents an exercise of general jurisdiction. See Database Amer., 825 F. Supp. at 1209.

Plaintiffs have not demonstrated that each Defendant is subject to specific jurisdiction. The focus in the specific jurisdiction analysis must be on the Defendants' conduct, and not that of the Plaintiffs or unnamed third parties. Walden v. Fiore, 134 S. Ct. 1115, 1122, 1124 (2014) ("In short, when viewed through the proper lens — whether the defendant's actions connect him to the forum — petitioner formed no jurisdictionally relevant contacts with [the forum state]."). The Amended Complaint failed to make any specific allegation that each of the Defendants purposefully availed themselves of the forum state. Indeed, the

10

Amended Complaint lacks <u>any</u> specificity as to how <u>any</u> individual Defendant purposefully directed activity at New Jersey.

Plaintiffs assert—without elaboration—that the Court has personal jurisdiction over the individual Defendants because they "sold, aided and abetted the sale of, and conspired to sell LifeScan products in the state of New Jersey" and they "further received insurance reimbursements from insurance companies located in the state of New Jersey." (Dkt. 42, ¶ 26.) Plaintiffs also note that JJHCS made payments from New Jersey. (<u>Id.</u>) "But the plaintiff cannot be the only link between the defendant and the forum." <u>Walden</u>, 134 S. Ct. at 1122. The Amended Complaint makes no other reference to New Jersey as the forum state with regards to the individual Defendants or to conduct that they may have engaged in that occurred in New Jersey.

These bald assertions, without any further development, are insufficient to establish that <u>each</u> Defendant had the requisite minimum contacts with New Jersey or that they purposefully directed any activity in the State. The Third Circuit has instructed that "bare pleadings alone are insufficient to withstand a motion to dismiss for lack of personal jurisdiction." <u>Cerciello</u>, 563 F. App'x at 925 n.1 (quotation omitted).

Plaintiffs allege that Alliance sold products in New Jersey and received payment from New Jersey. Plaintiffs' theory seems to be that because the Defendants had worked for Alliance, they have engaged in any conduct that Alliance, as a corporate entity, has engaged in. However, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 781 n.13 (1984). Rather, "[e]ach defendant's contacts with the forum State must be assessed individually." <u>Id.</u> (citing <u>Rush</u>, 444 U.S. at 332). "[A]bsent allegations that the corporate shield is a sham, jurisdiction over the corporation does not subject

11

officers, directors and shareholders of the corporation to personal jurisdiction." Educ. Testing Serv. v. Katzman, 631 F. Supp. 550, 558 n.10 (D.N.J. 1986) (quotation and citation omitted). The Amended Complaint alleges dubious connections between Alliance and its subsidiaries and New Jersey; indeed Plaintiffs only connect themselves to Alliance and its subsidiaries through unnamed third-party diverters and distributors. But the Amended Complaint provides <u>no</u> connection between any of the individual Defendants and New Jersey in any capacity, let alone their personal capacity. No individual Defendant is alleged to have personally received reimbursement from an insurance company for the submission of a claim. The individual Defendants are not the corporate entity.

Plaintiffs' proposed theory of personal jurisdiction was recently rejected by a federal court in a near-mirror image case. Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc., No. 17-949, 2017 U.S. Dist. LEXIS 150853, at *16-24 (S.D. Ind. Sep. 18, 2017). In that case, Roche, an Indiana corporation, brought suit in its home state against various non-resident corporations and individual employees. Roche alleged that the defendants engaged in a fraudulent scheme to purchase blood glucose test-strips manufactured by Roche available only to DME Plans and divert them for sale to beneficiaries of insurance plans that cover test strips under Pharmacy Plans. In so doing, Roche claimed that the defendants arbitraged the difference in price and insurance reimbursement rates between test strips intended for DME Plans and Pharmacy Plans.

The court concluded that it did not have personal jurisdiction over non-resident corporate and individual defendants.[1] The court noted that Roche failed to "allege[] any direct contracts with Indiana" for the defendants. Id. at *20. The

---

[1] Not all defendants moved to dismiss for lack of personal jurisdiction under Fed. R. Civ. Pr. 12(b)(2). But the court granted the motion to dismiss for each defendant that filed a motion on jurisdictional grounds.

4230856-1

court specifically rejected Roche's argument that the defendants "had sufficient contacts with Indiana because they participated in a fraudulent scheme to harm an Indiana company." Id. Instead, the court held that "[t]he mere fact that [a] defendant's conduct affected plaintiffs with connection to the forum State does not suffice to authorize jurisdiction." Id. (quotation omitted). The financial harm to an Indiana pharmaceutical corporation was insufficient to satisfy contact with the forum. Id. at *20-22. The court further noted that some of the defendants did not even have direct contact with Roche at all, but rather worked directly with other entities that were not located in Indiana: "Roche did not allege that it had any direct contact with [certain defendants] and did not allege that any of these defendants had any other contacts with Indiana beyond the harm they ostensibly caused Roche." Id. at *22.

The court further held that it lacked jurisdiction over the individual defendants because Roche improperly attempted to impute the actions of the corporate entities to the individual employees. Id. at *22-24. "[P]ersonal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed." Id. at *22-23 (quotation omitted). Roche needed to allege that the individual employees "have sufficient contacts with Indiana in their personal capacities for this Court to have personal jurisdiction over them." Id. at *23 (emphasis added). The court distinguished the individuals' "actions on behalf of [defendant corporations] in their official capacities," including "participat[ing] in the development and scheme to divert the sale of Roche's DME strips," from "any wrongful conduct by [individual defendants] in their personal capacities." Id. at *24. The former was insufficient to establish personal jurisdiction. And because Roche failed to make any allegations of specific conduct by the individuals in their personal capacities, the court

13

dismissed the claims against the individual defendants for lack of personal jurisdiction. Id.

