## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIFESCAN, INC. and JOHNSON & JOHNSON HEALTH CARE SYSTEMS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JEFFREY C. SMITH; GEOFFREY S. SWINDLE; STEVEN L. HADOCK; SAHILY PAOLINE; DAVID GRANT; JUSTIN LEAVITT; BLAINE SMITH; ALISON WISTNER; ADAM KOOPERSMITH; & ZB, N.A.; <br><br> Defendants. | Civil Action No. 2:17-cv-5552 (CCC/CLW) <br><br><br><br> *Filed Electronically* <br><br> **Oral Argument Requested** |

---

## BRIEF IN SUPPORT OF DEFENDANT ZB N.A.'S MOTION TO TRANSFER VENUE OR, ALTERNATIVELY, TO DISMISS OR STAY THIS ACTION

---

Liza M. Walsh
Stephen V. Falanga
Christopher M. Hemrick
William T. Walsh, Jr.
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, NJ 07102
(973) 757-1100

*Attorneys for Defendant,*
*ZB, N.A. (d/b/a Zions First National Bank)*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................5

STANDARD OF REVIEW ........................................................................7

LEGAL ARGUMENT...............................................................................8

   POINT I ............................................................................................8

   THE COURT SHOULD TRANSFER VENUE OF THIS CASE TO THE
   DISTRICT OF UTAH PURSUANT TO 28 U.S.C. § 1404(A)..........................8

   POINT II...........................................................................................16

   THE COURT SHOULD DISMISS COUNT ONE AS TO ZIONS BECAUSE
   PLAINTIFFS HAVE FAILED TO STATE A FRAUD CLAIM AGAINST
   ZIONS..............................................................................................16

   POINT III..........................................................................................22

   THE COURT SHOULD DISMISS COUNT TWO AS TO ZIONS BECAUSE
   PLAINTIFFS HAVE FAILED TO STATE AN UNJUST ENRICHMENT
   CLAIM AGAINST ZIONS .....................................................................22

   POINT IV .........................................................................................23

   THE COURT SHOULD DISMISS COUNT THREE AS TO ZIONS BECAUSE
   PLAINTIFFS HAVE FAILED TO STATE A NEGLIGENT
   MISREPRESENTATION CLAIM AGAINST ZIONS......................................23

   POINT V...........................................................................................24

   THE COURT SHOULD DISMISS COUNT FOUR AS TO ZIONS BECAUSE
   PLAINTIFFS HAVE FAILED TO STATE A TORTIOUS INTERFERENCE
   CLAIM AGAINST ZIONS .....................................................................24

   POINT VI .........................................................................................25

   AT A MINIMUM, THE COURT SHOULD DISMISS, STAY OR ABSTAIN
   FROM ADJUDICATING THE CLAIMS IN THE AMENDED COMPLAINT
   PENDING THE BANKRUPTCY COURT'S DETERMINATION OF
   LIFESCAN'S PROOF OF CLAIM ...........................................................25

      A.   The Court Should Dismiss, Stay or Abstain from Adjudicating This
      Action Under Principles of Comity and Judicial Economy. .........................25

B.   The Court Should Dismiss, Stay or Abstain From Adjudicating This Action Pursuant to Fed R. Civ. P. 19(b) Because Alliance is an Indispensable Party. ...................................................................28

1.   Alliance is a Necessary Party Pursuant to Rule 19(a) ........................29

2.   Alliance is an Indispensable Party Requiring Dismissal of this Action Pursuant to Rule 19(b). ...............................................................34

i.   A Judgment Rendered in Alliance's Absence Would Be Prejudicial. ...................................................................34

ii.   The Prejudice Cannot Be Lessened or Avoided. ..........................36

iii.   A Judgment Rendered in Alliance's Absence Would Be Inadequate. ...................................................................36

iv.   Plaintiffs Have an Adequate Remedy. .........................................37

POINT VII ...................................................................................38

PLAINTIFF JJHCS' CLAIMS SHOULD BE DISMISSED FOR LACK OF ARTICLE III STANDING ...................................................................38

CONCLUSION ...................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Cases**

2008 U.S. Dist. LEXIS 105413 at 25-26 (D.N.J. Dec. 9, 2008) .............................23

*Acton Co. of Massachusetts v. Bachman Foods, Inc.*,
   668 F.2d 76 (1st Cir. 1982) ..................................................... 33, 34

*Allen Neurosurgical Assocs. v. Lehigh Valley Health Network*,
   2001 U.S. Dist. LEXIS 284 at *8 (E.D. Pa. Jan. 18, 2001)................................19

*American Tel. & Tel. v. MCI Communications Corp.*,
   736 F. Supp. 1294 (D.N.J. 1990)..................................................... 8, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................7

*Auto. Techs. Int'l, Inc. v. OnStar, LLC*,
   No. 11 CV 2490, 2011 WL 6303251 at *2 (D.N.J. Dec. 15, 2011)....................15

*Banco Popular N. Am. v. Gandi*,
   876 A.2d 253 (N.J. 2005) .......................................................22

*Bank of America Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
   844 F.2d 1050 (3rd Cir. 1988)................................................ 28, 32, 33

*Banks v. Wolk*,
   918 F.2d 418 (3rd Cir. 1990)....................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................7

*Berrett v. Stevens*,
   690 P.2d 553 (Utah 1984) ......................................................22

*C.O. Truxton, Inc. v. Blue Caribe, Inc.*,
   2014 U.S. Dist. LEXIS 168457 (D.N.J. 2014)....................................13

*Cafaro v. HMC Int'l, LLC, Civil Action*,
   No. 07-2793, 2009 U.S. Dist. LEXIS 48748 (D.N.J. June 10, 2009) .................21

*Church & Dwight v. Mayer Labs., Inc.*,
   No. 08 CV 5743, 2010 WL 3907038 at *7 (D.N.J. Sept 28, 2010) .....................9

*Cinalli v. Kane*,
   191 F. Supp. 2d 601 (E.D. Pa. 2002).......................................... 19, 20

*Cioni v. Globe Specialty Metals, Inc.*,
   618 Fed. Appx. 42 (3rd Cir. 2015) ................................................20

*Concrete Prods. Co. v. Salt Lake County*,
   734 P.2d 910 (Utah 1987) ......................................................22

*Continental Grain Co. v. Barge FBL-585*,
   364 U.S. 19 (1960) .............................................................8

*Cottman Transmission Sys., Inc. v. Martino*,
36 F.3d 291 (3rd Cir. 1994)..............................................................13

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990)...............................................................8

*Doty v. St. Mary Parish Land Co.*,
598 F.2d 885 (5th Cir. 1979)..............................................................33

*Eldridge v. Johndrow*,
345 P.3d 553 (Utah 2015) ................................................................25

*Eli Lilly & Co. v. Roussel Corp.*,
23 F. Supp. 2d 460 (D.N.J. 1998).......................................................25

*Envirotech Corp. v. Bethlehem Steel Corp.*,
729 F.2d 70 (2d Cir. 1984) ...............................................................29

*Fiscus v. ComBus Fin. AG*,
2007 U.S. Dist. LEXIS 85275 (D.N.J. Nov. 20, 2007) ................................ 35, 37

*Forman v. Salzano (In re Norvergence, Inc.)*,
405 B.R. 709 (Bankr. D.N.J. 2009)......................................................18

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) .................................................................. 10, 11

*Hartig Drug Co. Inc. v. Senju Pharm. Co.*,
836 F.3d 261 (3rd Cir. 2016)..............................................................38

*HB General Corp. v. Manchester Partners, L.P.*,
95 F.3d 1185 (3rd Cir. 1996)..............................................................31

*Hoffer v. InfoSpace.com, Inc.*,
102 F. Supp. 2d 556 (D.N.J. 2000).......................................................11

*Id.; H. Rosenblum, Inc. v. Adler*,
93 N.J. 324 (1983) ........................................................................24

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3rd Cir. 1999)...............................................................8

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
975 F. Supp. 584 (D.N.J. 1996), *rev'd on other grounds*, 133 F.3d 225 ...........24

*In re Rockefeller Ctr. Props. Sec. Litig.*,
311 F.3d 198 (3rd Cir. 2002)...............................................................8

*In re Rockefeller Ctr. Props., Inc. Sec. Litigation*,
184 F.3d 280 (3rd Cir. 1999)...............................................................3

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3rd Cir. 2012)........................................................ 38, 39

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*,
11 F.3d 399 (3d Cir. 1993) ......................................................... 28, 29