Likewise, Plaintiffs here have simply made no allegation that any of the individual Defendants availed themselves of the forum state (rather than their corporate employer and its subsidiaries), and the Court cannot exercise specific jurisdiction over the Defendants. See Victory Int'l v. Perry Ellis Int'l, No. 07-0375, 2008 U.S. Dist. LEXIS 634, at *16 (D.N.J. Jan. 2, 2008) (rejecting personal jurisdiction, in part, because Plaintiff was "attempting to bootstrap jurisdiction over [an] individual defendant [] based upon the actions of the . . . corporate defendants"). Not one of the Defendants could reasonably have been expected to be haled into a New Jersey court in their personal capacities.

Even if Plaintiffs' theory of jurisdiction was legally sound, Plaintiffs still have the burden of demonstrating that each individual Defendant took specific actions to establish contacts with New Jersey. Instead, Plaintiffs lump all the individual Defendants together as "the Alliance Defendants" and do not provide one single instance of any single individual having any contact with New Jersey.

Plaintiffs do not allege that any individual Defendant transacted or conducted business in New Jersey or entered into contracts in New Jersey. Plaintiffs do not claim that any individual Defendant ever spoke to or communicated with anyone in New Jersey, either at LifeScan, JJHCS, or elsewhere. There is no indication that any of the Defendants own property in New Jersey or pay taxes in New Jersey. Indeed, the Amended Complaint is bereft of any allegation that any of the Defendants have even stepped foot inside New Jersey. Because the record contains no allegation of contacts with the forum state by any of the Defendants—let alone sufficient minimum contacts to meet due process standards—the Court is unable to exercise specific jurisdiction over any individual Defendant.

Plaintiffs have failed to establish that this Court may exercise personal jurisdiction over any of the individual Defendants, and the Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

15

## POINT II

## THE DISTRICT OF NEW JERSEY IS NOT A PROPER VENUE FOR THIS LITIGATION, AND THE AMENDED COMPLAINT MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(3).

Plaintiffs baldly assert that a substantial part of events occurred in New Jersey, and thus venue is proper in the District. But Plaintiffs do not identify a single event of this purported fraudulent scheme—let alone a substantial portion of events—that actually occurred within the borders of New Jersey.

On a Federal Rule of Civil Procedure 12(b)(3) motion to dismiss for improper venue, the moving party bears the burden of demonstrating that the venue is improper. Bockman v. First Am. Mktg. Corp., 459 F. App'x 157, 160 (3d Cir. 2012). In considering a Rule 12(b)(3) motion, a court must generally accept a complaint's allegations as true, unless contradicted by the defendant's affidavits, and a court may consider facts outside the complaint, but all reasonable inferences must be made in the plaintiff's favor. Id. at 158 n.1.

The purpose of the venue provision is "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." Leroy v. Great W. United Corp., 443 U.S. 173, 183-84 (1979). Thus, as the Third Circuit explained, "the venue provision 'favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be substantial.'" Bockman, 459 F. App'x at 161 (quoting Cottman Transmission Sys. v. Martino, 36 F.3d 291, 294-95 (3d Cir. 1994)).

Allowing this matter to proceed in New Jersey is fundamentally unfair to each individual Defendant because none of them reside in the state. They all happened to work for a company with its principal place of business out of the

16

state, that owned a subsidiary corporation, which may have made sales into New Jersey. Plaintiffs are subsidiaries of a multi-national corporation, Johnson & Johnson, with the means to prosecute this matter anywhere. There is no valid reason to haul the Defendants and any potential witness who worked at Alliance across the country to litigate this matter in New Jersey.

Venue must be proper for each asserted claim in a complaint. Lorven Techs., Inc. v. Insight Techs., Inc., No. 16-7397, 2017 U.S. Dist. LEXIS 95255, at *6-7 (D.N.J. June 21, 2017). Under 28 U.S.C. § 1391(b), the statute governing venue in diversity cases, venue is proper when a plaintiff brings an action in: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

Plaintiffs assert that venue is appropriate in the District of New Jersey pursuant to § 1391(a). (Dkt. 42, ¶ 34.) Plaintiffs appear to be resting their venue argument on § 1391(b)(2) by alleging "a substantial part of the events or omissions giving rise to the claim occurred in this district," or § 1391(b)(3) by alleging "one or more of the Defendants is subject to personal jurisdiction in this district." (See id.)

"The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" Cottman, 36 F.3d at 294. In assessing whether the events or omissions giving rise to the claim are "substantial," "it is necessary to look at the nature of the dispute." Id. at 295. Events or omissions that have only "some

17

tangential connection" with the dispute are not sufficient to support venue under § 1391(b)(2). <u>Id.</u> at 294. "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no relationship to the dispute." <u>Id.</u>

Plaintiffs nakedly assert that a substantial part of events occurred in New Jersey, but they do not identify any specific instance of conduct involving any of the individual Defendants that actually occurred within the state.

For venue purposes, any alleged misrepresentation is deemed to have occurred in the district where the statement was made—even if the statement concerned distributing or selling a product into another state. <u>C.O. Truxton, Inc. v. Blue Caribe, Inc.</u>, No. 14-4231, 2014 U.S. Dist. LEXIS 168457, at *16 (D.N.J. Dec. 5, 2014).

The entire nexus of Plaintiffs' claims are statements, whether fraudulent or misrepresentative, that the individual Defendants allegedly made. Venue in such a situation is only proper where the substantial events occurred, *i.e.* where the statements were made; venue is not appropriate where the statements were received or relied upon. <u>Metro. Life Ins. Co. v. Bank One, N.A.</u>, No. 03-1882, 2012 U.S. Dist. LEXIS 137119, at *17-18 (D.N.J. Sep. 25, 2012) (noting that "[n]umerous courts have transferred claims to districts where the alleged misrepresentations were made, and not where the alleged misrepresentations were received or relied upon"). Inherently problematic of course, is Plaintiffs' failure to identify any actual statements made by an individual Defendant to any individual or entity, in any state, let alone the State of New Jersey.