*Johnson & Johnson v. Coopervision, Inc.*,
720 F. Supp. 1116 (D. Del. 1989) ............................................. passim

iv

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3rd Cir. 1995) ...................................................................10

*Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*,
    420 F. Supp. 2d 366 (D.N.J. 2006) .........................................................23

*Kronfeld v. First Jersey Nat. Bank*,
    638 F. Supp. 1454 (D.N.J. 1986) ............................................................24

*Leroy v. Great W. United Corp.*,
    443 U.S. 173 (1979) ................................................................................16

*Lifecell Corp. v. Lifenet Health*,
    No. 15-cv-6701, 2016 WL 544489 (D.N.J. Feb. 9, 2016) .....................14

*LifeScan's Proof of Claim. See Eash v. Riggins Trucking, Inc.*,
    757 F.2d 557 (3d. Cir. 1985) ..................................................................28

*LifeVantage Corp. v. Domingo*,
    208 F. Supp. 3d 1202 (D. Utah 2016) .....................................................25

*Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*,
    102 F. Supp. 2d 518 (D.N.J. 2000) .........................................................12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................39

*Marchese v. Nelson*,
    809 F. Supp. 880 (D. Utah 1993) .................................................... 17, 24

*Marina Dist. Dev. Co., LLC v. Ivey*,
    93 F. Supp. 3d 327 (D.N.J. 2015) .................................................... 17, 18

*Mayor & Council of Borough of Rockaway v. Klockner & Klockner*,
    811 F. Supp. 1039 (D.N.J. 1993) ............................................................19

*Monsen v. Consol. Dressed Beef Co., Inc.*,
    579 F.2d 793 (3rd Cir. 1978) ..................................................................22

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
    331 F.3d 406 (3rd Cir. 2003) ..................................................................18

*NCR Credit Corp. v. Ye Seekers Horizon, Inc.*,
    17 F. Supp. 2d 317 (D.N.J. 1998) ...........................................................13

*New Jersey. See Shinn v. Champion Mortg. Co.*,
    2010 U.S. Dist. LEXIS 9944 at *15 (D.N.J. Feb. 5, 2010) ....................22

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
    390 U.S. 102 (1968) ........................................................................ passim

*Rabo Agrifinance, Inc. v. Bliss*,
    227 F. Supp. 3d 1249 (Dist. Utah., January 4, 2017) .............................18

*Roberts v. C.R. England, Inc.*,
    318 F.R.D. 457 (D. Utah 2017) ...............................................................23

*Rosenzweig v. Brunswick Corp.*,
    No. 08-807(SDW), 2008 U.S. Dist. LEXIS 63655 (D.N.J. Aug. 20, 2008) .......34

*S & K Sales Co. v. Nike, Inc.*,
   816 F.2d 843 (2d Cir. 1987) ............................................................................18

*Saratoga at Toms River Condo. Ass'n, Inc. v. Menk Corp.*,
   2014 N.J. Super. Unpub. LEXIS 1754 at *5 (N.J. Super. Ct. App. Div.
   July 17, 2014) ..............................................................................................20

*Save Power Ltd. v. Syntek Fin. Corp.*,
   121 F.3d 947 (5th Cir. 1997) ........................................................................26

*Sec. Sav. Bank, SLA v. Green Tree Acceptance, Inc.*,
   703 F. Supp. 350 (D.N.J. 1989) ....................................................................12

*Sierra Club v. Morton*,
   405 U.S. 727 (1972) ......................................................................................39

*Spring Motors Distribs., Inc. v. Ford Motor Co.*,
   98 N.J. 555 (N.J. 1985) .................................................................................20

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ........................................................................19

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
   676 F. Supp. 2d 321 (D. Del. 2009) ..............................................................14

*Toll Bros. v. Twp. Of Readington*,
   555 F.3d 131 (3rd Cir. 2009) ........................................................................39

*Trippe Mfg. Co. v. American Power Conservation Corp.*,
   46 F.3d 624 (7th Cir. 1995) ..........................................................................28

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
   216 F. Supp. 2d 198 (S.D.N.Y. 2002) ...........................................................26

*Utah's. Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*,
   912 F. Supp. 747 (D.N.J. 1995) ....................................................................25

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ........................................................................................8

*Warth v. Seldin*,
   422 U.S. 490 (1975) ......................................................................................39

*West Gulf Maritime Asso. v. ILA Deep Sea Local 24*,
   751 F.2d 721 (5th Cir. 1985) ........................................................................26

*Whyham v. Piper Aircraft Corp.*,
   96 F.R.D. 557 (D.C. Pa. 1982) .......................................................... 35, 36, 37

*Wm. H. McGee & Co. v. United Arab Shipping Co.*,
   6 F. Supp. 2d 283 (D.N.J. 1997) ...................................................................11

**Statutory Authorities**

28 U.S.C. §§ 1332(a)(1) ......................................................................................10

28 U.S.C. § 1404(a) ................................................................................... passim

28 U.S.C. 1391(b) .......................................................................................... 9, 10

**Rules and Regulations**

Fed R. Civ. P. 19(b) .................................................................... 8, 28, 29, 34, 36, 37

Fed. R. Civ. P. 10(b) ........................................................................................17

Fed. R. Civ. P. 19 ......................................................................... 28, 29, 31, 32, 36

Rule 9(b)...................................................................................... 4, 7, 8, 18, 19

Rule 12(b)(1) ....................................................................................................38

Rule 12(b)(6) ............................................................................................ 4, 7, 39

Rule 19(a).................................................................................. 28, 29, 30, 31, 32, 33, 34

**Constitutional Provisions**

U.S. Const.Art. III, § 2 ....................................................................................38

Defendant ZB, N.A. (d/b/a Zions First National Bank) ("Zions") respectfully submits this brief in support of its Motion to Transfer Venue or, Alternatively, To Dismiss or Stay This Action filed by Plaintiffs LifeScan, Inc. ("LifeScan") and Johnson & Johnson Health Care Systems, Inc. ("JJHCS") (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), 9(b) and 28 U.S.C. § 1404(a) (the "Motion").

## PRELIMINARY STATEMENT

Plaintiffs added Zions as a defendant in this action in a transparent attempt to hold a lender with "deep pockets" accountable for the alleged wrongdoing of its borrower, non-party Alliance Medical Holdings, LLC ("Alliance").  Alliance, the alleged architect of a diabetic test strip "upcoding" scheme serving as the cornerstone of Plaintiffs' Amended Complaint, filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas on April 7, 2017 (the "Bankruptcy Court").

LifeScan is pursing identical claims against Alliance in Alliance's bankruptcy case (the "Bankruptcy Case"), having filed a Proof of Claim on September 5, 2017 in the amount of "[n]ot less than $49,339,603.00."  Notably, for reasons discussed *infra,* JJHCS is ***not*** pursuing a claim against Alliance in the Bankruptcy Case. Notwithstanding that the same claim is pending in the Bankruptcy Case, Plaintiffs have turned their sights to Zions, spuriously alleging something more than an arm's

length lender/borrower relationship between Zions and Alliance in an effort to recover alleged losses[1] for which Zions is in no way responsible.

Plaintiffs recognize Zions is not affiliated with Alliance or the individual defendants (the "Individual Defendants") and had *no* role in the operation of Alliance's business.  Rather, Zions is named as a defendant in this action merely because it loaned money to Alliance, a Utah-based corporation.  Lending money to companies in Utah is not unusual for Zions, given that Zions, one of the oldest and largest commercial banking institutions in the Western United States, is also based in Utah.  What is surprising is Plaintiffs' contention that the act of loaning money can somehow expose a national bank to liability for aiding and abetting the alleged fraud of its borrower.

To this point, the Amended Complaint is devoid of any factual allegation that Zions was aware of Alliance's perpetration of the allegedly fraudulent "upcoding" scheme.[2]  Assuming Plaintiffs have a basis for their conclusory allegation in the Amended Complaint that "the Credit Agreement explicitly acknowledged that

---

[1] It is unclear from a reading of the Amended Complaint how Plaintiffs have been damaged by Alliance's alleged wrongdoing or, for that matter, whether they have been damaged at all.

[2] Plaintiffs, in fact, appear to have been aware of Alliance's conduct they now allege was "fraudulent" as early as 2015, and perhaps even earlier. Comp. at ¶105. It is unclear why Plaintiffs delayed taking action for years to prevent the wrongdoing they now so strenuously suggest was being undertaken since 2009, and from which they claim to have incurred such substantial damages.