Plaintiffs allege that "Alliance Defendants fraudulently and knowingly caused JJHCS to make payments from New Jersey." (Dkt. 41, ¶ 26.) But this has no bearing on venue. Venue is not proper in a district where the statements were received or the effects of the statement are felt. <u>C.O. Truxton</u>, 2014 U.S. Dist.

18

LEXIS 168457, at *16.; see also Frato v. Swing Staging, Inc., No. 10-5198, 2011 U.S. Dist. LEXIS 91754, at *10-11 (D.N.J. Aug. 17, 2011) (rejecting argument that plaintiff's fraud and misrepresentation claims arose in New Jersey because that is where he relied on defendants' alleged misrepresentations).

The Amended Complaint contains no allegation that any individual Defendant was ever present in New Jersey, let alone in New Jersey when the alleged fraudulent statements were made. No in-person meeting is alleged to have occurred in New Jersey. See CLP Packaging Sols. v. Sports Pouch Bev. Co., No. 07-1532, 2008 U.S. Dist. LEXIS 39868, at *9 (D.N.J. May 15, 2008). Alliance is headquartered outside the state, and absent evidence otherwise, misrepresentations are presumed to have occurred where business is principally transacted. See C.O. Truxton, 2014 U.S. Dist. LEXIS 168457, at *16.

In fact, it is not clear from the Amended Complaint that any events or omissions actually occurred in New Jersey, let alone that a "substantial part of the events or omissions giving rise to the claim" occurred in the State. As a result, venue is not proper in the District under § 1391(b)(2).

Venue is also not proper under § 1391(b)(3). As discussed, supra, Point I, no Defendant is subject to the Court's personal jurisdiction. Moreover, contrary to Plaintiffs' assertions that venue is proper because "one or more of the Defendants is subject to personal jurisdiction in this district," (dkt. 42, ¶ 34), personal jurisdiction over a defendant is not the sole requirement to invoke venue under this subsection. Section 1391(b)(3) is only applicable when there is personal jurisdiction over at least one defendant and also "there is no district in which an action may otherwise be brought." But Plaintiffs have not alleged that no other district could serve as a proper venue. Nor is there any reason to believe that venue would be improper in every single other federal district. Plaintiffs make blanket

assertions regarding the first requirement of § 1391(b)(3), and simply ignore the second by making no relevant allegation.

Because the District of New Jersey is an improper venue under the statute, this Court must dismiss the Amended Complaint pursuant to Rule 12(b)(3).

20

# POINT III

## THE AMENDED COMPLAINT MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6) AS IT FAILS TO STATE A SINGLE CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Plaintiffs raise four counts against Defendants: fraud-related claims, including common law fraud, aiding and abetting fraud, and conspiracy to commit fraud (Count One), unjust enrichment (Count Two), negligent misrepresentation (Count Three), and tortious interference with prospective business relation (Count Four). (Dkt. 42, ¶¶ 116–141.) Each one of these counts fails to state a claim upon which relief may be granted. As a result, the Amended Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). But a court need not accept "bald assertions." Reed v. Scheffler, 218 F. Supp. 3d 275, 279 (D.N.J. 2016). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When assessing whether to dismiss a complaint, the court must conduct a two-part analysis. Reed, 218 F. Supp. 3d at 279. First, the court must separate factual allegations from legal conclusions. Fowler, 578 F.3d at 210. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. A complaint must do more than merely allege that the plaintiff is entitled to relief. Id.

21

A plaintiff who alleges fraud must also meet a heightened pleading standard. Frederico v. Home Depot, 507 F.3d 188, 200-03 (3d. Cir. 2007). Under this "stringent standard," a plaintiff must "state with particularity the circumstances constituting fraud." Id. at 200 (quoting Fed. R. Civ. P. 9(b)). This means that the complaint must set forth "the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Id. As the Third Circuit has explained, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

**A.    Plaintiffs Failed to Plead Any Claim Sounding in Fraud against Any of the Defendants with the Requisite Specificity.**

Plaintiffs squeeze three causes of actions into Count One. But combining three deficient claims does not create one valid claim.

Plaintiffs' various fraud claims are replete with general allegations when specificity is required. See Frederico, 507 F.3d at 200. "When multiple defendants are involved the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant." Zodda v. Nat'l Union Fire Ins. Co., No. 13-7738, 2015 U.S. Dist. LEXIS 26206, at *25 (D.N.J. Mar. 4, 2015).

Plaintiffs do not make any specific allegation of fraudulent conduct by any individual Defendant. Not a single statement of any Defendant has been identified by Plaintiffs as fraudulent. Instead, Plaintiffs make broad sweeping statements about Alliance's "foundational practice of fraud" without tying this alleged "foundational practice" to each individual Defendant.

An identical theory of liability for fraud was comprehensively rejected by a federal court just four months ago. In that case, the plaintiff pharmaceutical manufacturer of glucose test strips alleged that the defendant corporations and employees engaged in a fraudulent scheme to obtain lower-priced glucose test

22

strips, sell them, and submit insurance reimbursement claims to the plaintiff, which were only available for the higher-priced test strips. <u>Roche</u>, 2017 U.S. Dist. LEXIS 150853, at *3-12. But the plaintiff provided no further specificity regarding the fraudulent acts or statements of each defendant. That lack of detail proved fatal to every fraud claim against each defendant.

The court succinctly disposed of the fraud-related claims—specifically fraud, fraudulent inducement, and aiding and abetting fraud—and also the unjust enrichment claims for failing to satisfy the heightened particularity required by Rule 9(b).