[Zions] was providing credit to Alliance so that its pharmacy-subsidiaries could engage in the fraudulent practice of selling DME Strips to patients but submitting reimbursements for Retail Strips,"[3] one would expect Plaintiffs to provide **specific references** to the provisions of the Credit Agreement containing such "explicit acknowledgment."  Of course, Plaintiffs do not since there are no such references. Instead, Plaintiffs employ a tortured and misleading interpretation of the terms of the Credit Agreement and disclosures made to Zions in an attempt to taint Zions with Alliance's alleged wrongdoing.  In short, while Plaintiffs' claims against Zions should be dismissed for several reasons, or this action stayed, this action should at the outset be transferred to the District of Utah.

*The Court Should Transfer Venue of this Case to Utah*

Venue is not appropriate in New Jersey and the Court should transfer this action to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1404(a).  All relevant public and private interest factors favor transfer to Utah, where nearly all the parties, witnesses and evidence are located, and where the

---

[3] Plaintiffs make explicit reference in their Amended Complaint to the "Credit Agreement" between non-party Alliance and Zions and rely upon it in asserting their claims against Zions. As such, the Court may consider this document in deciding Zions' Motion without converting it to a summary judgment motion as it is "integral to or explicitly relied upon in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig*., 184 F.3d 280, 287 (3rd Cir. 1999). The Credit Agreement is attached as Exhibit A to the Certification of Liza M. Walsh, submitted herewith ("Walsh Cert.").

alleged "wrongdoing" occurred.  New Jersey has no meaningful connection to this litigation other than the fact that one of the two plaintiffs, JJHCS, is located here. However, it does not appear JJHCS has standing to pursue the claims at issue in this action,[4] as evidenced by the fact that JJHCS did not file a Proof of Claim against Alliance for the damages claimed in the present litigation.

*The Amended Complaint Fails to State a Claim Against Zions*

Plaintiffs' "First Claim for Relief – Fraud (Including Aiding & Abetting Fraud and Conspiracy to Commit Fraud)" must be dismissed as to Zions pursuant to both Fed. R. Civ. P. 12(b)(6) and 9(b) because Plaintiffs improperly conflate three separate causes of action into a single count.  Furthermore, Plaintiffs fail to plead the alleged fraud with particularity as to Zions, notably failing to allege ***any*** misrepresentation by Zions.  As such, it is unclear which claims in Count One are alleged against Zions, and which are alleged against other defendants.  Rather, Plaintiffs have subsumed Zions within a broad, general allegation of fraud against all defendants collectively.  This generic lumping of claims and defendants is impermissible and requires dismissal as to Zions.[5]

---

[4] JJHCS' claims should be dismissed for lack of Article III standing because the Amended Complaint is bereft of any allegation or explanation of how JJHCS was damaged as a result of Alliance's alleged wrongdoing.

[5] The only well-pleaded facts as to Zions suggest Zions extended credit to Alliance and, at worst, may have been aware of potential breach of contract claims against Alliance by certain pharmacy benefit managers who are not parties to this case, and

Plaintiffs' remaining three Claims against Zions (Unjust Enrichment, Negligent Misrepresentation and Tortious Interference with Prospective Business Relation) are improperly pleaded, factually insufficient as to Zions and fail as a matter of law.

*The Court Should Dismiss or Stay this Case Pending the Outcome of LifeScan's Proof of Claim in the Alliance Bankruptcy Case*

Principles of comity and judicial economy dictate that this Court should dismiss, stay or abstain from deciding Plaintiffs' claims pending the Bankruptcy Court's adjudication of LifeScan's Proof of Claim, which seeks substantially similar damages against Alliance, an indispensable party, relating to the same set of operative facts at issue in the Amended Complaint.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs initially filed this action solely against the Individual Defendants on July 28, 2017. (D.I. 1). Zions became a defendant in this lawsuit only after Plaintiffs amended their Complaint on November 22, 2017. (D.I. 41). Zions is a national banking association with its principal place of business in Salt Lake City, Utah. Comp. at ¶ 22. On June 24, 2014, Zions and Alliance executed a Credit Agreement which refinanced Alliance's $36 million credit facility with Wells Fargo Bank. *Id.*

---

potential claims by LifeScan against Alliance relating to "product sourcing issues in connection with the sale of diabetic testing strips." *See* Comp. at ¶¶ 60, 105, 107. Those alleged facts do not support a claim that Zions committed, knew of or intentionally facilitated fraud.

at ¶ 93.  On August 5, 2016, Alliance and Zions executed a second amendment to the Credit Agreement. *Id.* at ¶ 106.

Despite this lawful lender/borrower relationship, Plaintiffs allege, in conclusory fashion, that Zions "knowingly funded, and expressly approved in writing, [Alliance's] illegal scheme to sell and fraudulently obtain retail reimbursement for LifeScan products"; namely, diabetic test strips. *Id.* at ¶ 27. Plaintiffs attempt to support their allegations by alleging the Credit Agreement "explicitly acknowledged" that Alliance was engaged in illegal activity, that Alliance's business was fundamentally fraudulent, and that Zions structured the Agreement to aid Alliance in carrying out its allegedly fraudulent scheme. *Id.* at ¶¶ 93-109.  Plaintiffs also allege that Alliance "informed" Zions of LifeScan's "upcoding" claims against Alliance through disclosures under the Credit Agreement. *Id.* at ¶ 105.  Again, Plaintiffs rely upon a strained interpretation of the disclosures that takes the information provided to Zions misleadingly out of context.

Furthermore, Plaintiffs ignore that the representations in the Agreement concerning Alliance's activity were ***Alliance's*** unilateral statements ***provided to Zions*** in connection with the loan. *See* Ex. A.[6]  As such, Plaintiffs' assertion that Zions "acknowledged" Alliance's alleged wrongdoing is meritless.

---

[6] All Exhibits refer to those attached to the Walsh Cert.

## STANDARD OF REVIEW

The United States Supreme Court has held that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Though a court "must accept as true all factual allegations in the . . . complaint and all reasonable inferences that can be drawn from them[,]" *Banks v. Wolk*, 918 F.2d 418, 419 (3rd Cir. 1990), the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Dismissal is required if the complaint does not contain well-pleaded facts sufficient to "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (internal quotations omitted).

Additionally, Fed. R. Civ. P. 9(b) imposes a heightened pleading requirement with respect to allegations of fraud, independent of the standard applicable to a Rule 12(b)(6) motion. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). As such, plaintiffs averring fraud claims must specify "'the who, what, when, where, and how: the first paragraph of any newspaper story.'" In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3rd Cir. 1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)). Although Rule 9(b) falls short of requiring every material detail of the fraud, plaintiffs must use "alternative means of injecting precision and

some measure of substantiation into their allegations of fraud." In re Rockefeller Ctr.

Props. Sec. Litig., 311 F.3d 198, 216 (3rd Cir. 2002) (internal citations omitted).

## LEGAL ARGUMENT

### POINT I

### THE COURT SHOULD TRANSFER VENUE OF THIS CASE TO THE DISTRICT OF UTAH PURSUANT TO 28 U.S.C. § 1404(A)

This case should be transferred to the United States District Court for the

District of Utah under 28 U.S.C. § 1404(a).  Section 1404(a) permits a district court

to transfer a case to any other district where venue is proper "for the convenience of

parties and witnesses, in the interest of justice . . . ." 28 U.S.C. § 1404(a).  The

purpose of section 1404(a) "is to prevent the waste of 'time, energy and money' and

'to protect litigants, witnesses and the public against unnecessary inconvenience and

expense . . . .'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting

*Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)); *see also*

*American Tel. & Tel. v. MCI Communications Corp.*, 736 F. Supp. 1294, 1305

(D.N.J. 1990).

The District of Utah is more convenient than New Jersey for all parties and

all relevant witnesses and evidence.  There is no dispute this case could have

originally been brought in the District of Utah.  Nearly all the private and public-

interest factors strongly favor transfer to that district.  No factors favor keeping the

8

case in New Jersey.  New Jersey has no meaningful connection to this dispute other than the fact that one of the two plaintiffs, JJHCS, is located here.  And given Plaintiffs suggest that only LifeScan incurred any alleged injury, Comp. at ¶ 38, which is consistent with the fact that JJHCS has not filed a Proof of Claim against Alliance for any damages, it does not appear JJHCS even has standing to pursue the claims at issue in this action.  Indeed, no reasonable grounds exist for keeping in New Jersey litigation where all but one of the defendants is Utah-based, and the only connection to New Jersey is the place of business of one co-plaintiff, whose standing to sue is questionable.  This is especially true where, as here, the action implicates necessary discovery from Utah-based defendants and third-parties, and Utah law should control.