> Roche fails to plead any of these claims with sufficient particularity. Roche's allegations of fraudulent conduct in the Amended Complaint consistently group multiple defendants together by saying that either all of the defendants or a subgroup of defendants made false statements to Roche or caused such false statements to be made. However, it is not sufficient to lump together all the defendants; instead the Amended Complaint must specify who was involved in what activity. As such, Roche failed to sufficiently state who made each allegedly fraudulent misrepresentation. Moreover, many of Roche's allegations also failed to identify the time, place, content, or method of communication used for the defendants' allegedly fraudulent misrepresentations.
>
> [<u>Id.</u> at *27-28 (internal citations, quotations, and alterations omitted).]

The identical claims must likewise fail here. Plaintiffs also "consistently group multiple defendants together" by generally stating that false statements were made or caused to be made. <u>See id.</u> at *27. But as the other federal court found, "it is not sufficient to lump together all the defendants; instead the Amended Complaint must specify who was involved in what activity." <u>See id.</u> at *28.

Plaintiffs never actually accuse any individual Defendant of making a false statement. They only make general accusations that the Alliance Pharmacies—corporations which did not even employ the Defendants—submitted fraudulent reimbursement claims to unnamed parties without regard to date, time, location or substance. (Dkt. 42, ¶¶ 52, 80, 92, 117.) And Plaintiffs do not identify any specific and non-conclusory connection between each individual Defendant and the Alliance Pharmacy subsidiaries.

Because Plaintiffs failed to allege with any specificity any of the individual Defendants' acts, each fraud-related claim must be dismissed pursuant to Rule 9(b).

### 1. Plaintiffs failed to specifically articulate and plead with particularity their fraud claim, as required by Fed. R. Civ. P. 9(b), and this Court must dismiss the claim.

To state a claim for fraud in New Jersey, a plaintiff must allege (1) a material false representation; (2) made with defendant's knowledge of its falsity; (3) with the intention that the other party rely on the representation; (4) reasonable reliance on that representation by plaintiff; and (5) injury as a result of the reliance. Frederico, 507 F.3d at 200 (citing Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367-68 (N.J. 1997)). To meet the heightened federal pleading standard for a fraud claim, a complaint must allege with particularity "who made a misrepresentation to whom and the general content of the misrepresentation." Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004).

Plaintiffs' claim for fraud against Defendants must be dismissed. Plaintiffs have failed to allege any detailed facts, let alone set forth the specific circumstances—"the date, time and place"—of Defendants' alleged fraud. See Frederico, 507 F.3d at 200.

24

The Amended Complaint fails to identify: which Defendant, if any, allegedly made a fraudulent statement; to whom the statement was made; what the contents of that statement were; or when the statement was made. See Lum, 361 F.3d at 224. In 141 paragraphs of the Amended Complaint, Plaintiffs have not identified a single, specific fraudulent statement made by any Defendant. Instead, Plaintiffs' Amended Complaint attributes the allegedly fraudulent statements at the core of their claims, alternatively, to either the corporate entity ("Alliance") and its subsidiaries (the "Alliance Pharmacies") or to the Defendants, collectively. (See Dkt. 42, ¶¶ 52, 62, 90, 117.) But no such statement is ever attributed to any individual Defendant.

Nor have Plaintiffs identified an actual, discrete party to whom a single, specific fraudulent statement was made. Rather, the Plaintiffs vaguely reference "insurance companies" as the recipient of these statements. (See id., ¶ 117.)

Plaintiffs' failure to identify specific statements made by each individual Defendant to any specific individual or entity is fatal to their claims. An ambiguous attribution of the fraudulent statements generally to "defendants" is in sufficient to survive a motion to dismiss. See Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999). "Collectivized allegations that generally allege fraud as against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed, do not satisfy Rule 9(b)." Arlandson v. Hartz Mt. Corp., 792 F. Supp. 2d 691, 710 (D.N.J. 2011) (quotation omitted).

Plaintiffs' allegations of fraud are vague and generalized. Their bald accusations lack sufficient detail and particularity "to put Defendants on notice of the precise misconduct of which they are charged." See Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3rd Cir. 1984). Because

Plaintiffs have failed to meet the stringent standards of stating a claim for fraud under Rule 9(b), the Court must dismiss the claim.

> **2.     Fed. R. Civ. P. 9(b) and the inadequacies of Plaintiffs' pleading mandate the dismissal of Plaintiffs' claim for aiding and abetting fraud.**

"To plead aiding and abetting fraud under New Jersey common law, '(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.'" <u>Fagan v. Fischer</u>, No. 14-7013, 2016 U.S. Dist. LEXIS 10042, at *52 (D.N.J. Jan. 28, 2016) (quoting <u>State of N.J., Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.</u>, 904 A.2d 775, 784 (N.J. Super. Ct. App. Div. 2006)). The heightened pleading standard of Rule 9(b) applies to common law claims of aiding and abetting fraud. <u>Prudential Ins. Co. of Am. v. Bank of Am.</u>, 14 F. Supp. 3d 591, 616 (D.N.J. 2014).

The Amended Complaint alleges that Defendants perpetrated a fraud by "actively participat[ing] in, provid[ing] substantial assistance to, or conspire[ing] to further Alliance's foundational practice of fraud." (Dkt. 42, ¶ 81.) Plaintiffs' claim of aiding and abetting fraud, does not expand upon these vague statements. Instead, the Plaintiffs simply rely on the previous allegations of the Amended Complaint, and formulaically, without detail or specificity, allege that: Defendants "were personally involved in and approved of the fraudulent scheme"; that "All Fraud Defendants had actual knowledge of, and substantially assisted in, the fraudulent scheme"; and that "Each Fraud Defendant intentionally provided substantial assistance to the others and to Alliance, Alta Distributors, SP Diabetic, Ollin, and

the Alliance Pharmacies in advancing the fraud against Plaintiffs". (Id., ¶¶ 119–120.)