## Venue Is Appropriate In The District of Utah.

There is no dispute Plaintiffs "might have brought" this suit in the District of Utah. 28 U.S.C. § 1404(a); *Church & Dwight v. Mayer Labs., Inc.,* No. 08 CV 5743, 2010 WL 3907038 at *7 (D.N.J. Sept 28, 2010); 28 U.S.C. 1391(b) (venue is appropriate in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action").  Zions is a national banking association with its principal place of business in Salt Lake City, Utah, which is also the seat for the federal District Court in Utah. Comp. at ¶ 22.  Thus, Zions is unquestionably subject to personal jurisdiction in Utah.  Each Individual Defendant

also resides in Utah, save for defendant Koopersmith, who is an Illinois resident. *Id.* at ¶¶ 13-21. LifeScan is a California corporation, with its principal place of business in Pennsylvania, and JJHCS is a New Jersey corporation, with its principal place of business in New Jersey. *Id.* ¶¶ 11-12. As such, subject-matter jurisdiction would be proper in the District of Utah as diversity jurisdiction still exists among all parties. 28 U.S.C. §§ 1332(a)(1).

## A.    The Relevant Factors Favor Transfer.

Section 1404(a) sets forth additional factors courts must consider when determining whether to transfer an action to another forum: (1) the convenience of the parties, (2) the convenience of the witnesses and (3) the interests of justice. 28 U.S.C. § 1404(a). These factors are not exhaustive, as courts must consider "all relevant factors" to determine whether "on balance" the litigation would more conveniently proceed, and the interests of justice be better served, by a transfer to a different forum. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3rd Cir. 1995). In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), the Supreme Court listed various factors relevant to the transfer analysis. These factors fall into two broad categories. The first relates to the so-called "private interests" of the parties, including plaintiff's choice of forum, the ease of access to sources of proof, availability of compulsory process over unwilling witnesses, the cost of attendance of willing witnesses and obstacles to a fair trial. *Gulf Oil*, 330 U.S. at 508. The second consists of the "public

interest" in the administration of courts and the adjudication of cases, including court congestion and other administrative difficulties, placing the burden of jury duty on those having the closest ties to the action, local interests in having cases adjudicated at home and familiarity of the forum court with the applicable law. *Id.* at 508-09.

    1.  <u>Plaintiffs' Claims Arose Elsewhere</u>

Transfer is appropriate because Plaintiffs' claims did not arise in New Jersey. Although a plaintiff's choice of forum is a factor to consider, that factor is "not dispositive." *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 573 (D.N.J. 2000) ("The choice of forum by a plaintiff is simply a preference; it is not a right."). This is particularly true when a plaintiff's chosen forum "has little connection with the operative facts of the lawsuit." *Wm. H. McGee & Co. v. United Arab Shipping Co.*, 6 F. Supp. 2d 283, 290 (D.N.J. 1997); *see also American Tel. & Tel. Co.*, 736 F. Supp. at 1306 ("Where the operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference."). Although Plaintiffs selected this forum, LifeScan is not located in this District, so any weight attributable to its selection of this forum is diminished. *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 531 (D.N.J. 2000).

Here, the operative facts have little to do with New Jersey; all of them occurred in Utah. The bank accounts Zions is alleged to have opened for the New Jersey pharmacies cited in the Amended Complaint are in Utah. *See* Comp. at ¶¶ 93-

109.  The Credit Agreement between Zions and Alliance, the vehicle out of which Plaintiffs allege their claims against Zions arise, not only was negotiated and executed in Utah, but specifically states that "THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF UTAH SHALL HAVE SOLE AND EXCLUSIVE JURISDICTION OF ANY AND ALL CLAIMS, DISPUTES, AND CONTROVERSIES, ARISING UNDER OR RELATING TO THE LOAN DOCUMENTS AND/OR THE TRANSACTIONS CONTEMPLATED THEREBY." *See* Ex. A at § 10.20.  Although Plaintiffs are not a party to this Agreement, the Court will be tasked with interpreting the intent and purpose of language contained in the Agreement.  The District Court in Utah would be best situated to interpret contracts made within its jurisdiction, especially those subject to Utah law. *See Sec. Sav. Bank, SLA v. Green Tree Acceptance, Inc.*, 703 F. Supp. 350, 353–54 (D.N.J. 1989) (finding transfer appropriate where plaintiff was "a corporation who entered into agreements outside the State of New Jersey with the ability to freely bargain for the choice of forum, not an individual injured by some major conglomerate suing in his or her own State.").

For venue purposes, courts have held that any alleged misrepresentation is deemed to have occurred in the district where the statement is made, even if the statement concerned distributing or selling a product into another state. *C.O. Truxton, Inc. v. Blue Caribe, Inc.*, 2014 U.S. Dist. LEXIS 168457, *16 (D.N.J.

2014); *NCR Credit Corp. v. Ye Seekers Horizon, Inc*. 17 F. Supp. 2d 317, 321 (D.N.J. 1998) ("As a general rule, the preferred forum is that which is the center of gravity of the accused activity.").  Plaintiffs have failed to identify a single misrepresentation made by Zions to justify bringing this fraud claim.  However, any alleged misrepresentation or fraud scheme by Alliance or the Individual Defendants would have been made in the District of Utah, where they reside and primarily conduct business. *See C.O. Truxton, Inc. v. Blue Caribe, Inc*., 2014 U.S. Dist. LEXIS 168457 at *16-17.  These facts strongly militate in favor of venue transfer.  Because the operative facts in this lawsuit, especially those concerning Zions, occurred in the District of Utah, venue is more appropriate there than in the District of New Jersey. *See Ricoh,* 817 F. Supp. at 483 (transfer appropriate where "the operative facts . . . are not centered in New Jersey");  *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3rd Cir. 1994) (events that have only "some tangential connection" with the dispute are not sufficient to support venue).

    2.  <u>The Bulk Of Discovery Produced Will Be Based On Documents And Witnesses Located In Utah</u>

All of Zions' current employees who could conceivably be witnesses in this case, as well as Zions' documents and information relating to Zions' lending relationship with Alliance and the matters at issue in this action, are in the District of Utah. *See* Certification of Robert Boyd ("Boyd Cert.") at ¶¶ 3-4.  Other key third-party witnesses and documents will likely also be located in the District of Utah, but

certainly not in New Jersey.  The District of Utah is more convenient for key third-party witnesses and, critically, has subpoena power over such witnesses. "[C]ompulsory process over non-party witnesses has been referred to as the single most important factor in a Section 1404 analysis." *Lifecell Corp. v. Lifenet Health*, No. 15-cv-6701, 2016 WL 544489, at *5 (D.N.J. Feb. 9, 2016) (citing *Teleconference Sys. v. Proctor & Gamble Pharms., Inc*., 676 F. Supp. 2d 321, 333 (D. Del. 2009).  By contrast, Zions is aware of no relevant witnesses, documents, or evidence located in New Jersey other than the two New Jersey pharmacies alleged to have guaranteed and pledged certain collateral to secure repayment of Zions' loan to Alliance in Utah.  These pharmacies are, at best, incidental to Plaintiffs claims, and are only two of over eighty (80) Alliance-owned subsidiaries throughout the country that Plaintiffs allege to have participated in the "upcoding" scheme. Comp. at ¶ 51.  Thus, the bulk of discovery produced by Zions and the other Defendants will likely be based on documents and witnesses located in Utah, making transfer to that District appropriate. *See Auto. Techs. Int'l, Inc. v. OnStar, LLC*, No. 11 CV 2490, 2011 WL 6303251 at *2 (D.N.J. Dec. 15, 2011) (transfer appropriate where "a substantial part" of the events concerning the lawsuit occurred in the proposed transferee district, which was the location of defendant's headquarters and principal place of business, whereas plaintiff's chosen forum had "little connection to the facts underlying the claims.").  New Jersey has virtually no connection to this dispute.

14

3. <u>The Remaining Considerations Favor Transfer</u>

The public interests also favor transfer to Utah.  The practical considerations affecting the expense and expedition of trial strongly favor transfer for many of the reasons relevant to the private interest analysis.  It would be more efficient for this action to proceed in Utah, where (1) all but one of the defendants are located, (2) the alleged fraud scheme was masterminded, (3) many non-party witnesses reside or work, (4) the claim arose, and (5) the Credit Agreement was negotiated and executed.  For these reasons, the District of Utah also has a stronger interest in adjudicating Plaintiffs' claims than New Jersey. *See LG Elecs., Inc*., 138 F. Supp. 2d at 592 ("The location where the claim arose is also a public interest factor because local judges and juries are preferred arbiters of events in their jurisdiction and community.").