These vague and conclusory statements would be insufficient to meet the general pleading standard. They certainly do not contain the requisite specificity and precision of Rule 9(b)'s heightened pleading requirements for fraud claims. The Third Circuit has explained that this standard demands the plaintiff to "plead the who, what, when, where and how: the first paragraph of any newspaper story." KBZ Commc'ns Inc. v. CBE Techs. LLC, 634 F. App'x 908, 912 n.7 (3d Cir. 2015).

But absent from Plaintiffs' Amended Complaint are these details. Plaintiffs do not identify who each Defendant allegedly aided and abetted. A nebulous accusation that Defendants provided assistance to "the others and to Alliance, Alta Distributors, SP Diabetic, Ollin, and the Alliance Pharmacies" is not sufficient or specific. Plaintiffs repeatedly make conclusory statements that Defendants provided "substantial assistance" or "were personally involved in and approved of the fraudulent scheme." (Dkt. 42, ¶¶ 119–120.) But at no point in the Amended Complaint do Plaintiffs specifically identify what alleged role any of the Defendants had in this scheme. Nor do Plaintiffs provide any details in how any Defendant provided assistance.

The Amended Complaint fails to articulate, in specific and non-conclusory terms, a prima facie claim: how the Defendants provided substantial assistance to others in advancing the fraud, how the Defendants could not have perpetrated their fraud without the assistance of the other Defendants, and how each of the Defendants had actual knowledge of the fraudulent scheme. As such, the claim must be dismissed for failure to state a claim upon which relief can be granted.

27

### 3. Plaintiffs' failure to articulate a colorable cause of action sounding in fraud is fatal to their claim of conspiracy to commit fraud.

In New Jersey, civil conspiracy requires "'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" Am. Corp. Soc'y v. Valley Forge Ins. Co., 424 F. App'x 86, 90 (3d Cir. 2011) (quoting Banco Popular N. Am. v. Gandi, 876 A.2d 253, 263 (N.J. 2005)). "In stating a conspiracy claim, a plaintiff must allege facts regarding defendants' joint action rather than making conclusory allegations of concerted action." Wiatt v. Winston & Strawn LLP, 838 F. Supp. 2d 296, 317 (D.N.J. 2012).

"Under New Jersey law, a claim for civil conspiracy cannot survive without a viable underlying tort." Dist. 1199P Health & Welfare Plan v. Janssen, L.P., 784 F. Supp. 2d 508, 533 (D.N.J. 2011). A plaintiff's failure to state an independent tort claim for which relief can be granted requires the dismissal of the civil conspiracy claim. Valley Forge, 424 F. App'x at 90; Dist. 1199P Health & Welfare Plan, 784 F. Supp. 2d at 533.

When the underlying tort for a civil conspiracy claims sounds in fraud, then the plaintiff must meet the heightened pleading standard of Rule 9(b). Hillsborough Rare Coins, LLC v. ADT LLC, No. 16-916, 2017 U.S. Dist. LEXIS 67113, at *32-33 (D.N.J. May 2, 2017); see also Gray v. Bayer Corp., No. 08-4716, 2009 U.S. Dist. LEXIS 48181, at *5-6 (D.N.J. June 8, 2009) ("[A] plaintiff cannot escape Rule 9(b) by alleging claims that do not traditionally involve fraud; rather, the test is whether the particular claim alleged in this matter sounds in fraud. If so, the pleading is subject to 9(b).").

Plaintiffs have failed to plead a valid underlying tort claim. As discussed, supra, Point III.A.1, Plaintiffs have failed to state a claim for common law fraud, and that count should be dismissed. As a result, the conspiracy to commit fraud claim must be dismissed for the same reasons. See Cafaro v. HMC, No. 07-2793, 2008 U.S. Dist. LEXIS 71740, at *24 (D.N.J. Sep. 5, 2008) ("Having already dismissed Plaintiffs' common law fraud claim for failure to comply with Rules 8(a) and 9(b), Plaintiffs' claim for civil conspiracy must likewise be dismissed for the same reasons.").

Plaintiffs have also failed to state a claim of conspiracy to commit fraud with any particularity. The Plaintiffs simply do not provide the detailed allegations that Rule 9(b) mandates. See Frederico, 507 F.3d at 200. There is no accusation in the Amended Complaint of when this alleged agreement among the Defendants to conspire was formulated, nor is there any allegation of what the scope of the agreement was. Plaintiffs do not identify any specific overt act taken by any of the Defendants. The Amended Complaint is devoid of specifics and provides nothing more than "conclusory allegations of concerted action." See Wiatt, 838 F. Supp. 2d at 317-18 (granting defendant's motion to dismiss after finding that the Amended Complaint was "without reference to any supporting facts which would allow the Court to draw the reasonable inference that Defendant [ ] specifically engaged in the underlying unlawful acts by virtue of an agreement").

For these reasons, the Court must dismiss Plaintiffs' civil conspiracy claim.

## B. Plaintiffs' Failure to Articulate Facts Showing That They Directly Conferred a Benefit Upon Defendants Mandates the Dismissal with Prejudice of the Unjust Enrichment Claim.

Plaintiffs need not plead the unjust enrichment claim with the same heightened specificity as their claims sounding in fraud; rather, the general pleading standard of Rule 8(a) applies. Even under this more liberal standard,

29

Plaintiffs have failed to state a claim for unjust enrichment against any of the individual Defendants.