Plaintiffs would not be significantly inconvenienced by the transfer.  Both Plaintiffs are affiliated with a multi-national company with a broad presence throughout the country and engage in litigation nationwide.  Transferring this action to Utah would greatly benefit the vast majority of potential witnesses, and would lessen Zions' and the other Utah-based Defendants' logistical burdens posed by document production and other discovery. *See Ricoh*, 817 F. Supp. at 485 ("When a transfer motion would aid the movant and not disadvantage the opponent, transfer is appropriate."); *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979) (the

purpose of the venue provision is "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial").

For the foregoing reasons, the Court should transfer this action to the District of Utah pursuant to 28 U.S.C. § 1404(a).

**POINT II**

**THE COURT SHOULD DISMISS COUNT ONE AS TO ZIONS BECAUSE PLAINTIFFS HAVE FAILED TO STATE A FRAUD CLAIM AGAINST ZIONS**

To state a claim of common law fraud under Utah law, a plaintiff must allege facts that, if proven, would establish: "(1) That a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing she had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to her injury and damage." *Marchese v. Nelson*, 809 F. Supp. 880 (D. Utah 1993). The elements of fraud under New Jersey law are parallel. *Marina Dist. Dev. Co., LLC v. Ivey*, 93 F. Supp. 3d 327, 339 (D.N.J. 2015).

As a preliminary matter, Plaintiffs improperly conflate multiple independent causes of action into a single count for "Fraud (Including Aiding and Abetting Fraud and Conspiracy to Commit Fraud)" against "[a]ll Defendants" but Swindle. Comp.

16

at ¶¶ 116-125.  Fraud, Aiding and Abetting and Conspiracy are three distinct claims. It is unclear from the Amended Complaint which of these alleged claims are directed at Zions, and which may be directed at other defendants.  It is for this reason separate causes of action are required to be pleaded in separate counts.  Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.").   Plaintiffs' generic lumping of claims and defendants is impermissible and requires that Count One be dismissed.

Furthermore, while the Amended Complaint is replete with conclusory, self-serving and false allegations that the Credit Agreement between Zions and Alliance "explicitly acknowledged that Alliance's business was fundamentally fraudulent[,]" *see e.g.* Comp. at ¶ 93, even if such allegations were sufficient and true, which they are not, ***Plaintiffs fail to allege any misrepresentation made by Zions to Plaintiffs, or any other party***.  This is also fatal to Plaintiffs' fraud claim against Zions. *Ivey*, 93 F. Supp. 3d at 339.

To the extent Plaintiffs seek to hold Zions liable for Alliance's alleged fraud on an aiding and abetting or conspiracy theory, those claims also fail.  First, Utah law does not recognize a claim for aiding and abetting fraud.   *See, e.g., Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1252 (Dist. Utah., January 4, 2017) ("Utah courts have not yet recognized a claim for aiding and abetting fraud.").  Utah

law governs Zions' relationship with Alliance pursuant to the Credit Agreement. Ex. A, §§ 10.8 &10.20.

Even if New Jersey law controlled, a plaintiff is required to plead facts sufficient to support (1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) that the aider-abettor knowingly and substantially participated in the wrongdoing. *See, e.g.*, *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3rd Cir. 2003). "To the extent the underlying primary violations are based on fraud, the allegations of aiding and abetting liability must meet the particularity requirements of *Fed. R. Civ. P. 9(b)*." *See Forman v. Salzano* (*In re Norvergence, Inc.*), 405 B.R. 709, 746-47 (Bankr. D.N.J. 2009) (citing *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 847-48 (2d Cir. 1987)).

Plaintiffs' generalized allegations of fraud fail to meet the particularity standard Rule 9(b) requires.  Under Rule 9(b), the "who, what, when, and where details of the alleged fraud" must be articulated. *Allen Neurosurgical Assocs. v. Lehigh Valley Health Network*, 2001 U.S. Dist. LEXIS 284 at *8 (E.D. Pa. Jan. 18, 2001).  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together[,] but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007); *see also*

*Mayor & Council of Borough of Rockaway v. Klockner & Klockner*, 811 F. Supp. 1039, 1060 (D.N.J. 1993) (collectivized allegations that generally allege fraud against multiple defendants do not satisfy Rule 9(b)); *Cinalli v. Kane*, 191 F. Supp. 2d 601, 609 (E.D. Pa. 2002).

Plaintiffs have failed to specify what Zions is alleged to have done to "aid and abet" or "conspire" in Alliance's purported fraud. Rather, Plaintiffs routinely lump all Defendants together without any detail or explanation as to who is alleged to have done what, when, in furtherance of the fraud. *See, e.g.*, Comp. at ¶¶ 116-125 (referring to "Defendants" collectively without specifying the precise misconduct associated with each defendant). The Amended Complaint lacks any particularized factual averment demonstrating how Zions participated in, furthered or encouraged Alliance's alleged fraud. This is insufficient under Rule 9(b) requiring dismissal.

Once the Court strips away Plaintiffs' conclusory and self-serving assertions that Zions was "aware" of and "agreed to assist Alliance's fraud," *see, e.g.*, *id.* at ¶¶ 99 &109, the only well-pleaded ***facts*** remaining are that Zions extended credit to non-party Alliance and, at most, may have been aware of potential breach of contract claims by certain pharmacy benefit managers who are not parties to this case, and potential claims by LifeScan against Alliance relating to "product sourcing issues in connection with the sale of diabetic testing strips." *See, e.g.*, *id.* at ¶¶ 60, 98, 105, 107 (alleging Zions "acknowledged" that PBMs sought to recover certain

reimbursements paid to Alliance Pharmacies "*that were in breach of their contracts with PBMs*").[7]   Knowledge of these potential breach of contract or "product sourcing" claims does not equate to knowledge of fraud.   Indeed, Plaintiffs acknowledge the alleged wrongdoing underlying their purported claims relates to a breach of contractual obligations. *See* Comp. at ¶¶ 39-40, 42 (alleging the distribution of LifeScan DME Strips was governed by contract).

It is well settled that breach of contract claims cannot be converted to claims for fraud or negligent misrepresentation. *Cioni v. Globe Specialty Metals, Inc*., 618 Fed. Appx. 42, 47 (3rd Cir. 2015) (dismissing fraud and negligent misrepresentation claims where the alleged wrong related to a breach of contract) (citing *Saratoga at Toms River Condo. Ass'n, Inc. v. Menk Corp*., 2014 N.J. Super. Unpub. LEXIS 1754 at *5 (N.J. Super. Ct. App. Div. July 17, 2014); *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 98 N.J. 555 (N.J. 1985)).   That disclosures to Zions may have suggested a potential breach of *contract* between Alliance and certain PBMs, or potential claims relating to "product sourcing issues in connection with the sale of diabetic testing strips" by LifeScan, is inadequate to sustain a claim against Zions for aiding and abetting or conspiracy to commit *fraud* under any pleading standard. *See Cafaro v. HMC Int'l, LLC*, Civil Action No. 07-2793, 2009 U.S. Dist. LEXIS 48748, *13-

---

[7] Plaintiffs incorrectly suggest that "paragraph 17 of the Credit Agreement explicitly acknowledged" Alliance's alleged fraud. There is no paragraph 17 of the Credit Agreement.

14 (D.N.J. June 10, 2009) (disregarding threadbare recitals that defendants were "aware of" and "knowingly and substantially assisted" in the alleged wrong, finding such allegations conclusory and "not entitled to the presumption of truth," and focusing on the well-pleaded facts in rejecting aiding and abetting claim).

Plaintiffs have also not alleged the required elements of fraud by the Individual Defendants, which serves as the predicate for Plaintiffs' secondary aiding and abetting and conspiracy claims against Zions.  According to the Amended Complaint, the Individual Defendants allegedly misrepresented information to certain PBMs *who are not parties to this case*. Comp. at ¶¶ 52-53, 138 (alleging Alliance committed fraud by submitting false insurance claims to "to multiple Pharmacy Plans").  From what Zions can glean from the Amended Complaint, Plaintiffs do not allege any misrepresentation made by the Individual Defendants *to Plaintiffs*.  Rather, Plaintiffs merely claim to have been damaged by the Individual Defendants' alleged misrepresentations to the non-party PBMs.  Because Plaintiffs have not alleged, at the most basic level, the elements required to establish they were defrauded by the Individual Defendants, Plaintiffs secondary aiding and abetting and conspiracy claims must be dismissed. *See Monsen v. Consol. Dressed Beef Co., Inc.*, 579 F.2d 793, 799 (3rd Cir. 1978) (existence of underlying wrong required for secondary aiding and abetting liability); *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (same for conspiracy liability).