In fact, because Plaintiffs and Defendants did not have a direct relationship (as Plaintiffs acknowledge in their Amended Complaint), no set of facts could ever support an unjust enrichment claim and this Court must dismiss the unjust enrichment claim with prejudice because any further amendment to the Amended Complaint would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Gretzula v. Camden Cty. Tech. Sch. Bd. of Educ., 965 F. Supp. 2d 478, 488, 491 (D.N.J. 2013).

Unjust enrichment is a quasi-contractual claim. Canadian Nat'l Ry. v. Vertis, Inc., 811 F. Supp. 2d 1028, 1034 (D.N.J. 2011). In order to successfully articulate a colorable claim for unjust enrichment under New Jersey law, a Plaintiff must show that "'(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it.'" Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 505 (D.N.J. 2009) (quoting In re K-Dur Antitrust Litigation, 338 F. Supp. 2d 517, 544 (D.N.J. 2004)). A plaintiff must demonstrate that it "'expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" Id. (quoting VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994)).

Since a plaintiff must confer a benefit on the defendant to support an unjust enrichment claim, this element has been applied by New Jersey courts as a requirement that the "plaintiff allege a sufficiently direct relationship with the defendant to support the claim." Arlandson, 792 F. Supp. 2d at 711 (D.N.J. 2011); Maniscalco, 627 F. Supp. 2d at 506 ("New Jersey law requires a direct relationship between the parties.").

Purchasing an item through a retailer does not establish a direct relationship between the purchaser and a manufacturer. Cooper v. Samsung Elecs. Am., Inc., No. 07-3853, 2008 U.S. Dist. LEXIS 75810, at *29-30 (D.N.J. Sep. 29, 2008). An unjust enrichment claim must fail in such a situation because the manufacturer did not confer a direct benefit on the purchaser. Id.; Alin v. Am. Honda Motor Co., No. 08-4825, 2010 U.S. Dist. LEXIS 32584, at *40 (D.N.J. Mar. 31, 2010).

In Cooper, the court elaborated on the direct relationship between the parties required by New Jersey law to sustain an unjust enrichment claim:

> although Cooper alleges that Samsung was unjustly enriched through the purchase of the television, there was no relationship conferring any direct benefit on Samsung through Cooper's purchase, as the purchase was through a retailer, Ultimate Electronics. Cooper, therefore, did not confer a benefit on Samsung within the meaning of New Jersey's doctrine of unjust enrichment.
>
> [Cooper, 2008 U.S. Dist. LEXIS 75810, at *30 (citations omitted).]

Here, Plaintiffs succinctly articulate the basis for their unjust enrichment claim as follows:

> Defendants caused the Alliance Pharmacies to misrepresent to insurance companies that the product they were selling was Retail Strips when they in fact sold DME Strips. These misrepresentations were passed along by the insurance companies to Plaintiffs, directly causing Plaintiffs to pay the insurers millions of dollars in rebates.
>
> [Dkt. 42, ¶ 127.]

Defendants themselves, as individual employees, certainly did not have a direct relationship with LifeScan or JJHCS, nor do Plaintiffs allege that they did. Indeed, Plaintiffs acknowledge that Alliance—Defendants' employer—did not

31

even have a direct relationship with LifeScan. Plaintiffs explain that "LifeScan sells its DME Strips <u>exclusively</u> to mail-order distributors." (<u>See</u> <u>id.</u>, ¶ 39.) Meanwhile, Alliance contracted with pharmacies. (<u>See</u> <u>id.</u>, ¶ 62 ("Alliance contracted with a number of independent pharmacies in different states."); <u>id.</u>, ¶ 63 ("Alliance established these pharmacy relationships with three contracts between the pharmacies and Alliance affiliates.").)

In fact, according to Plaintiffs, Alliance is multiple steps removed from a direct relationship with LifeScan, as Alliance is alleged to have obtained strips— through "its affiliate"—from "third-party 'diverters' that purchase DME Strips from distributors willing to breach their contracts with LifeScan and sell DME Strips on the gray market," as well as from patients on Amazon.com and eBay.com. (<u>Id.</u>, ¶ 57–59.)

Plaintiffs are suing employees in their personal capacities. The employees work for a corporation, Alliance. Alliance had affiliate entities[2], SP Diabetic and Ollin. These affiliates purchased items from "third-party diverters." The diverters purchased the items from mail-order distributors. And these mail-order distributors had contracts with LifeScan. LifeScan then had reimbursement claims processed by JJHCS. Because of this tortured and distant alleged connection between Plaintiffs and Defendants, Plaintiffs have not shown anything close to resembling a "direct relationship." <u>See</u> <u>Maniscalco</u>, 627 F. Supp. 2d at 506. Nor have Plaintiffs alleged how they "performed or conferred a benefit" on any of the Defendants given the degrees of separation between them. <u>See</u> <u>id.</u>

If Plaintiffs believe that entities enriched themselves by failing to give the expected remuneration, then <u>Plaintiffs must sue those entities</u> it has a direct

---

[2] Notably, the nature and scope of the alleged affiliation remains undefined.

relationship with, and <u>not employees</u> of a company that Plaintiffs admit they did not have a relationship with in the first place.

No re-pleading can cure this defect. Without a direct relationship between Defendants and Plaintiffs, the unjust enrichment claim must fail as a matter of law. <u>See, e.g.</u>, <u>Hoffman v. Liquid Health, Inc.</u>, No. 14-1838, 2014 U.S. Dist. LEXIS 90075, at *33 (D.N.J. July 2, 2014) (dismissing <u>with prejudice</u> unjust enrichment claim as "Plaintiff does not establish a direct relationship with [Defendant] because Plaintiff does not allege whether he purchased the product directly from [Defendant] or from a third-party seller"); <u>Hemy v. Perdue Farms, Inc.</u>, No. 11-888, 2011 U.S. Dist. LEXIS 137923, at *66-70 (D.N.J. Nov. 30, 2011) (dismissing <u>with prejudice</u> unjust enrichment claim because no direct relationship was pleaded).