For all these reasons, Count One should be dismissed as to Zions.

## POINT III

### THE COURT SHOULD DISMISS COUNT TWO AS TO ZIONS BECAUSE PLAINTIFFS HAVE FAILED TO STATE AN UNJUST ENRICHMENT CLAIM AGAINST ZIONS

Under Utah law, three elements must be present before unjust enrichment may serve as a basis of recovery: "[T]here must be (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Concrete Prods. Co. v. Salt Lake County*, 734 P.2d 910, 911 (Utah 1987) *(*quoting *Berrett v. Stevens*, 690 P.2d 553, 557 (Utah 1984)). The law is analogous in New Jersey. *See Shinn v. Champion Mortg. Co.*, 2010 U.S. Dist. LEXIS 9944 at *15 (D.N.J. Feb. 5, 2010).

Importantly, unjust enrichment is not an independent tort, and such a claim must be dismissed "where a plaintiff asserts an unjust enrichment cause of action along with tort claims and there appear to be no allegations that the plaintiff expected or anticipated remuneration from the defendant." *Torres-Hernandez v. CVT Prepaid Solutions*, Inc., 2008 U.S. Dist. LEXIS 105413 at 25-26 (D.N.J. Dec. 9, 2008).

Here, there is neither a "direct relationship" alleged between Zions and Plaintiffs, nor an expectation that Plaintiffs would receive payment from Zions. In

conclusory fashion, Plaintiffs allege only that "Defendants wrongfully obtained a monetary benefit to which they were not legally entitled." Comp. at ¶ 128. This is insufficient. Accordingly, the unjust enrichment claim should be dismissed as to Zions.

**POINT IV**

**THE COURT SHOULD DISMISS COUNT THREE AS TO ZIONS BECAUSE PLAINTIFFS HAVE FAILED TO STATE A NEGLIGENT MISREPRESENTATION CLAIM AGAINST ZIONS**

Under Utah law, to state a claim for negligent misrepresentation, a plaintiff must show "(1) a party carelessly or negligently makes a false representation, (2) the plaintiff actually relies on the statement, and (3) suffers a loss as a result of that reliance." *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 509 (D. Utah 2017). New Jersey law is nearly identical. *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006). The plaintiff must also demonstrate it sustained an injury proximately caused by the defendant's statements. *Id.*; *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 334 (1983). Finally, a plaintiff must plead the defendant owed it a duty of care. *Kronfeld v. First Jersey Nat. Bank,* 638 F. Supp. 1454, 1465 (D.N.J. 1986). "The common law tort of negligent misrepresentation shares all the components of fraud, but includes one additional factor: the misrepresentation must be made by a person with a duty to the plaintiff." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 619 (D.N.J.

23

1996), *rev'd on other grounds*, 133 F.3d 225 (3rd Cir.), *cert. denied*, 525 U.S. 817 (1998); *Marchese* 809 F. Supp. at 891-892.

As set forth above, Plaintiffs have failed to allege Zions made *any* representations to Plaintiffs, let alone a misrepresentation. *See* Point III, *supra*. Plaintiffs have also failed to allege Zions owed any duty of care to Plaintiffs.  Thus, Plaintiffs' negligent misrepresentation claim against Zions fails as a matter of law and should be dismissed.

## POINT V

### THE COURT SHOULD DISMISS COUNT FOUR AS TO ZIONS BECAUSE PLAINTIFFS HAVE FAILED TO STATE A TORTIOUS INTERFERENCE CLAIM AGAINST ZIONS

Under Utah law, a party complaining of tortious interference must demonstrate: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff." *LifeVantage Corp. v. Domingo*, 208 F. Supp. 3d 1202, 1224 (D. Utah 2016)(citing *Eldridge v. Johndrow*, 345 P.3d 553, 556 (Utah 2015)).  New Jersey's elements mirror Utah's. *Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co*., 912 F. Supp. 747, 771 (D.N.J. 1995) (citations omitted).

Plaintiffs fail to plead any facts establishing the elements of a tortious interference claim against Zions.   Plaintiffs only proffer naked, conclusory allegations that "Defendants' malicious interference" caused Plaintiffs to suffer

harm. Comp. at ¶ 140.  Plaintiffs plead no facts substantiating the self-serving contention that Zions made or "caused" Alliance to make misrepresentations to "insurance companies." Comp. at ¶ 138.  Plaintiffs also fail to allege the existence of any "particular anticipated contract" with which Zions allegedly interfered. *See Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 494 (D.N.J. 1998). Furthermore, Plaintiffs have not plausibly demonstrated any causal connection between Zions alleged interference and their claimed losses. *Id.*  The Amended Complaint makes clear any losses Plaintiffs sustained were the direct and proximate result of Alliance's alleged wrongdoing. Comp. at ¶ 139 (alleging ***Alliance's*** misrepresentations to the PBMs "caused" Plaintiffs' alleged losses).  Count Four should be dismissed as to Zions.

**POINT VI**

**AT A MINIMUM, THE COURT SHOULD DISMISS, STAY OR ABSTAIN FROM ADJUDICATING THE CLAIMS IN THE AMENDED COMPLAINT PENDING THE BANKRUPTCY COURT'S DETERMINATION OF LIFESCAN'S PROOF OF CLAIM**

**A. The Court Should Dismiss, Stay or Abstain from Adjudicating This Action Under Principles of Comity and Judicial Economy.**

It has long been recognized that principles of comity require courts of coordinate jurisdiction and equal rank to exercise care to avoid interference with each other's affairs. *See West Gulf Maritime Asso. v. ILA Deep Sea Local 24*, 751

25

F.2d 721, 728-29 (5th Cir. 1985) (citations omitted). "As between federal district courts, . . . the general principle is to avoid duplicative litigation." *Id.* "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (citations omitted). "In the bankruptcy context, abstaining from exercising jurisdiction on the basis of comity can be particularly appropriate, since 'the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding.'" *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 210-11 (S.D.N.Y. 2002) (internal citations omitted) (applied in the context of international comity).

LifeScan's Proof of Claim asserts fraud allegations against Alliance identical to those at issue in the Amended Complaint. The Proof of Claim arises out of the same alleged insurance "upcoding" scheme that serves as the foundation of the Amended Complaint, and both the theory and quantum of damages alleged in the Proof of Claim are substantially similar, if not the same, as in the Amended Complaint. Specifically, both actions seek damages in excess of $40 million on account of the difference between the price for which LifeScan allegedly sold DME Strips, and the price at which LifeScan would allegedly have sold Retail Strips in the absence of Alliance's purported fraud. *See* Comp. at ¶ 113; Ex. B at ¶ 17. The

substantial overlap between the Proof of Claim and Amended Complaint is underscored by the fact that the support for LifeScan's Proof of Claim consists merely of a modified version of the same Amended Complaint at issue in this action. *See* Ex. B.

The Bankruptcy Court is required to adjudicate the merits of LifeScan's Proof of Claim in connection with administering Alliance's Bankruptcy Case. The Bankruptcy Court's determination of the fraud allegations in the Proof of Claim will almost certainly bear upon—and could substantially limit—the issues this Court is required to address in disposing of the claims in the Amended Complaint. It would be a waste of party and judicial resources for this Court to simultaneously adjudicate substantially overlapping facts and claims, when the Bankruptcy Court will already be determining the issue central to both the Proof of Claim and Amended Complaint; namely, whether Alliance committed fraud in connection with the submission of test strip reimbursement claims to PBMs. Based on principles of comity and judicial economy, the Court should avoid this duplication in effort by employing its inherent power to dismiss or, alternatively, stay or abstain from disposing of the claims in the Amended Complaint pending the Bankruptcy Court's adjudication of LifeScan's Proof of Claim. *See Eash v. Riggins Trucking, Inc*., 757 F.2d 557, 563 (3d. Cir. 1985) ("A court[] [has] inherent power to manage its caseload [and] control its docket[.]"); *see also Nature's Benefit v. NFI*, 2007 U.S. Dist. LEXIS 62871, *8-9 (citing *Trippe*

*Mfg. Co. v. American Power Conservation Corp.,* 46 F.3d 624, 629 (7th Cir. 1995)

(applying inherent power)).