Plaintiffs have sued individuals that they acknowledge they had no direct relationship with, and no set of alleged facts would ever support a claim of unjust enrichment against any of the Defendants. As a result, this Court must dismiss with prejudice the unjust enrichment claim.

**C.     Because No Relationship Between Plaintiffs and Defendants Has Been Alleged, Plaintiffs' Claim for Negligent Misrepresentation Must Be Dismissed with Prejudice.**

To prove a claim of negligent representation under New Jersey law, a plaintiff must demonstrate that "1) the defendant negligently provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages." <u>Princeton Ophthalmic, LLC v. Corinthian Ophthalmic, Inc.</u>, No. 14-5485, 2017 U.S. Dist. LEXIS 167889, at *40 (D.N.J. Oct. 10, 2017). Scienter is not required. <u>Id.</u>

Negligent misrepresentation "shares all the components of fraud," but additionally requires that "the misrepresentation must be made by a person with a duty to the plaintiff." Roll v. Singh, No. 07-4136, 2008 U.S. Dist. LEXIS 50125, at *61-62 (D.N.J. June 26, 2008) (quotation omitted).

While "a fiduciary duty between the parties is not an element of a claim for negligent misrepresentation," a plaintiff seeking to recover for negligent misrepresentation must plead that the defendant owed it a duty of care. Kronfeld v. First Jersey Nat. Bank, 638 F. Supp. 1454, 1465 (D.N.J. 1986). New Jersey has limited the liability of third parties against claims of negligent representation when those third parties were not privy to the misrepresentation or omission. Courts have justified liability in cases where there was "a special relationship between the negligent tortfeasors and the foreseeable plaintiffs who relied on the quality of defendants' work or services, to their detriment." People Express Airlines v. Consol. Rail Corp., 495 A.2d 107, 112 (N.J. 1985).

"[T]here is disagreement among the courts in this District regarding the pleading standard that applies to claims of negligent misrepresentation. Some courts have required plaintiffs to plead negligent misrepresentation in accordance with Federal Rule of Civil Procedure 9(b). Other courts have declined to apply Rule 9(b) to negligent misrepresentation claims." Rapid Models & Prototypes, Inc. v. Innovated Sols., 71 F. Supp. 3d 492, 505-06 (D.N.J. 2014) (collecting cases, but resolving the matter on other grounds without determining which standard to apply).

Given the similarity between common law fraud and negligent misrepresentation, this Court should apply the heightened pleading standard of Rule 9(b) for negligent misrepresentation, just as it would for common law fraud. Nonetheless, under either the heightened pleading standard or the general pleading standard, Plaintiffs have failed to state a claim for negligent misrepresentation.

Plaintiffs have not demonstrated how any of the individual Defendants, as employees at Alliance, owed a duty of care to LifeScan and JJHCS. There is no "special relationship" between the individual Defendants and Plaintiffs that would justify the imposition of liability for negligent misrepresentation. See People Express Airlines, 495 A.2d at 112. The New Jersey Supreme Court identified multiple categories of plaintiffs who could recover under theories of negligent misrepresentations to a third party. Successful plaintiffs, who did not personally receive the misrepresentation, have brought negligent misrepresentation claims against "independent auditors, attorneys, architects, and notaries public." Westmont Dev. Grp., LLC v. Twp. of Haddon, 625 F. Supp. 2d 178, 198 (D.N.J. 2009). Plaintiffs' claims fit none of these categories.

Nor have Plaintiffs identified "who made a misrepresentation to whom and the general content of the misrepresentation." See Lum, 361 F.3d at 224. Plaintiffs have not pleaded a misstatement or omission by each individual Defendant that Plaintiffs received. Instead, Plaintiffs speak in generalities about the collective group of defendants or substitute the corporate entity Alliance in place of individuals. But Plaintiffs have the burden of pleading a misstatement or omission by each and every defendant, and they have failed to do so. See Johnson v. Draeger Safety Diagnostics, Inc., No. 13-2439, 2013 U.S. Dist. LEXIS 101188, at *20 (D.N.J. July 19, 2013) ("'The actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission.'" (quoting Kaufman v. i-Stat Corp., 754 A.2d 1188, 1195 (N.J. 2000))).

"A negligent misrepresentation claim may be based on an omission only if the breaching party owes an independent duty to disclose." Eberhart v. LG Elecs. USA, Inc., 188 F. Supp. 3d 401, 410 (D.N.J. 2016). To the extent that Plaintiffs allege that Defendants' negligent misrepresentation was based on material

35

omissions (Dkt. 42, ¶¶ 132–133, 135), Defendants had no "independent duty to disclose" any facts to Plaintiffs. See id. A duty to disclose under New Jersey law only arises when "(1) a fiduciary relationship exists between the parties, (2) the transaction is intrinsically fiduciary in nature in that it calls for good faith and full disclosure, or (3) one party expressly reposes a special trust or confidence in the other." Id. None of the individual Defendants had an independent duty with either the Pharmacy Plans or with Plaintiffs. Nor do Plaintiffs allege as such. Plaintiffs' bare-boned pleading just states in conclusory fashion that "Defendants had a duty to provide the Pharmacy Plans with accurate information because they knew and intended the Pharmacy Plans would rely on their false representations and material omissions in providing reimbursements to Defendants." (Dkt. 42, ¶ 134.) This is insufficient to allege a duty to disclose under New Jersey law. The relationship is not fiduciary, in fact or in nature, and neither "party expressly repose[d] a special trust or confidence in the other." See Eberhart, 188 F. Supp. 3d at 410. Plaintiffs have, therefore, not asserted a claim for negligent misrepresentation based upon omissions.