**B. The Court Should Dismiss, Stay or Abstain From Adjudicating This Action Pursuant to Fed R. Civ. P. 19(b) Because Alliance is an Indispensable Party.**

Fed. R. Civ. P. 19 governs when joinder of a party is compulsory and, if joinder is not feasible, whether a case can proceed without the absent party. Fed. R. Civ. P. 19; *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404-405 (3d Cir. 1993); *Bank of America Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1053-54 (3rd Cir. 1988). Determining whether a party is indispensable requires a two-step analysis. First, the Court must determine whether the absent party is a "necessary" party who should be joined pursuant to Rule 19(a). *See Bank of America Nat'l Trust and Sav. Ass'n,* 844 F.2d at 1054. Where a party must be joined, but joinder cannot be effectuated, the Court must determine under Rule 19(b) whether, "in equity and good conscience the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *Janney Montgomery Scott, Inc.*, 11 F.3d at 405. Whether an absent party is indispensable requires a fact-specific, flexible analysis. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968). Rule 19 contains no prescribed formula, and cannot be applied mechanically. *Id.* at 118 n. 14. The Court is vested with

substantial discretion in making the determination. *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir. 1984).

 1. <u>Alliance is a Necessary Party Pursuant to Rule 19(a)</u>

 A party is "necessary" if, absent that party: (1) complete relief cannot be accorded among existing parties; (2) the disposition of the action would prejudice, as a practical matter, the absent party's ability to protect its own interest; or (3) any existing party would be subject to a substantial risk of incurring "double, multiple or otherwise inconsistent obligations." *See* Fed. R. Civ. P. 19(a); *Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116, 1122-23 (D. Del. 1989). Thus, a party "whose absence results in ***any*** of [these identified issues] is a party whose joinder is compulsory if feasible." *Janney Montgomery Scott, Inc.*, 11 F.3d at 405 (emphasis added).

 Here, Alliance is a necessary party under all three subparts of Rule 19(a). As a preliminary matter, it is clear from both the Proof of Claim and Amended Complaint that Alliance was the primary actor in the alleged facts out of which Plaintiffs' claims arise. But for Alliance's bankruptcy filing and the resulting automatic stay, Alliance would undoubtedly have been named as a party-defendant in this action due to its significant role in the allegedly fraudulent scheme that forms the basis of the Amended Complaint. Alliance was clearly intended to be the primary target of Plaintiffs' claims. Commencing this action against Alliance's

officers and directors and, later, Zions, appears borne merely of an afterthought in an attempt to locate available parties against whom Plaintiffs could pursue their claims. There can be no genuine dispute that the parties and the Court would be better served by Alliance being joined as a party to this action, if joinder were possible. This fact alone militates in favor of a finding that Alliance is a necessary party. *See Johnson & Johnson*, 720 F. Supp. at 1120-22, 1128 (focusing on the absent party's degree of involvement and "close connection" to the facts giving rise to the claims).

In addition, absent Alliance's participation in this case, Zions and the other Defendants risk inconsistent obligations and needlessly multiplied proceedings. *See* Rule 19(a)(1)(B)(ii). As set forth above, LifeScan's Proof of Claim is currently pending in Alliance's Bankruptcy Case. The Proof of Claim substantially overlaps with the claims and allegations Plaintiffs assert in the Amended Complaint. By having the Bankruptcy Court and this Court separately adjudicate the same fraud-related claims—with the Bankruptcy Court adjudicating the claims against Alliance without the participation of Zions or the Individual Defendants, and this Court adjudicating the claims against Zions and the Individual Defendants without Alliance's participation—Zions and the Individual Defendants unquestionably run

the risk of being prejudiced by inconsistent determinations by the two courts arising from the same set of operative facts.[8]

Furthermore, Zions would be required to commence separate litigation in another forum to prosecute contribution, indemnification and/or other third-party claims against Alliance relating to the allegations in the Amended Complaint. Alliance would also likely not be bound by the outcome of this action as a non-party, resulting in the risk that Alliance could later initiate duplicative proceedings against Zions or the Individual Defendants, whether in the Bankruptcy Court or another forum, seeking to relitigate the same or substantially similar claims. *Provident Tradesmens Bank v. Patterson*, 390 U.S. at 110 ("Of course, since the outsider is not before the court, he cannot be bound by the judgment rendered.").

As such, Alliance is a necessary party under Rule 19(a)(1)(B)(ii). *See HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1198 n.9 (3rd Cir. 1996) ("one of Rule 19's purposes is to avoid piecemeal litigation" that may be "**caused by the failure to join an interested [party]**") (emphasis in original); *Johnson & Johnson*, 720 F. Supp. at 1122 (finding necessary party status where there existed a substantial risk of duplicative litigation).

---

[8] Nothing herein constitutes, or shall be construed as, a waiver of Zions' rights, claims, interests or defenses with respect to any determinations, findings of fact or conclusions of law made by the Bankruptcy Court which may impact Zions, all such rights, claims, interests and defenses being expressly reserved by Zions.

For substantially the same reasons, Alliance is also necessary pursuant to Rule 19(a)(1)(A), which stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court. *See Bank of America Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1054 n.5 (3rd Cir. 1988). Alliance is the entity Plaintiffs claim to have been at the forefront of the alleged fraud. *See* Comp. at ¶81 ("The Alliance Defendants actively participated in, provided substantial assistance to, or conspired to further ***Alliance's*** foundational practice of fraud.") (emphasis added). It is unclear at a fundamental level how this Court could grant anything other than partial relief to the existing parties relating to Alliance's alleged fraud without Alliance's presence as a defendant. Regardless, without Alliance, all parties remain exposed to subsequent claims by or against Alliance arising out of the same alleged transactions and occurrences at issue in the Amended Complaint. As such, any relief afforded the parties in this action cannot be regarded as "complete," particularly given Alliance's "close connection" to the facts alleged. *See Johnson & Johnson*, 720 F. Supp. at 1122. Furthermore, the Third Circuit has recognized the interests furthered by Rule 19 are not only those of the parties, "but also that of the public in avoiding repeated lawsuits on the same essential subject matter." *Bank of America Nat'l Trust and Sav. Ass'n*, 844 F.2d at 1054 n.5. As set

forth above, Alliance's absence as a party creates the substantial risk of successive and piecemeal litigation relating to the same essential subject matter.

Alliance's participation is also necessary pursuant to Rule 19(a)(1)(B)(i) to avoid prejudice to its ability to protect its own interests.  Even if not technically bound by the Court's determinations in this action, an unfavorable ruling would nonetheless constitute adverse persuasive precedent, thereby potentially harming Alliance's interest. *See, e.g.*, *Acton Co. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982) ("Even if [the absent party] would not be legally bound, an adverse ruling would be a persuasive precedent in a subsequent proceeding, and would weaken [the absent party's] bargaining position for settlement purposes."); *Doty v. St. Mary Parish Land Co.*, 598 F.2d 885, 887 (5th Cir. 1979).  Conversely, if Alliance is ultimately held bound by issue or claim preclusion, the prejudice to Alliance and creditors to Alliance's bankruptcy in allowing this action to proceed in its absence is even more apparent.

Alliance is clearly implicated throughout the Amended Complaint in Plaintiffs' fraud claims. *See, e.g.*, Comp. at ¶81.  By explicitly and repeatedly referring to Alliance in connection with its claims, Plaintiffs directly implicate Alliance as a necessary party, and its "glaring absence" constitutes a "blatant impediment to its ability to protect its bona fide interests." *See Rosenzweig v. Brunswick Corp.*, No. 08-807 (SDW), 2008 U.S. Dist. LEXIS 63655, *21-22 (D.N.J.

Aug. 20, 2008) (finding an absent party in such circumstances to be necessary and indispensable requiring dismissal of the action).

   2. Alliance is an Indispensable Party Requiring Dismissal of this Action Pursuant to Rule 19(b)

Because Alliance cannot be named as a party in this action, equity and good conscience requires that the Court dismiss or stay this action pending the Bankruptcy Court's adjudication of LifeScan's Proof of Claim. Fed. R. Civ. P.19(b). Rule 19(b) sets forth four nonexclusive, overlapping factors to be considered by courts in evaluating whether an absent party is indispensable. Fed. R. Civ. P. 19(b)(1)-(4)[9]; *Provident Tradesmens Bank v. Patterson*, 390 U.S. at 109-112.   These considerations also overlap with the analysis under Rule 19(a). *See, e.g.*, *Johnson & Johnson*, 720 F. Supp. at 1121 (citing *Acton Co., Inc.*, 668 F.2d at 81 (additional citations omitted)).   As such, the rationale supporting Alliance's status as a necessary party also establishes that Alliance is indispensable.

   i.   *A Judgment Rendered in Alliance's Absence Would Be Prejudicial.*

---

[9] The factors are: First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. *See* Fed. R. Civ. P. 19(b).