Plaintiffs have not pleaded a claim of negligent misrepresentation with the requisite particularity against each individual Defendant, as required by Rule 9(b). Plaintiffs have also failed to state a claim of negligent misrepresentation upon which relief may be granted. See Iqbal, 556 U.S. at 678. Plaintiffs have failed to identify statements or omissions made by each individual Defendant that the Plaintiffs have relied upon. Instead, Plaintiffs contend that any statement by Alliance, a corporation, can be imputed onto its employees. Moreover, Plaintiffs have also failed to allege on what grounds the individual Defendants owe a legal duty of care to LifeScan and JJHCS—corporate entities with which they had no contact. Without a legal duty of care, the negligent misrepresentation claims must fail.

No amendment to the pleadings can change the fact that Plaintiffs have already acknowledged that they had no direct relationship with the individual Defendants. Without a relationship between Plaintiffs and each Defendant, no Defendant, as a third-party, can be held liable to the Plaintiffs for negligent misrepresentation. For these reasons, the claim for negligent misrepresentation must be dismissed <u>with prejudice</u>.

**D. Plaintiffs Have Failed to State a Colorable Claim of Tortious Interference Against Defendants, and the Court Must Dismiss the Count.**

To prove tortious interference with prospective economic advantage under New Jersey law, a plaintiff must show:

> 1) the plaintiff had a reasonable expectation of an economic benefit or advantage; (2) the defendant knew of Plaintiff's expectancy; (3) the defendant intentionally and maliciously interfered with this expectancy; (4) there was a reasonable probability that the plaintiff would have realized the economic benefit in the absence of interference; and (5) the plaintiff suffered injury as a result of the defendant's conduct.
>
> [<u>Van v. Borough of N. Haledon</u>, No. 05-5595, 2009 U.S. Dist. LEXIS 52221, at *27 (D.N.J. June 17, 2009) (citing <u>Lightning Lube Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153, 1167 (3d Cir. 1991)).]

"Malice in this context 'does not require ill will,' but instead means that the defendant intentionally inflicted harm 'without justification or excuse.'" <u>Kennedy v. Am. Airlines Inc.</u>, 195 F. Supp. 3d 646, 657 n.15 (D.N.J. 2016) (quoting <u>DiGiorgio Corp. v. Mendez & Co.</u>, 230 F. Supp. 2d 552, 564-65 (D.N.J. 2002)).

The general pleading standard applies for tortious interference because a plaintiff does not need to plead malice with particularity under Rule 9(b). <u>Graco,</u>

Inc. v. PMC Glob., Inc., No. 08-1304, 2009 U.S. Dist. LEXIS 26845, at *68 n.14
(D.N.J. Mar. 31, 2009).

Plaintiffs have failed to satisfy the more liberal pleading standard, and the
claim for tortious interference must be dismissed for failing to state a claim upon
which relief may be granted.

Plaintiffs have not identified what reasonable expectation of economic
advantage they would have had but for Defendants' alleged interference. Plaintiffs
claim that the Defendants induced sales that ultimately caused Plaintiffs to pay out
a higher reimbursement rate and lose money. It is not clear what effect this alleged
practice had on any prospective economic relationships Plaintiffs may have had.

Plaintiffs have not alleged that, absent Defendants' purported interference,
they would have entered into other business relationships or contracts. See Trans
USA Prods. v. Howard Berger Co., No. 07-5924, 2008 U.S. Dist. LEXIS 61069, at
*24 (D.N.J. Aug. 4, 2008). Plaintiffs are simply seeking redress for direct losses
from the alleged conduct. There is no indication or assertion in the Amended
Complaint that the alleged conduct impaired any of Plaintiffs' potential future
business relations with anyone.

"[T]he prospective economic advantage must be rooted in some specific,
identifiable, commercial relationship (either existing or prospective) that is
disrupted by the alleged tortfeasor." Barr Labs., Inc. v. Bolar Pharm. Co., No. 91-
4374, 1992 U.S. Dist. LEXIS 22882, at *7 (D.N.J. Dec. 23, 1992). But Plaintiffs
have not identified any prospective business relationship or economic advantage
that was lost. Plaintiffs allege the individual Defendants interfered with some
nebulous relationship between Plaintiffs and unspecified parties. Nor have
Plaintiffs indicated whether it was LifeScan or JJHCS that had these supposed
relationships or advantages interfered with.

38

In addition, Plaintiffs are required to allege that each individual Defendant knew of these expected relationships and economic advantages. See Lightning Lube, 4 F.3d at 1167; Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 493 (D.N.J. 1998). Plaintiffs have not done so. And likely because Plaintiffs cannot assert that each Defendant knew of these relationships, when Plaintiffs themselves have not even specified or identified any of these relationships.

Moreover, Plaintiffs have not alleged any facts in support of their allegation that each individual Defendant acted with intent and malice. Plaintiffs merely make a general conclusory statement that "Defendants' malicious interference with Plaintiffs' reasonable expectations of economic advantage caused losses to Plaintiffs." (Dkt. 42, ¶ 140.) No further explanation or assertion on the Defendants' intent or malice is offered.

For all these reasons, Plaintiffs have not pleaded a claim of tortious interference with a prospective economic advantage upon which relief may be granted. The claim must be dismissed.

## CONCLUSION

For the foregoing reasons, this Court must dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Or this Court must dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. Alternatively, this Court must dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

BY: _____

Leo J. Hurley, Jr.
Jonathan P. McHenry
Jeffrey P. Mongiello
Connell Foley LLP
Harborside 5
185 Hudson Street, Suite 2510
Jersey City, NJ 07311
201.521.1000
201.521.0100
*Attorneys for Defendants, JEFFREY C. SMITH, STEVEN L. HADLOCK, SAHILY PAOLINE, DAVID GRANT, & BLAINE SMITH*

DATE:  January 3, 2018