It is self-evident that a judgment entered in Plaintiffs' favor in this action, in Alliance's absence, would prejudice Alliance's interests.  Alliance is referenced throughout the Amended Complaint as a primary actor in the allegedly fraudulent scheme.  Even if a determination of liability would not technically bind Alliance, an unfavorable ruling would nonetheless constitute adverse persuasive precedent, thereby harming Alliance's interests.  As the Supreme Court has recognized, "'[i]t is not necessary that any finding of liability . . . be binding to show prejudice to the absent party' because the 'practical prejudice exists to the absent party in the effect the case might have as precedent.'" *Fiscus v. ComBus Fin. AG*, 2007 U.S. Dist. LEXIS 85275, *20-21 (D.N.J. Nov. 20, 2007) (citing *Whyham v. Piper Aircraft Corp.,* 96 F.R.D. 557 (D.C. Pa. 1982) (additional citations omitted).  Thus, any finding in Plaintiffs' favor would undoubtedly have an adverse impact on Alliance's interests. *Rosenzweig*, 2008 U.S. Dist. LEXIS 63655 at 27.

The Court should also consider when assessing this factor that the named-defendants "may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another." *Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 110.  As noted above, Alliance's absence in this action could result in successive claims by or against Alliance requiring the existing parties to litigate in piecemeal fashion that which should properly be decided in a single proceeding.  This imposes an unnecessary burden on the existing defendants. *See*

*Johnson & Johnson*, 720 F. Supp. at 1125 (citing *Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 110).  Without Alliance as a party, and because of the automatic stay resulting from its bankruptcy filing, it will also be difficult if not impossible for Zions and the Individual Defendants to obtain discovery from Alliance relating to their claims and defenses.  This also prejudices the Defendants. Defendants' capacity to fully and fairly assert their claims and defenses is an interest Rule 19 is intended to protect. *Id.*  As previously stated, Defendants further risk inconsistent determinations by the Bankruptcy Court and this Court in Alliance's absence.  For all these reasons, the first factor militates in favor of dismissal.

ii. *The Prejudice Cannot Be Lessened or Avoided.*

There are no practical means by which to diminish the prejudice to Alliance. Throughout the Amended Complaint, Plaintiffs' claims either explicitly and directly or implicitly and indirectly allege wrongdoing by Alliance.  Alliance is hopelessly intertwined with the allegations against Defendants such that any judgment in Plaintiffs' favor would necessarily imply wrongdoing by Alliance.  It is impossible to avoid this prejudice without Alliance's participation. *See Rosenzweig*, 2008 U.S. Dist. LEXIS 63655 at *27-28.

iii. *A Judgment Rendered in Alliance's Absence Would Be Inadequate.*

The emphasis in analyzing Rule 19(b)'s third criterion is the interests of the courts and the public in "complete, consistent, and efficient settlement of

controversies" and the importance of "settling disputes by wholes, whenever possible." *Id.* at 28-29 (citing *Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 111).  If the Court were forced to adjudicate Plaintiffs' claims without Alliance, the Court would essentially have to ignore Plaintiffs' allegations as they relate to Alliance.  This is not feasible given Alliance's integral role in the alleged wrongdoing.  Moreover, as Zions has noted throughout this analysis, if a judgment was rendered in Alliance's absence, there would also be a "high risk of successive and piecemeal litigation" based on Alliance's potential exposure to indemnity, contribution and/or other related claims by Zions and the Individual Defendants.  Moving forward in this forum with one of the key players missing would not promote the public's interest in the efficient administration of justice.  Rather, it could spawn repetitious litigation because this Court cannot resolve the entire dispute. *See Johnson & Johnson*, 720 F. Supp. at 1126.  "The considerations of judicial economy" under Rule 19(b) "weigh in favor of dismissal in order to avoid the inefficient, piecemeal disposition of Plaintiffs' claims." *Rosenzweig*, 2008 U.S. Dist. LEXIS 63655 at *29 (citing *Fiscus*, 2007 U.S. Dist. LEXIS 85275 at *22-23).

iv.   *Plaintiffs Have an Adequate Remedy if this Action is Dismissed.*

Finally, Plaintiffs would not be left without an adequate remedy if this action were dismissed or stayed for nonjoinder because LifeScan is already pursuing substantially similar claims, and the same damages, against Alliance in the

Bankruptcy Case.  Alternatively, Plaintiffs could also move for relief from the automatic stay before the Bankruptcy Court for permission to allow Alliance to be named as a defendant in this action for purposes of liquidating Plaintiffs' claims.

Regardless, Alliance is an integral component of Plaintiffs' alleged claims, and a balancing of the relevant factors makes clear this action should not proceed in its absence. *See Rosenzweig*, 2008 U.S. Dist. LEXIS 63655 at *26-29 (dismissing action for failure to join an indispensable party-defendant); *Johnson & Johnson*, 720 F. Supp. at 1121-27 (dismissing action for nonjoinder).  Accordingly, this action should be dismissed or stayed pending the Bankruptcy Court's adjudication of LifeScan's Proof of Claim.

## POINT VII

### PLAINTIFF JJHCS' CLAIMS SHOULD BE DISMISSED FOR LACK OF ARTICLE III STANDING

Article III of the United States Constitution confines the scope of federal judicial power to the adjudication of "cases" or "controversies." U.S. Const. Art. III, § 2.  Standing under Article III is an element of subject matter jurisdiction. *See Hartig Drug Co. Inc. v. Senju Pharm. Co*., 836 F.3d 261, 269 (3rd Cir. 2016).  Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3rd Cir. 2012).  In evaluating standing, courts apply

the Rule 12(b)(6) motion to dismiss standard. *In re Schering Plough Corp.*, 678 F.3d at 243. The question is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The "injury-in-fact element is often determinative." *Toll Bros. v. Twp. Of Readington*, 555 F.3d 131, 138 (3rd Cir. 2009). The injury-in-fact test "requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972).

JJHCS has failed to allege it suffered an injury in fact. JJHCS is merely alleged to have generally processed and paid claims and rebates submitted by insurance companies in connection with insurance reimbursements paid on products manufactured by LifeScan. Comp. at ¶ 12. Beyond this cursory allegation, Plaintiffs' Amended Complaint is devoid of any facts or explanation of how JJHCS was damaged because of Alliance's purported wrongdoing. In fact, the "Damages" section in the Amended Complaint does not even mention JJHCS. JJHCS' apparent lack of concrete injury is underscored by the fact that JJHCS is not a party to

LifeScan's Proof of Claim in Alliance's Bankruptcy Case, which seeks damages arising from the same facts as the Amended Complaint. *See* Ex. B.

On one hand, Plaintiffs appear to rely on a "lost sales" theory of damages, alleging that "LifeScan would have sold" additional Retail Strips but for Alliance's alleged fraud. *See* Comp. at ¶¶ 112-113, 8.  On the other hand, Plaintiffs allege "LifeScan" incurred damages by paying "substantial rebates" to pharmacy benefit plans "as a result of Defendants' fraud." Comp. at ¶ 8.  These appear to be mutually exclusive theories of damages.  Regardless, it is impossible to discern from the Amended Complaint (i) what Plaintiffs' theory of damages is; and (ii) whether LifeScan or JJHCS is alleged to have been the damaged party.  Accordingly, JJHCS' claims should be dismissed for lack of Article III standing.[10]

## **CONCLUSION**

For the foregoing reasons, Zions respectfully requests that the Court transfer venue of this action to the United States District Court for the District of Utah. Alternatively, the Court should dismiss Plaintiffs' claims for failure to state a claim, or stay this action pending the Bankruptcy Court's adjudication of LifeScan's Proof of Claim.

---

[10] Conversely, if JJHCS is the party alleged to have been damaged, it is unclear how LifeScan has suffered any injury-in-fact.

WALSH PIZZI O'REILLY FALANGA LLP
*Attorneys for Defendant ZB, N.A. (d/b/a Zions*
*First National Bank)*

By:      *s/ Liza M. Walsh*
         Liza M. Walsh
         Stephen V. Falanga
         Christopher M. Hemrick
         William T. Walsh, Jr.


Date:    March 5, 2018

41