# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIFESCAN, INC. and JOHNSON & JOHNSON HEALTH CARE SYSTEMS, INC.;<br><br>                 Plaintiffs,<br><br>     v.<br><br>JEFFREY C. SMITH; GEOFFREY S. SWINDLE; STEVEN L. HADLOCK; SAHILY PAOLINE; DAVID GRANT; JUSTIN LEAVITT; BLAINE SMITH; ALISON WISTNER; ADAM KOOPERSMITH; ZB, N.A.;<br>              Defendants. | Civil Action No. 2:17-cv-05552-CCC-CLW |

# MEMORANDUM OF LAW IN OPPOSITION
# TO THE INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

Table of Authorities ...................................................................................iv

INTRODUCTION ...................................................................................1

ARGUMENT ...........................................................................................4

I.     PLAINTIFFS' CLAIMS ARE PROPERLY PLEADED...........................4

    A.    The Fraud Claim Is Properly Pleaded .....................................4

        1.   The FAC Satisfies Rule 9(b) By Describing the Fraudulent Scheme in Detail and Pleading Available Information Regarding Each Defendant's Role In It ...........................................4

        2.   The Corporate Form Does Not Shield the Individual Defendants from Liability ................................................9

        3.   The Complaint Properly Pleads Aiding and Abetting and Conspiracy to Commit Fraud .......................................10

    B.    The Remaining Claims Are Properly Pleaded ....................13

        1.   The Complaint States a Claim for Unjust Enrichment .................14

        2.   The Complaint States a Claim for Negligent Misrepresentation ....................................................16

        3.   The Complaint States a Claim for Tortious Interference with Prospective Business Relations....................................19

II.    THIS COURT HAS PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS ...................................................20

    A.    The Court Has Personal Jurisdiction Because the Individual Defendants Are Alleged to Have Participated in Torts in New Jersey and Have Not Contradicted These Allegations.......................21

    B.    Discovery Confirms That the Court Has Jurisdiction Over the Individual Defendants .........................................................26

        1.   Jeffrey Smith ...............................................................26

2.  Sahily Paoline.................................................................................27

3.  David Grant..................................................................................29

4.  Steven Hadlock ...........................................................................30

5.  Justin Leavitt ...............................................................................32

6.  Blaine Smith.................................................................................33

7.  Alison Wistner and Adam Koopersmith........................................33

C.  If the Court Believes That Further Evidence Is Needed,
LifeScan Should Be Permitted to Complete Jurisdictional
Discovery......................................................................................34

III.  THE DISTRICT OF NEW JERSEY IS A PROPER VENUE FOR
THIS ACTION ........................................................................................36

CONCLUSION ....................................................................................................40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*48 Horsehill, LLC v. Kenro Corp.*,
  2006 N.J. Super. Unpub. LEXIS 707 (N.J. Super. Ct. App. Div.
  Feb. 22, 2006) ...................................................................................................17

*Abbott Labs. v. Adelphia Supply USA*,
  2017 U.S. Dist. LEXIS 1007 (E.D.N.Y. Jan. 4, 2017) .........................................8

*ADP, LLC v. Ultimate Software Grp., Inc.*,
  2018 U.S. Dist. LEXIS 35240 (D.N.J. Mar. 5, 2018) .......................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................13, 20

*Bachmann Software & Servs. v. Intouch Group, Inc.*,
  2008 U.S. Dist. LEXIS 55719 (D.N.J. July 22, 2008) ......................................37

*Banco Popular N. Am. v. Gandi*,
  876 A.2d 253 (N.J. 2005) ..........................................................................11, 12

*Barr Labs., Inc. v. Bolar Pharm. Co.*,
  1992 U.S. Dist. LEXIS 22882 (D.N.J. July 13, 1992) ......................................19

*Bd. of Educ. v. Hoek*,
  183 A.2d 633 (N.J. 1962) .............................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................13

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)........................................................................................22

*Calder v. Jones*,
  465 U.S. 783 (1984)...................................................................................22, 25

*Calkins v. Dollarland, Inc.*,
  117 F. Supp. 2d 421 (D.N.J. 2000)..................................................................37

*Capital Health Sys. v. Veznedaroglu*,
  2017 U.S. Dist. LEXIS 28390 (D.N.J. Feb. 27, 2017) .......................................15

*Capitaliza-T Sociedad de Responsibilidad Limitada v. Wachovia Bank
  of Del. N.A.*,
  2011 U.S. Dist. LEXIS 146599 (D. Del. Dec. 21, 2011) ...................................13

*Charles Bloom & Co. v. Echo Jewelers*,
  652 A.2d 1238 (N.J. Super. Ct. App. Div. 1995) ...............................................10

*Christie v. Nat'l Inst. for Newman Studies*,
  258 F. Supp. 3d 494, 511 (D.N.J. 2017).................................................22, 23, 24

*Cohen v. Koenig*,
  25 F.3d 1168 (2d Cir. 1994) ..................................................................................6

*Craftmatic Sec. Litig. v. Kraftsow*,
  890 F.2d 628 (3d Cir. 1989) .........................................................................5, 7, 8

*Duell ex rel. D.D. v. Kawasaki Motors Corp.*,
  962 F. Supp. 2d 723 (D.N.J. 2013)......................................................................24

*Dapuzzo v. Anderson*,
  2015 U.S. Dist. LEXIS 33409 (D.N.J. Mar. 18, 2015) ......................................37

*Donachy v. Intrawest United States Holdings, Inc.*,
  2012 U.S. Dist. LEXIS 34029 (D.N.J. Mar. 14, 2012) ......................................17

*Donner v. Tams-Witmark Music Library, Inc.*,
  480 F. Supp. 1229 (E.D. Pa. 1979)......................................................................23

*Equiom (Isle of Man) Ltd. v. Jacobs*,
  2017 U.S. Dist. LEXIS 211083 (D.N.J. 2017) (Cecchi, J.).........................15, 16

*Erickson v. Pardus*,
  551 U.S. 89 (2007)...............................................................................................13

*Failla v. City of Passaic*,
  146 F.3d 149 (3d Cir. 1998) ..........................................................................12-13

*Farris v. Cty. of Camden*,
  61 F. Supp. 2d 307 (D.N.J. 1999).......................................................................10

*Fesniak v. Equifax Mortg. Servs. LLC*,
  2015 U.S. Dist. LEXIS 66238 (D.N.J. May 20, 2015).......................................24

*Ford Motor Co. v. Edgewood Props.*,
  2009 U.S. Dist. LEXIS 4172 (D.N.J. Jan. 20, 2009)..........................................12

*Franklin Med. Assocs. v. Newark Pub. Sch.*,
  828 A.2d 966 (N.J. Super. Ct. App. Div. 2003) ...................................................11

*Gray v. BMW of N. Am., LLC*,
  2014 U.S. Dist. LEXIS 133337 (D.N.J. Sept. 23, 2014).......................................6

*H. Rosenblum, Inc. v. Adler*,
  461 A.2d 138 (N.J. 1983) ............................................................................. 16-17

*Harkes v. Accessory Corp.*,
  2010 U.S. Dist. LEXIS 21748 (D.N.J. Mar. 10, 2010) .......................................10

*Highlands Ins. Co. v. Hobbs Group, LLC.*,
  373 F.3d 347 (3d Cir. 2004) ................................................................................18

*Hirsch v. Phily*,
  73 A.2d 173 (N.J. 1950) ......................................................................................10

*Howmedica Osteonics Corp. v. Bagwell*,
  2016 U.S. Dist. LEXIS 92708 (D.N.J. July 14, 2016) .......................................40

*Imo Indus., Inc. v. Kiekert, AG*,
  155 F.3d 254 (3d Cir. 1998) ................................................................................20

*J&J Sports Prods. v. Premium Lounge, Inc.*,
  2014 U.S. Dist. LEXIS 81902 (E.D. Mo. June 16, 2014) ....................................6

*Jones v. City of Chicago*,
  856 F.2d 985 (7th Cir. 1988) ......................................................................... 11-12

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ..................................................................................38

*In re K-Dur Antitrust Litig.*,
  338 F. Supp. 2d 517 (D.N.J. 2004)..................................................................14, 15

*Kaufman v. I-Stat Corp.*,
    754 A.2d 1188 (N.J. 2000) ............................................................5, 17

*Kirtley v. Wadekar*,
    2006 U.S. Dist. LEXIS 60309 (D.N.J. Aug. 24, 2006) .....................17

*Klemka v. Brush Wellman, Inc.*,
    2004 U.S. Dist. LEXIS 29826 (D.N.J. May 26, 2004)................................. 10-11

*Kraft v. Wells Fargo & Co.*,
    2017 U.S. Dist. LEXIS 119691 (D.N.J. July 31, 2017) .....................13

*Lord Abett Mun. Income Fund, Inc. v. Citigroup Global Mkts., Inc.*,
    2017 U.S. Dist. LEXIS 128400 (D.N.J. Aug. 4, 2017) (Cecchi, J.)..................18

*Market Transition Facility v. Twena*,
    941 F. Supp. 462 (D.N.J. 1996) .........................................................39

*N.J. Dep't of Treasury ex rel. McCormac v. Qwest Commc'ns Intern.,
Inc.*,
    904 A.2d 775 (N.J. Super. Ct. App. Div. 2006) ................................12

*McMahon v. Arsenberger Trucking Co.*,
    2017 U.S. Dist. LEXIS 128383 (E.D. Pa. Aug. 11, 2017) .................37

*Melendez v. Colorite Plastics Co.*,
    2015 U.S. Dist. LEXIS 150899 (D.N.J. Oct. 19, 2015) .....................13

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004) .........................................................22, 24

*Moe v. Seton Hall Univ.*,
    2010 U.S. Dist. LEXIS 38621 (D.N.J. Apr. 20, 2010)......................10

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
    331 F.3d 406 (3d Cir. 2003) ..............................................................11

*NCR Credit Corp. v. Ye Seekers Horizon*,
    17 F. Supp. 2d 317 (D.N.J. 1998)......................................................40

*News Am. Mktg. In'Store Servs., LLC v. Anidjar*,
    2010 U.S. Dist. LEXIS 80242 (D.N.J. Aug. 4, 2010) .........................9

*Norben Imp. Corp. v. Metro. Plant & Flower Corp.*,
   2005 U.S. Dist. LEXIS 34386 (D.N.J. July 15, 2005) ......................................36

*Oliver v. Funai Corp.*,
   2015 U.S. Dist. LEXIS 169998 (D.N.J. Dec. 21, 2015).....................................10

*People Express Airlines v. Consol. Rail Corp.*,
   495 A.2d 107 (N.J. 1985) ..............................................................................17, 18

*Perkins v. Sunbelt Rentals*,
   2015 U.S. Dist. LEXIS 185039 (N.D.N.Y. Aug. 13, 2015) ..............................35

*PNY Techs., Inc. v. Salhi*,
   2018 U.S. Dist. LEXIS 32320 (D.N.J. Feb. 28, 2018) (Cecchi, J.)....................15

*Print Data Corp. v. Morse Fin., Inc.*,
   2002 U.S. Dist. LEXIS 14577 (D.N.J. July 17, 2002) ......................................37

*Printing Mart-Morristown v. Sharp Elecs. Corp.*,
   563 A.2d 31 (N.J. 1989) ...................................................................................19

*Prudential Ins. Co. of Am. v. Credit Suisse Secs. LLC*,
   2013 U.S. Dist. LEXIS 142191 (D.N.J. Sept. 30, 2013).....................................6

*Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*,
   2013 U.S. Dist. LEXIS 50788 (D.N.J. Apr. 9, 2013)........................................18

*Robsac Industries, Inc. v. Chartpak*,
   497 A.2d 1267 (N.J. Super. Ct. App. Div. 1985) ..............................................10

*Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*,
   2017 U.S. Dist. LEXIS 150853 (S.D. Ind. Sept. 18, 2017)......................7, 8, 25

*Rocke v. Pebble Beach Co.*,
   541 F. App'x 208 (3d Cir. 2013) ......................................................................35

*SDS USA, Inc. v. Ken Specialties, Inc.*,
   2002 U.S. Dist. LEXIS 16762 (D.N.J. Aug. 28, 2002) .....................................23

*Selective Ins. Co. v. Food Mktg. Merch.*,
   2013 U.S. Dist. LEXIS 69506 (D.N.J. May 16, 2013)................................. 39-40

*Senju Pharm. Co., Ltd. v. Metrics, Inc.*,
  96 F. Supp. 3d 428, 435 (D.N.J. 2015) ............................................................... 36

*Seville Indus. Mach. Corp. v. Southmost Machinery Corp.*,
  742 F.2d 786 (3d Cir. 1984) ...................................................................... 5, 9

*Sheridan v. NGK Metals Corp.*,
  609 F.3d 239 (3d Cir. 2010) ........................................................................ 14

*Stewart v. Beam Glob. Spirits & Wine, Inc.*,
  877 F. Supp. 2d 192 (D.N.J. 2012) ............................................................ 15, 16

*T.J. McDermott Transp. Co. v. Cummins, Inc.*,
  2015 U.S. Dist. LEXIS 29678 (D.N.J. Mar. 11, 2015) ........................................ 6

*Tatis v. Allied Interstate, LLC*,
  882 F.3d 422 (3d Cir. 2018) ........................................................................ 14

*Telebrands Corp. v. Mopnado*,
  2016 U.S. Dist. LEXIS 10671 (D.N.J. Jan. 12, 2016) ....................................... 24

*Toys "R" Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003) ........................................................................ 35

*Van Dam Egg Co. v. Allendale Farms, Inc.*,
  489 A.2d 1209 (N.J. Super. Ct. App. Div. 1985) ............................................. 9

## Statutes and Rules

N.J. Court R. 4:4-4 ............................................................................................. 20

N.J. Stat. Ann. § 2A:53A-25 .............................................................................. 17

Fed. R. Civ. P. 4(k) ............................................................................................ 20

Fed. R. Civ. P. 8(a) ............................................................................................ 14

Fed. R. Civ. P. 9(b) ...................................................................................*passim*

Fed. R. Civ. P. 12(b)(2) ...................................................................................... 2

**Other Authorities**

Restatement (First) of Restitution § 1 ........................................................14

Restatement (Second) of Torts § 533 .........................................................5

Restatement (Second) of Torts § 876) ......................................................11

## INTRODUCTION

Plaintiffs brought this lawsuit against the executives and directors responsible for carrying out a nationwide insurance fraud scheme through their former company Alliance Medical Holdings, LLC, which declared bankruptcy in 2017 in response to an ongoing federal criminal investigation.  In their motions to dismiss, Defendants do not (and cannot) contend that the First Amended Complaint (FAC) fails to adequately describe the fraudulent acts perpetrated by Alliance.  Rather, they argue that *they* somehow cannot be held responsible for these acts, either because Plaintiffs have failed to plead enough detail about their roles in Alliance's fraud or because Defendants lack sufficient contacts with New Jersey.  Defendants are wrong on the law—and on the facts.

Even if no discovery had been taken to date, the Individual Defendants'[1] motions would easily fail.  The law is well settled that individuals can be held personally liable for fraud and other intentional torts they supervise or participate in on behalf of a corporation.  Here, the fraudulent scheme described in the complaint—submitting false National Drug Code (NDC) numbers to insurers— was the "foundational practice" of Alliance.  FAC ¶¶ 53, 82.  It is eminently plausible, as the FAC alleges with all available detail, that the Individual Defendants, all of whom held positions of responsibility at Alliance, supervised

---

[1] The Individual Defendants are all Defendants other than ZB, NA.  Four groups of Individual Defendants have moved to dismiss the amended complaint.  Dkt Nos. 61-1, 72-1, 87, 89-1.

and participated in this fraud.  And because a large amount of the fraud was carried out through a New Jersey pharmacy, Defendants are subject to personal jurisdiction in this state.

In their motions, Defendants do not seriously challenge the principle that they can be held liable for the fraudulent conduct they knowingly supervised or participated in.  And though motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2) are allowed to include evidence contradicting the facts alleged in the complaint, the Individual Defendants here make no attempt to do so. Instead, the Individual Defendants contend that the FAC should be dismissed because Plaintiffs have not pleaded specific facts regarding each of their individual roles in Alliance's fraud.  This argument fails.  As shown below, victims of fraudulent conspiracies are not required to plead the exact roles played by each conspirator where, as here, the fraudulent scheme itself is described with particularity and further detail about the roles of each defendant is impossible to obtain without discovery.

Furthermore, discovery produced since the FAC was filed has confirmed that the Individual Defendants actively participated in Alliance's fraud in the state of New Jersey.  In recent years, Peterson Pharmacy in South Amboy, New Jersey was Alliance's second largest submitter of fraudulent reimbursement claims anywhere in the United States.  Smiley Decl. at ¶¶ 19, 21.  The Individual

Defendants actively participated in setting up this fraudulent business in New Jersey and were very excited about it.  As Individual Defendant and former Alliance CEO Jeffrey Smith commented upon greenlighting the venture, "***Let's rock NJ***."  *See* Mott Decl. ¶ 12 (emphasis added).

In a dramatic deposition held on April 12, 2018, Masum Amin, a New Jersey pharmacist who worked for Peterson, testified that she discovered the precise fraud described in the complaint (the submission of false NDC codes).  Ms. Amin complained to Defendants David Grant and Sahily Paoline, asserting that the practice constituted "fraud, waste, and abuse."  *Id.* ¶ 73-74; *see also id.* ¶¶ 43, 50-51, 64.  Rather than do anything to end the fraud, Grant and Paoline tried unsuccessfully to persuade Ms. Amin to abandon her concerns.  *Id.* ¶¶ 52, 54, 65-71.  When this failed, Paoline, herself a licensed New Jersey pharmacist, stepped in and signed off on fraudulent paperwork personally.  *Id.* ¶¶ 55-58.

The record to date contains dozens of additional documents detailing the Individual Defendants' direct participation in Alliance's New Jersey fraud.  *See generally* Mott Decl.  With discovery ongoing and the Individual Defendants yet to produce any documents, further evidence of the Individual Defendants' wrongful conduct, and further evidence of their participation in New Jersey torts, will inevitably come to light.  Defendants should not be shielded from further discovery on Plaintiffs' claims.  Their motions should be denied.

## ARGUMENT

## I.   PLAINTIFFS' CLAIMS ARE PROPERLY PLEADED

### A.   The Fraud Claim Is Properly Pleaded

Unable to dispute that Alliance's "foundational practice" was fraud or to deny that they were the individuals responsible for supervising and executing that fraud, the Individual Defendants seek refuge in an erroneous account of the federal pleading standards.  Defendants contend that because the FAC does not identify details like the exact dates, times, and places of their own individual actions in furtherance of their fraudulent scheme, it does not meet the heightened standards of Rule 9(b).  *See, e.g.*, Dkt. No. 61-1: Grant et al. Br. at 24-25; Dkt. No. 72-1: Leavitt Br. at 7-8; Dkt. No. 87: Wistner et al. Br. at 7-8; Dkt. No. 89-1: Swindle Br. at 7.  Defendants' arguments misstate the requirements of Rule 9(b) and misapprehend the substantive law governing fraud, aiding and abetting, and conspiracy claims in New Jersey.

### 1.   The FAC Satisfies Rule 9(b) By Describing the Fraudulent Scheme in Detail and Pleading Available Information Regarding Each Defendant's Role In It

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Here, Defendants do not even dispute that the particular circumstances described in the FAC constitute fraud.  The FAC describes in great detail the complex mechanisms by which Defendants' fraudulent enterprise operated.  *See,*

*e.g.*, Dkt. No. 41: FAC ¶¶ 4-8, 36-41, 47-50, 52-70.  And it specifies the precise statements that were fraudulent:  falsely submitting the National Drug Code (NDC) number for LifeScan's retail strips for insurance reimbursement while dispensing products with different NDC numbers.[2]  *See id.* ¶¶ 47-49, 62, 66.  These allegations plainly meet the requirements of Rule 9(b).  *See, e.g.*, *Seville Indus. Mach. Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (noting that "[p]laintiffs are free to use alternative means" besides "allegations of 'date, place or time'" to "inject[] precision and some measure of substantiation into their allegations of fraud").

Where, as here, the complaint describes a common fraudulent scheme with particularity, plaintiffs do not need to assign precise responsibility for the fraud as among a group of defendants if that information is not available to them without discovery.  "[C]ourts have relaxed the [Rule 9(b) particularity requirement] when factual information is peculiarly within the defendant's knowledge or control." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).  "Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs."  *Id.*

Relying on this principle, numerous courts in this District and elsewhere

---

[2] As discussed in Plaintiffs' Opposition to ZB, NA's Motion to Dismiss, this conduct states a claim under the "indirect reliance" theory of fraud endorsed by the New Jersey Supreme Court.  *See Kaufman v. I-Stat Corp.*, 754 A.2d 1188, 1195-97 (N.J. 2000) (citing, *inter alia*, Restatement (Second) of Torts § 533).

have rejected the argument that a fraud claim should be dismissed because it does not detail each defendant's precise role in a common act of fraud.  *See, e.g.*, *Gray v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 133337, at *6-8 (D.N.J. Sept. 23, 2014) (plaintiff satisfied Rule 9(b) even where it could not identify the "specific roles" that each defendant played in the fraudulent scheme where defendants "actively concealed" their wrongful conduct); *Prudential Ins. Co. of Am. v. Credit Suisse Secs. LLC*, 2013 U.S. Dist. LEXIS 142191, at *55-56 (D.N.J. Sept. 30, 2013) (declining to dismiss fraud claims where the complaint "describe[d] each defendant's respective roles" in the underlying business, "which defendants were involved with" each component of the business, and "how their respective roles put them in a position to make and/or know about the misrepresentations"); *T.J. McDermott Transp. Co. v. Cummins, Inc.*, 2015 U.S. Dist. LEXIS 29678, at *18-19 (D.N.J. Mar. 11, 2015) (rejecting defendants' arguments that the complaint improperly "lump[ed] them together and fail[ed] to distinguish their respective conduct" because references to "the undifferentiated 'Defendants' [we]re reasonably understood as alleging conduct for which all [] Defendants [we]re responsible").[3]

---

[3] *Accord, e.g.*, *Cohen v. Koenig*, 25 F.3d 1168, 1174 (2d Cir. 1994) (reversing Rule 9(b) dismissal where "sufficient facts were pleaded to suggest that plaintiffs may be able to prove that defendants more likely than not knew" of fraud, and where complaint "spelled out circumstances from which it could easily be inferred that the [defendants] had a motive" to commit fraud); *J&J Sports Prods. v. Premium Lounge, Inc.*, 2014 U.S. Dist. LEXIS 81902, *8-9 (E.D. Mo. June 16, 2014)

These decisions are well reasoned.  They are "sensitive to the fact" that using the heightened pleading requirements of Rule 9(b) to prevent discovery on matters uniquely within the defendants' knowledge would "permit sophisticated defrauders to successfully conceal the details of their fraud."  *Craftmatic*, 890 F.2d at 645.  Indeed, concealing their responsibility for Alliance's fraud is quite explicitly what the Individual Defendants are seeking to do here.  This Court should reject this effort.

Contrary to the Individual Defendants' argument (*see, e.g.*, Grant et al. Br. at 22-24), the Southern District of Indiana case *Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*, 2017 U.S. Dist. LEXIS 150853 (S.D. Ind. Sept. 18, 2017), does not support their motion.  The defendants in that case were not pharmacies that submitted false insurance claims, but rather distributors of test strips that had made specific misrepresentations directly to Roche.  *See id.* at *5-10.  The court noted that "Rule 9(b)'s requirements may be relaxed if the plaintiff lacks access to all of the facts necessary to properly plead with particularity," but dismissed the fraud claims **without prejudice** so that Roche could identify why it lacked knowledge as to each defendant's connection to the fraudulent statements.  *See id.* at *28.

Here, in contrast, the Individual Defendants supervised and managed a

---

(denying motion to dismiss because "once the parties conduct discovery, the record may or may not show personal liability on the part" of the individual defendant).

network of pharmacies whose "foundational practice" was submitting false reimbursement claims to **insurers**.  The precise role that each Individual Defendant played here is a "detail[] of corporate internal affairs" that Plaintiffs "cannot be expected to have personal knowledge of," *Craftmatic*, 890 F.2d at 645, and the District of New Jersey case law cited above applies with full force.  If the Court is inclined to look to cases from other jurisdictions addressing the diversion of blood glucose test strips, *Abbott Labs. v. Adelphia Supply USA*, 2017 U.S. Dist. LEXIS 1007 (E.D.N.Y. Jan. 4, 2017), is more apposite than *Roche*.  Like Defendants here but unlike those in *Roche*, the defendants in Abbott were pharmacies that falsely submitted retail NDC codes for reimbursement.  *See id.* at *37-40.  The court denied their motion to dismiss Abbott's fraud claims.  *See id.*  When certain individual defendants moved to dismiss on the ground that their own involvement in the fraud had not been adequately pleaded, the court denied their motion, stating that the "analysis above applies equally to the Individual Movants as it does to the other defendants."  *Id.* at *49.

The FAC contains detailed allegations regarding the Individual Defendants' responsibilities with respect to Alliance's fraudulent business, and it identifies the role each Individual Defendant played in that scheme, to the extent LifeScan could obtain such information before discovery.  *See* FAC ¶¶ 13, 15-21, 26, 82-88.  These allegations belie Defendants' repeated argument that Plaintiffs have failed to

"specify[] the allegations of fraud applying to each defendant." *See* Grant et al. Br. at 22-27. The FAC gives Defendants adequate "notice of the precise misconduct with which they are charged," *Seville*, 742 F.2d at 791—namely, playing their parts as officers and directors of a company whose "foundational practice" was submitting false NDC codes to insurance companies. *See* FAC ¶¶ 53, 82. Although Plaintiffs might have had access to more detail were it not for Defendants' concerted efforts to conceal their fraud (*see* FAC ¶¶ 59, 62-66, 70, 80), that is not a proper reason to dismiss the FAC.

### 2. The Corporate Form Does Not Shield the Individual Defendants from Liability

Although their primary argument is based on Rule 9(b) pleading standards, the Individual Defendants also appear to suggest that they are ***substantively*** entitled to prevail because the fraud detailed in the FAC was carried out by Alliance rather than by them. *See, e.g.*, Grant et al. Br at 25. This argument misapprehends the law governing the individual liability of corporate officials. "Under New Jersey law, corporate officers who participate in fraud or other intentional torts can be held personally liable for the losses occasioned thereby." *News Am. Mktg. In'Store Servs., LLC v. Anidjar*, 2010 U.S. Dist. LEXIS 80242, at *14 (D.N.J. Aug. 4, 2010); *Van Dam Egg Co. v. Allendale Farms, Inc.*, 489 A.2d 1209, 1211 (N.J. Super. Ct. App. Div. 1985) ("A corporate officer or director is liable to persons injured by his own torts, even though he was acting on behalf of a

corporation and his intent was to benefit the corporation.").  There are numerous

additional cases that apply this principle.[4]  Simply put, the fact that the Individual

Defendants acted through a corporation does not shield them from responsibility

for their decision to knowingly participate in insurance fraud.

### 3.     The Complaint Properly Pleads Aiding and Abetting and Conspiracy to Commit Fraud

The FAC also properly pleads aiding and abetting and conspiracy to commit

fraud.  As a preliminary matter, there is nothing wrong with combining these

claims into the same cause of action as the underlying fraud claim.  In New Jersey,

claims for aiding and abetting and civil conspiracy act as a "liability expanding

mechanism" and are premised on the underlying tort.  *Farris v. Cty. of Camden*, 61

F. Supp. 2d 307, 326 (D.N.J. 1999); *see also, e.g.*, *Oliver v. Funai Corp.*, 2015

U.S. Dist. LEXIS 169998, at *14 (D.N.J. Dec. 21, 2015) ("In New Jersey, civil

conspiracy claims are derivative of the underlying fraud claim.").  Elements of

those claims that are independent from the underlying tort are "not the gravamen of

the charge, but merely a matter of aggravation, enabling the plaintiff to recover

---

[4] *Accord, e.g.*, *Moe v. Seton Hall Univ.*, 2010 U.S. Dist. LEXIS 38621, at *29-30 (D.N.J. Apr. 20, 2010) (declining to dismiss tort claims against individual defendants, employees of a university, given the facts supporting their alleged participation in tortious conduct); *Harkes v. Accessory Corp.*, 2010 U.S. Dist. LEXIS 21748, at *19-20 (D.N.J. Mar. 10, 2010) (declining to dismiss claim against individual defendant where the complaint alleged that the individual was the "corporate officer carrying out the tort"); *Hirsch v. Phily*, 73 A.2d 173, 177 (N.J. 1950); *Charles Bloom & Co. v. Echo Jewelers*, 652 A.2d 1238, 1243 (N.J. Super. Ct. App. Div. 1995); *Robsac Industries, Inc. v. Chartpak*, 497 A.2d 1267, 1271 (N.J. Super. Ct. App. Div. 1985).

against all the defendants as joint tortfeasors." *Klemka v. Brush Wellman, Inc.*, 2004 U.S. Dist. LEXIS 29826, at *28 (D.N.J. May 26, 2004) (quoting *Bd. of Educ. v. Hoek*, 168 A.2d 829, 835 (N.J. Super. Ct. App. Div. 1961)).  Defendants cite no cases suggesting that aiding and abetting and conspiring to commit fraud must be pleaded as separate causes of action.

Defendants' contention that the fraud claims must be dismissed for "failure to identify specific statements made by <u>each</u> individual Defendant to any specific individual or entity" (*see* Grant et al. Br. at 25) similarly finds no support in the law.  As joint tortfeasors, the Individual Defendants are each liable for the fraud they carried out through a common scheme.  *See, e.g.*, *Bd. of Educ. v. Hoek*, 183 A.2d 633, 646 (N.J. 1962) ("Proof of a conspiracy makes the conspirators jointly liable for the wrong and resulting damages."); *Franklin Med. Assocs. v. Newark Pub. Sch.*, 828 A.2d 966, 975 (N.J. Super. Ct. App. Div. 2003) (citing Restatement (Second) of Torts § 876) ("[A] person who aids and abets the commission of a tort is jointly and severally liable for the resultant damages.").  "Not every conspirator must commit an overt act in furtherance of the conspiracy, so long as at least one does." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003).  To be held liable as a co-conspirator, "[i]t is enough . . . if you understand the general objectives of [a] scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them." *Banco Popular N.*

*Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

Defendants do not dispute that the FAC describes numerous overt acts of fraud (*i.e.*, the submission of fraudulent insurance claims by Alliance). The FAC further alleges that each Individual Defendant "underst[ood] the general objectives of the scheme, accept[ed] them, and agree[d], either explicitly or implicitly, to do [their] part to further them." *Banco Popular*, 876 A.2d at 263; *see, e.g.*, FAC ¶¶ 82-88. This is sufficient to plead a conspiracy. *See Banco Popular*, 876 A.2d at 263; *Ford Motor Co. v. Edgewood Props.*, 2009 U.S. Dist. LEXIS 4172, at *37 (D.N.J. Jan. 20, 2009) (allegations that defendants "oversaw and/or were responsible for" operations of alleged scheme constituted "overt acts").

The FAC also establishes that Defendants aided and abetted their common fraudulent scheme by "knowingly and substantially assist[ing] the principal violation." *N.J. Dep't of Treasury ex rel. McCormac v. Qwest Commc'ns Intern., Inc.*, 904 A.2d 775, 784 (N.J. Super. Ct. App. Div. 2006). As explained above, Rule 9(b) does not require specifying each corporate participant's precise role in the fraud prior to discovery. Furthermore, it is black-letter law that "inaction can form the basis of aiding and abetting liability if it rises to the level of providing substantial assistance or encouragement." *Failla v. City of Passaic*, 146 F.3d 149,

157 (3d Cir. 1998).[5]  The FAC expressly alleges (and the facts born out in

discovery thus far have proved) that the Individual Defendants were well aware of

the fraudulent practice that was "foundational" to the business they oversaw and—

at the very least—failed to stop it.  *See, e.g.*, FAC ¶¶ 91-92, 118.  They are not

entitled to dismissal of Plaintiffs' claim for aiding and abetting fraud.

## B.     The Remaining Claims Are Properly Pleaded

Plaintiffs' remaining claims—negligent misrepresentation, unjust

enrichment, and tortious inference—are governed by ordinary pleading standards

rather than the heightened requirements of Rule 9(b).  Under these standards, a

complaint survives a 12(b)(6) motion to dismiss if it alleges sufficient "factual

matter" to state a claim "that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Specific facts are not necessary; the [complaint] need only give the defendant fair

notice of what the claim is and the grounds upon which it rests."  *Kraft v. Wells

Fargo & Co.*, 2017 U.S. Dist. LEXIS 119691, at *12 (D.N.J. July 31, 2017) (citing

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  The court must "accept as true all

---

[5] *Accord, e.g.*, *Melendez v. Colorite Plastics Co.*, 2015 U.S. Dist. LEXIS 150899, at *15-17 (D.N.J. Oct. 19, 2015) (holding complaint properly joined a co-defendant where the defendant's "inaction[] condoned [and] ratified" the wrongful conduct); *Capitaliza-T Sociedad de Responsibilidad Limitada v. Wachovia Bank of Del. N.A.*, 2011 U.S. Dist. LEXIS 146599, at *15 (D. Del. Dec. 21, 2011) (holding plaintiff alleged a plausible claim for aiding and abetting where defendants' "inaction in failing to report [an] atypical transaction was consciously done because the Defendants profited substantially from [the third party's] fraudulent activity.").

allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [must] construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). Plaintiffs' remaining claims easily meet these standards.

### 1.    The FAC States a Claim for Unjust Enrichment

To prevail on a claim for unjust enrichment, a plaintiff must allege "(1) at plaintiff's expense (2) defendant received [a] benefit (3) under circumstances that would make it unjust for defendant to retain [that] benefit without paying for it." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (citing Restatement (First) of Restitution § 1).[6]   Defendants do not dispute that they received compensation and other benefits from a business that earned virtually all of its profits by defrauding Plaintiffs and their competitors.  *See* FAC ¶ 86, 110-13, 128-29.  Rather, they challenge the unjust enrichment claim on two grounds: *first*, that "given the degrees of separation between them," Plaintiffs' loss did not "'confer[] a benefit' on any of the Defendants" (*see* Grant et al. Br. at 32); and *second*, that there was no "direct relationship" between Plaintiffs and Defendants because there were "multiple steps" between Plaintiffs and Alliance, and the Defendants are mere employees or board members of Alliance (*id.* at 30–33).  Both

---

[6] Defendants concede that "the general pleading standard of Rule 8(a) applies" to Plaintiffs' unjust enrichment claim.  Grant et al. Br. at 29.

arguments fail.

*First*, Defendants' reliance on "the degrees of separation" between them and Plaintiffs is misplaced.  Grant et al. Br. at 32.  "The critical inquiry" in an unjust enrichment claim "is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct."  *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d at 544.  Where, as here, an individual officer, director, or employee receives a benefit from retained funds wrongfully obtained through his or her company, those payments may constitute a "benefit" for purposes of a claim for unjust enrichment.  *See, e.g.*, *PNY Techs., Inc. v. Salhi*, 2018 U.S. Dist. LEXIS 32320, at *5–6 (D.N.J. Feb. 28, 2018) (Cecchi, J.) (rejecting argument that an individual defendant "should not have any personal liability for this matter" where he improperly retained funds paid to his corporation).

*Second*, as this Court recently observed in *Equiom (Isle of Man) Ltd. v. Jacobs*, 2017 U.S. Dist. LEXIS 211083, at *9-14 (D.N.J. 2017) (Cecchi, J.), New Jersey courts do not require a "direct relationship" between the parties in order to sustain an unjust enrichment claim.[7]  In *Equiom*, the plaintiff trust fund manager

---

[7] *Accord, e.g.*, *Capital Health Sys. v. Veznedaroglu*, 2017 U.S. Dist. LEXIS 28390, *35-36 (D.N.J. Feb. 27, 2017) (noting that "[t]his District has interpreted New Jersey's 'direct relationship' requirement as unnecessary where it can be demonstrated that the defendant is not merely an innocent third party" and denying a motion to dismiss an unjust enrichment claim on this basis); *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 197-202 (D.N.J. 2012) (observing that the "direct relationship" requirement is "meant to protect innocent third-parties from liability where they did not unjustly retain a benefit conferred upon them by

alleged that the defendants fraudulently induced the plaintiff to loan $500,000 to a non-party corporation by misrepresenting the non-party's financial condition. *Id.* at *1-3. Although the plaintiff had no direct relationship with the defendants, this Court held that the unjust enrichment claim could survive. The plaintiffs "plausibly contend[ed] that Defendants orchestrated [a] wider fraudulent scheme— removing Defendants from the class of innocent, attenuated third parties the direct relationship requirement is intended to protect." *Id.* at *13-14.

Similarly, Defendants here orchestrated a "wide[] fraudulent scheme" and are not "innocent third parties." *Id.* at *14. As a result, Plaintiffs can establish an unjust enrichment claim without showing a direct relationship with the Defendants. *See id.*; *see also, e.g.*, *Stewart*, 877 F. Supp. 2d at 200 (holding "that it would be inequitable to suggest that the . . . Defendants can insulate themselves from liability on an unjust enrichment claim simply by asserting that retail sales by liquor stores cut off any relationship between the consumers and the manufacturer.").

### 2. The Complaint States a Claim for Negligent Misrepresentation

Under New Jersey law, negligent misrepresentation is "[a]n incorrect statement, negligently made and justifiably relied upon." *H. Rosenblum, Inc. v.*

_____

the plaintiff" and denying defendant's motion to dismiss a claim for unjust enrichment on that basis).

*Adler*, 461 A.2d 138, 142-43 (N.J. 1983), *superseded on other grounds by* N.J. Stat. Ann. § 2A:53A-25.  It "does not require scienter as an element" and therefore "it is easier to prove than fraud."  *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1196 (N.J. 2000)).  Because Plaintiffs have adequately pleaded fraud against the Individual Defendants, *see supra*, their negligent misrepresentation claims against those defendants also survive.[8]  *See, e.g.*, *48 Horsehill, LLC v. Kenro Corp.*, 2006 N.J. Super. Unpub. LEXIS 707, at *23 (N.J. Super. Ct. App. Div. Feb. 22, 2006) ("Having properly pled the elements of legal fraud, the amended complaint . . . necessarily subsumed the common law cause of action of negligent misrepresentation.").  The Court should reject Defendants' arguments to the contrary.

Oddly, Defendants cite *People Express Airlines v. Consol. Rail Corp.*, 495 A.2d 107 (N.J. 1985), for the argument that negligent misrepresentation claims require a "special relationship" between the plaintiff and the defendant.  Grant et al. Br. at 34–35.  In fact, *People Express* stands for the exact opposite proposition. In that case, the New Jersey Supreme Court noted that some ***earlier*** cases had required a "special relationship" in order to recover economic losses for

---

[8] Defendants argue that Plaintiffs' negligent misrepresentation allegations do not satisfy the pleading requirements of Rule 9(b).  Grant et al. Br. at 34.  However, courts have declined to apply Rule 9(b)'s heightened pleading standard where a complaint separately alleges a fraud and negligent misrepresentation claim.  *See, e.g.*, *Donachy v. Intrawest United States Holdings, Inc.*, 2012 U.S. Dist. LEXIS 34029, at *19 (D.N.J. Mar. 14, 2012); *Kirtley v. Wadekar*, 2006 U.S. Dist. LEXIS 60309, at *8 (D.N.J. Aug. 24, 2006).

negligence, but it expressly *rejected* that requirement as "artificial[]."  495 A.2d at

114.  Instead, the court held, a defendant owes a duty of care whenever the plaintiff

is the member of "an identifiable class with respect to whom defendant knows or

has reason to know are likely to suffer [economic] damages from its conduct."  *Id.*

at 116.  That duty includes the obligation to avoid negligent misrepresentations.

*See, e.g.*, *Highlands Ins. Co. v. Hobbs Group, LLC.*, 373 F.3d 347, 355 (3d Cir.

2004) (noting that under New Jersey law a "negligent misrepresentation claim" is

"not limited to special relationship situations" and that the duty of candor may

"arise in any situation called for by good faith and common decency").[9]

     As the manufacturer of the products with respect to which Defendants made

hundreds of thousands of false insurance claims, LifeScan is plainly part of an

"identifiable class" that Defendants knew or should have known was "likely to

suffer . . . damages" from their false claims.  *People Express*, 495 A.2d at 116;

FAC ¶¶ 90-92.  Similarly, "good faith and common decency" call for those in the

business of selling insurance-covered medical devices to submit accurate insurance

claims.  *Highlands Ins. Co.*, 373 F.3d at 355.  At trial, the evidence will show that

Defendants' "foundational practice" of submitting false claims was intentional, not

---

[9] *Accord, e.g.*, *Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, 2013 U.S.
Dist. LEXIS 50788, at *28 (D.N.J. Apr. 9, 2013); *cf. Lord Abett Mun. Income
Fund, Inc. v. Citigroup Global Mkts., Inc.*, 2017 U.S. Dist. LEXIS 128400, at *25
(D.N.J. Aug. 4, 2017) (Cecchi, J.) ("Even absent a special relationship between
parties, a defendant's misleading omission may constitute a material
misrepresentation of fact for purposes of fraud or negligent misrepresentation.").

merely negligent.  But either way, Defendants are liable for these false statements.

### 3. The Complaint States a Claim for Tortious Interference with Prospective Business Relations

Defendants' argument that the tortious interference claim should be dismissed also misstates the applicable law.  Citing a case applying New York law, Defendants contend that the "prospective economic advantage" necessary to establish a tortious interference claim "must be rooted in some specific, identifiable, commercial relationship (either existing or prospective) that is disrupted by the alleged tortfeasor."  Grant et al. Br. at 38 (citing *Barr Labs., Inc. v. Bolar Pharm. Co.*, 1992 U.S. Dist. LEXIS 22882, at *7 (D.N.J. July 13, 1992)).  But New Jersey has rejected this restrictive standard, holding instead that "prospective economic advantage" can mean the "plaintiff's right to 'pursue business'" and "prospective public sales."  *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 38 (N.J. 1989) (quotations omitted) (collecting cases holding that future sales alone constitute a "prospective economic advantage"); *accord, e.g.*, *ADP, LLC v. Ultimate Software Grp., Inc.*, 2018 U.S. Dist. LEXIS 35240, at *16 (D.N.J. Mar. 5, 2018) (economic benefit of "more customers and sales" considered sufficient for a tortious interference claim).

Here, the FAC properly pleads the elements of tortious interference with prospective economic advantage.  It alleges that but for Defendants' practice of sending Pharmacy Plan patients DME test strips (and fraudulently billing their

insurers for retail strips), those patients would have purchased retail strips.  FAC ¶¶ 36-42, 112, 139.  Defendants, moreover, were well aware of this fact.  *Id.* ¶¶ 38, 90-92.  The FAC further alleges that reimbursement protocols make it "impossible to lawfully or unwittingly sell DME Strips outside their intended channels," and that "[t]he only way to do so is to violate a contractual obligation and/or commit fraud."  *Id.* ¶ 42.  The FAC details how each Individual Defendant worked to maintain such fraud as Alliances "foundational practice."  *Id.* ¶¶ 53, 82-88.  Taken together, these allegations easily plead a tortious interference claim "that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.   THIS COURT HAS PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS

Defendants' personal jurisdiction challenges also fail.  In diversity cases such as this one, personal jurisdiction is governed by the law of the forum state. *Imo Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 259 (3d Cir. 1998); Fed. R. Civ. P. 4(k).  District courts may exercise personal jurisdiction over a non-resident defendant where (1) their state's "long-arm statute [] permits the exercise of personal jurisdiction" and (2) the exercise of personal jurisdiction complies with the principles of due process.  *Imo*, 155 F.3d at 259.  "In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process."  *Id.*; N.J. Court R. 4:4-4.

The Individual Defendants' motions to dismiss for lack of personal jurisdiction should be denied for three separate and independent reasons. First, the allegations in the FAC, which the Individual Defendants have not sought to challenge through affidavits or other evidence, establish that the Individual Defendants committed or aided and abetted or conspired to commit numerous torts in New Jersey. Second, the limited jurisdictional discovery that has been conducted so far confirms that the Individual Defendants were personally involved in carrying out these New Jersey torts in many ways. Third, if the Court were to conclude that further evidence is needed for any of the Individual Defendants, it should permit Plaintiffs to complete jurisdictional discovery rather than granting Defendants' motions as to allegations that they have not contradicted.

### A.  The Court Has Personal Jurisdiction Because the Individual Defendants Are Alleged to Have Participated in Torts in New Jersey and Have Not Contradicted These Allegations

As explained above, the FAC properly alleges that the Individual Defendants supervised and participated in Alliance's pervasive fraud. FAC ¶¶ 82-88. The FAC further alleges—and the Individual Defendants cannot dispute—that a substantial portion of those torts were committed through New Jersey pharmacies. FAC ¶¶ 26, 29-30; *see also* Smiley Decl. ¶¶ 14-17, 20-21. In other words, the Individual Defendants are alleged to have supervised and participated in the commission of tens of thousands acts of fraud *in New Jersey*. *Id.* As a result, this

Court has specific personal jurisdiction over the Individual Defendants.

"Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). There can be no serious question that Alliance purposefully directed its activities at New Jersey by opening pharmacies here or that the injuries complained of in the FAC arise out of and relate to those activities. Indeed, the Individual Defendants do not appear to dispute this.

The Individual Defendants' argument is that they themselves are not adequately alleged to have participated in Alliance's New Jersey fraud. But although it is true that a company's contacts with a forum do not in themselves create jurisdiction over its employees, it is equally true that the Individual Defendants' "status as employees does not somehow insulate them from jurisdiction" based on actions they took on behalf of Alliance. *Calder v. Jones*, 465 U.S. 783, 790 (1984). Rather, "jurisdiction exists over an individual defendant who is acting in a corporate capacity" where, as here, he or she is "personally involved in committing a tort" in the forum state. *Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494, 511 (D.N.J. 2017) (quotations omitted).

As Judge Becker pointed out some time ago, it "would be anomalous, and would defeat the purposes of the law creating substantive liability, to permit a corporate officer to shield himself from jurisdiction by means of the corporate entity, when he could not interpose the same shield as a defense against substantive liability." *Donner v. Tams-Witmark Music Library, Inc.*, 480 F. Supp. 1229, 1234 (E.D. Pa. 1979).  As discussed above, the Individual Defendants are substantively liable for their participation in Alliance's fraud.  For the same reasons, they are subject to personal jurisdiction in New Jersey, given that a substantial portion of the fraud they participated in took place in New Jersey.

Indeed, courts in this District have repeatedly denied motions to dismiss for lack of personal jurisdiction with respect to closely analogous pleadings.  In *Christie*, for example, Judge Wolfson held that the complaint properly pleaded personal jurisdiction over the directors of a corporation by alleging that "each of the Individual Defendants 'approved and oversaw' the tortious conduct giving rise to Plaintiff's claims." *Christie*, 258 F. Supp. 3d at 510-11.  Similarly, in *SDS USA, Inc. v. Ken Specialties, Inc.*, 2002 U.S. Dist. LEXIS 16762, *15-17 (D.N.J. Aug. 28, 2002), an individual defendant, the president of the co-defendant corporation, was subject to personal jurisdiction in New Jersey where he was alleged to have "purposefully directed, authorized and participated in" his corporation's tortious

conduct within the state.[10]  The allegations in the FAC confer jurisdiction over the

Individual Defendants for the same reasons.

To be sure, a plaintiff's allegations concerning personal jurisdiction "may be

contradicted by the defendant through opposing affidavits or other evidence."

*Christie*, 258 F. Supp. 3d at 511.  Here, however, the Individual Defendants'

motions to dismiss were not accompanied by any affidavits or any other evidence

contradicting Plaintiffs' allegations that they supervised and participated in

Alliance's New Jersey fraud.  In these circumstances, the Court must accept the

allegations in the FAC as true for purposes of this motion.  *See id.* ("Defendants

have not contradicted [plaintiff's allegations of personal jurisdiction] with

affidavits or other evidence. . . .  Thus, this Court must accept as true Plaintiff's

allegations asserted against the Individual Defendants."); *Fesniak v. Equifax*

*Mortg. Servs. LLC*, 2015 U.S. Dist. LEXIS 66238, at *5 (D.N.J. May 20, 2015)

("If the moving party fails to submit evidence contravening the allegations

[establishing personal jurisdiction in] the complaint, the court is bound to accept

plaintiff's allegations regardless of whether plaintiff presents further evidence in

support thereof."); *cf. Miller Yacht Sales*, 384 F.3d at 97 ("[W]hen the court does

---

[10] *See also Duell ex rel. D.D. v. Kawasaki Motors Corp.*, 962 F. Supp. 2d 723, 732 (D.N.J. 2013) (personal jurisdiction appropriate where individual defendant made a "concerted effort to target customers from New Jersey"); *Telebrands Corp. v. Mopnado*, 2016 U.S. Dist. LEXIS 10671, at *14-20 (D.N.J. Jan. 12, 2016) (sales over the internet to New Jersey residents were sufficient to convey personal jurisdiction over a non-resident defendant).

not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor.").

In light of this clear case law from this Circuit, the Individual Defendants' reliance on a recent decision from the Southern District of Indiana concerning blood glucose test strips is unavailing. *See* Grant et al. Br. at 12–14; *Roche Diagnostics Corp.*, *supra*, 2017 U.S. Dist. LEXIS 150853 (S.D. Ind. Sept. 18, 2017). To the extent *Roche* suggests that individual corporate officers cannot be held liable for intentional torts they participated in so long as they were acting in their "official capacities," it is directly contrary to the case law discussed above, as well as to the Supreme Court's holding in *Calder v. Jones*. Furthermore, *Roche* is easily distinguishable on the facts. Unlike the Defendants here, the defendants in *Roche* did not have a business or any other presence in the forum state. Rather, jurisdiction was based on specific fraudulent communications they made from Michigan to Roche in Indiana. Here, in contrast, the Individual Defendants supervised and controlled brick-and-mortar businesses in New Jersey that continuously engaged in acts of fraud from this state over the course of years. The theory of personal jurisdiction here is completely different than the one presented in *Roche*.

Because the uncontradicted allegations in the FAC show that the Individual

Defendants supervised or participated in thousands of acts of fraud in New Jersey, this Court has personal jurisdiction over them and their motions to dismiss should be denied.

### B.  Discovery Confirms That the Court Has Jurisdiction Over the Individual Defendants

With jurisdictional discovery now underway (though far from complete), it is clear why the Individual Defendants did not submit affidavits denying responsibility for Alliance's New Jersey fraud.  Discovery produced to date reveals that the Individual Defendants were in fact intimately involved with Alliance's New Jersey pharmacies and the fraud those pharmacies carried out in New Jersey. Specifically, documentary evidence demonstrates that the Individual Defendants negotiated and approved the purchases of Alliance's New Jersey pharmacies, managed their day-to-day operations, communicated with their New Jersey employees regarding the fraudulent conduct at issue in this case, and, in some cases, visited these pharmacies in person.  This evidence demonstrates that the jurisdictional facts alleged in the FAC are true.

#### 1.  Jeffrey Smith

Jeffrey Smith's contacts with New Jersey were extensive and deliberate, beginning early in Alliance's fraudulent scheme and continuing for years.  Internal Alliance communications and witness testimony have established, for example, that Jeffrey Smith was actively involved in the selection of the Peterson Pharmacy

in New Jersey as a hub from which Alliance would perpetrate its fraud.  *See* Mott

Decl. ¶¶ 10-17.  In fact, Smith was so excited at the prospect of setting up shop in

New Jersey that he declared, "Let's rock NJ."  *Id.* ¶ 12.  Dow Jones, the eventual

owner of Peterson, testified that Jeffrey Smith approached him about purchasing

the pharmacy with the intention of expanding Alliance's operations into the State

of New Jersey and, later, the East Coast.  *Id.* ¶ 14.

When Jones later confronted Jeffrey Smith with concerns about Alliance's

billing practices, Smith solved that problem by simply purchasing the pharmacy

outright.  *See id.* ¶ 26-27.  To finalize the purchase, Jeffrey Smith signed multiple

contracts on behalf of Alliance-affiliated entities, including New Jersey Rx, LLC

and New Jersey Rx Holdings, LLC.  *See id.* ¶¶ 18-24.  And when Alliance

purchased a *second* pharmacy in New Jersey, Jeffrey Smith signed that pharmacy's

New Jersey Certificate of Formation.  *Id.* ¶ 25.

### 2.    Sahily Paoline

Like Jeffrey Smith, Paoline was actively involved in the selection of the

Peterson Pharmacy in New Jersey as a hub from which Alliance could perpetrate

its fraud.  *See* Mott Decl. ¶¶ 29-35.  In fact, Paoline *admits* that she physically

visited New Jersey, and evidence indicates that she repeatedly visited the Peterson

Pharmacy specifically, both before and after its purchase.  *Id.* ¶¶ 28-31, 33-34, 36,

38.  For example, after visiting Peterson in August 2013 to conduct "due

diligence," Paoline sent Jeffrey Smith and Justin Leavitt twenty-one pictures and a report of her findings, along with a comment on her own personal feelings regarding Peterson's suitability: "This is a WIN."  *Id.* ¶ 31.

Indeed, the documents demonstrating Paoline's involvement in Peterson's day-to-day operations are too numerous to recount.  *See, e.g.*, *id.* ¶ 37, 42, 49. Peterson's head pharmacist Masum Amin succinctly summarized Paoline's role when she described Paoline as one of Peterson's "remote managers."  *Id.* ¶ 39; *see also id.* ¶ 40 (Dow Jones described Paoline as one of Peterson's "regional managers").  Paoline personally hired Peterson staff (*id.* ¶¶ 39-41), helped to resolve PMB audits of Peterson (*id.* ¶¶ 45-46, 48), and coordinated with David Grant and Dow Jones on completing the service agreements between Peterson and Alliance (*id.* ¶ 47).

Finally, evidence shows that Paoline's contacts with New Jersey directly supported Defendants' fraudulent scheme.  For example, on April 8, 2014, Amin wrote to Paoline expressing her concerns about Alliance's practice of shipping DME test strips.  *Id.* ¶ 43.  Amin's concerns apparently fell on deaf ears, because Paoline responded by attempting to convince Amin to play ball.  *Id.* ¶¶ 43; *see also id.* ¶¶ 52-54.  When Amin refused, Paoline used her own New Jersey pharmacist's license to sign her name to DME strips being sent to retail benefit patients—from New Jersey.  *Id.* ¶¶ 55-58.  And when Amin expressed concerns *again* in 2016—

this time about NDC numbers—Paoline opined that they should "enlist Legal from the get go" to have "the NDC and different channels discussion" with Amin.  *Id.* ¶ 50; *see also id.* ¶ 51.

### 3.   David Grant

As Alliance's general counsel, Grant was instrumental in managing the legal aspects of Defendants' fraudulent enterprise.  FAC ¶¶ 17, 85.  Although Plaintiffs have been able to obtain a number of documents from Alliance, Alliance apparently withheld every single e-mail to or from David Grant on the spurious grounds that they are all privileged.  Mott Decl. ¶¶ 6-7.  Grant himself has not produced any documents to Plaintiffs.  *Id.* ¶ 5.  But even the limited discovery so far demonstrates that Grant was heavily involved in Alliance's New Jersey fraud.

Grant, for example, was one of Dow Jones' "primary points of communication at Alliance during the process of buying" the Peterson Pharmacy in New Jersey.  *Id.* ¶ 59.  Grant prepared and negotiated contracts between Alliance and the Peterson Pharmacy; he sought advice on maintaining Peterson's pharmacy license; and he was involved in audits of Alliance-affiliated pharmacies, including the Peterson Pharmacy.  *Id.* ¶¶ 60-62.  Grant also was personally involved in Alliance's subsequent purchase of the Peterson Pharmacy from Dow Jones.  *Id.* ¶ 76.  Indeed, in the Asset Purchase Agreement for Peterson, Grant was listed as the "general counsel" of New Jersey Rx Holdings.  *Id.* ¶ 77.

Most importantly, Grant was perhaps *the* key player in Alliance's wrongful attempt to convince Dow Jones and Masum Amin to turn a blind eye to Alliance's fraud in New Jersey. Amin testified at length about her telephone conversations with Grant in which they discussed her concerns about Alliance's billing practices; numerous follow-up e-mails and internal Alliance communications corroborate Amin's testimony. *Id.* ¶¶ 63-71, 74; *see also id.* ¶ 75 (Dow Jones also discussed billing-related concerns with Grant.) Amin recalled that during these conversations with Grant, "He was very adamant on just telling me . . . that I'm not giving somebody the wrong product . . . . that was, like, the only thing that he had on repeat, despite my concerns not being that I'm giving somebody the wrong product." *Id.* ¶ 71. Despite his adamancy, Grant was not eager to put his views in writing for others to review. *See id.* ¶¶ 67, 72. When Amin asked Grant for "something in writing" confirming that, in his professional opinion, she was not committing fraud, Grant told her "that to get anything like that, a nondisclosure would have to be signed." *Id.* ¶ 67. Grant never did provide Amin with written confirmation of his opinion that Alliance's fraud was not fraud. *Id.*

### 4. Steven Hadlock

Like Paoline, Steven Hadlock was one of the "remote managers" of the Peterson Pharmacy in New Jersey. Mott Decl. ¶ 79. When Masum Amin began working at Peterson, Hadlock assured her that he would "be [her] direct link to

concerns [she] may have as a pharmacist." *Id.* ¶ 78.  Hadlock also trained and coordinated the hiring of personnel for Peterson.  *See id.* ¶ 79.  Internal Alliance documents also suggest that Hadlock physically visited the Peterson Pharmacy—at the very least, he was so intimately involved with Peterson's day-to-day operations that he was consulted on the placement of furniture.  *Id.* ¶ 85.

When PBMs noticed billing discrepancies, managing the resulting audits was crucial to maintaining Defendants' scheme.  *See, e.g.*, FAC ¶¶ 60, 67-68, 107.  Evidence now shows that Hadlock was in charge of handling such audits for all Alliance-affiliated pharmacies, including the Peterson Pharmacy specifically.  *Id.* ¶¶ 80, 82-84.  Alliance employee Amy McMurtry put it best when she e-mailed Masum Amin stating, "When you receive a request for an audit please forward this to Steve Hadlock and he will work with you . . . .  He is now taking care of audits for all locations." *Id.* ¶ 82.

Finally, when Amin first voiced her concerns about shipping DME products to Pharmacy Plan patients, she voiced them to Paoline *and* Hadlock.  *Id.* ¶ 81.  Paoline called out Hadlock in her response: "Steve and I have had similar conversations with other pharmacists and after reviewing the background and explaining the company plan to remedy the situation, they have been on board.  I hope this helps you feel more comfortable with the situation." *Id.*

### 5.    Justin Leavitt

As Alliance's Chief Financial Officer, Justin Leavitt facilitated Alliance's fraudulent conduct in New Jersey through emails, calls, and other conduct directed at the state.  *See* FAC ¶ 86.  E-mails from August to October 2013, for example, show that Leavitt worked extensively on the purchase of Peterson Pharmacy in New Jersey.  Mott Decl. ¶¶ 86-92.  At his deposition, former Peterson owner Dow Jones recalled that Leavitt participated in negotiating the management agreement between Alliance and Peterson, discussing "[t]he compensation, the terms, conditions, [Jones'] share of the profits, et cetera."  *Id.* ¶ 93.  Jones testified that Leavitt was a "primary point of contact" for Jones and would "keep [him] in the loop" during the purchase process.  *Id.*

Furthermore, proceeds from the torts Defendants committed in New Jersey flowed directly to Leavitt, who "managed the lockbox and collection of the reimbursements" for Peterson.  *Id.* ¶ 94.  Indeed, Peterson was required to send Leavitt profit and loss statements on the 15th of every month.  *Id.*

Finally, communications show that when Masum Amin first raised red flags in 2014, Leavitt spoke to Alliance's director of procurement Jose Vargas "about the situation with Peterson and the One Touch not being shipped out because they are DME."  *Id.* ¶ 95; *see also* FAC ¶ 57.  In other words, Leavitt was yet another defendant actively working to maintain Alliance's foothold in New Jersey.

### 6. Blaine Smith

Like Jeff Smith and David Grant, Blaine Smith was another player in Alliance's decision to purchase a pharmacy in New Jersey. Dow Jones testified that Blaine Smith "was part and privy to conversations I was having with Jeff [Smith] . . . and David Grant at the time" of his sale of Peterson Pharmacy to Alliance. Mott Decl. ¶ 100. Discovery produced to date corroborates Jones' testimony, showing that Blaine Smith received documents pertaining to Alliance's purchase of pharmacies in New Jersey. *Id.* ¶¶ 96-98. Dow Jones also recalled that while he was owner of Peterson, Blaine Smith "was vice president of sales" at Alliance, and that Jones and Smith would discuss "how things were going. Sales are up, sales are down." *Id.* ¶ 99. Of course, the sales from Peterson that were going up and down are now known to be fraudulent. Smiley Dec. ¶¶ 14-17, 21.

### 7. Alison Wistner and Adam Koopersmith

The FAC alleges that Wistner and Koopersmith served on Alliance's board as representatives of major investors. FAC ¶¶ 87-88. Both were informed "that fraud was Alliance's foundational practice" by Geoffrey Swindle no later than June 2015, but despite this information, both continued to supervise and oversee Alliance's business operations, including the submission of fraudulent insurance claims from New Jersey. *Id.* Because Wistner and Koopersmith are not Alliance employees and have not produced documents of their own, LifeScan has received

relatively little information from them in discovery so far.  Mott Decl. ¶ 5.

Nevertheless, documents produced to date indicate that Alliance's Board of

Directors—which included Wistner and Koopersmith—explicitly approved the

purchase of the Peterson and Newton pharmacies in New Jersey.  *Id.* ¶ 101-02.

The Peterson Pharmacy, moreover, played "a primary role" in Alliance's fraud by

falsely adjudicating over four million test strips between 2014 and 2017, the

second most of any Alliance pharmacy during those years.  Smiley Decl. ¶¶ 14-17,

19, 21.  The record makes clear that Wistner and Koopersmith supervised and

authorized Alliance's New Jersey business knowing, as Plaintiffs plausibly allege,

that the foundational practice of that business was to commit insurance fraud.

### C.   If the Court Believes That Further Evidence Is Needed, Plaintiffs Should Be Permitted to Complete Jurisdictional Discovery

For the reasons described above, the uncontradicted allegations in the FAC

establish jurisdiction over the Individual Defendants in New Jersey and the limited

discovery taken so far proves that these allegations are true with respect to all or

most of them.  To the extent the Court believes that more evidence is needed,

however, it should permit Plaintiffs to complete discovery.

As detailed in the accompanying Declaration of Ryan Mott, the discovery

that Plaintiffs have received so far has been limited and is incomplete.  Plaintiffs

have not received documents from (and therefore has not yet deposed) any of the

Individual Defendants.  Mott Decl. ¶ 5.  Although Plaintiffs have received a large

trove of emails from Alliance, many responsive, non-privileged documents have

been withheld, apparently on the grounds that they involve Defendant David Grant.

*Id.* ¶ 7.  Of the remaining documents, Plaintiffs have not yet had sufficient time to

complete review of them.  *Id.* ¶ 6.[11]

The Third Circuit has recognized the need for discovery prior to dismissal

for lack of personal jurisdiction where there is an imbalance in access to relevant

information.  *Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 212-13 (3d Cir. 2013)

(citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456-57 (3d Cir. 2003)).

Thus, to the extent the Court finds the present record inadequate as to any

Individual Defendant—which it should not given their failure to contradict the

allegations in the FAC—it should allow LifeScan to complete its outstanding

discovery.  *See, e.g.*, *Perkins v. Sunbelt Rentals*, 2015 U.S. Dist. LEXIS 185039, at

*32 (N.D.N.Y. Aug. 13, 2015) (denying defendants motion to dismiss for lack of

personal jurisdiction without prejudice to refiling following additional discovery

where plaintiffs had "made a sufficient start toward establishing jurisdiction").

Without the benefit of any document production or depositions from the

Individual Defendants, Plaintiffs have made considerable progress in establishing

---

[11] The Individual Defendants can hardly disagree with this point, having
themselves represented to the Court that there has been insufficient time to
complete review of these emails.  *See* Dkt. No. 105: Joint Letter.

their role in New Jersey Alliance's fraud, and have conclusively established the existence of personal jurisdiction over most if not all of them. *See* section II-B, *supra*. Once discovery is complete, the evidence will prove beyond dispute that all the Individual Defendants "purposefully availed" themselves of New Jersey law by approving, overseeing, and directing an arm of Alliance's fraud in that state. At a minimum, therefore, the Court should permit Plaintiffs to complete jurisdictional discovery. *See, e.g.*, *Senju Pharm. Co., Ltd. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 435 (D.N.J. 2015) ("Jurisdictional discovery may be permitted when the existing record is 'inadequate' to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery.").[12]

## III.   THE DISTRICT OF NEW JERSEY IS A PROPER VENUE FOR THIS ACTION

Finally, the Individual Defendants argue without any supporting evidence that it would be "unfair" to allow this matter to proceed in New Jersey because they do not live here. Grant et al. Br. at 16; *see also* Leavitt Br. at 7; Wistner et al. Br. at 7; Swindle Br. at 6. They further argue that Plaintiffs do not identify "any specific instance of conduct involving any of the individual Defendants that

---

[12] Plaintiffs note that because personal jurisdiction over the other individual defendants has been conclusively established, *see* section II-B, *supra*, the interests of judicial efficiency would be best served by litigating Plaintiffs' claims against Wistner, Koopersmith, and Swindle here. *See, e.g.*, *Norben Imp. Corp. v. Metro. Plant & Flower Corp.*, 2005 U.S. Dist. LEXIS 34386, at *26 (D.N.J. July 15, 2005) ("[G]iven that Plaintiff's evidence supports personal jurisdiction over Metropolitan in New Jersey, the interests of judicial efficiency seem best served by litigating the claims against the Clamages in New Jersey as well.").

actually occurred within the state."  Grant et al. Br. at 18.

The Individual Defendants' venue motion fails for reasons that are more fully laid out in Plaintiffs' Opposition to the Defendant ZB, N.A.'s motion to transfer venue.  Zions Opp. at 16-24.  "In the Third Circuit, the plaintiff's choice of venue is a 'paramount consideration' and should not be lightly disturbed." *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (quoting *Shutte v. Armoco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).  This is especially true "when that choice is plaintiff's home forum."  *Dapuzzo v. Anderson*, 2015 U.S. Dist. LEXIS 33409, at *4 (D.N.J. Mar. 18, 2015) (quotations omitted); *see also Print Data Corp. v. Morse Fin., Inc.*, 2002 U.S. Dist. LEXIS 14577, *26 (D.N.J. July 17, 2002) ("As a resident of New Jersey, Plaintiff's choice of forum must be accorded great weight.").

The party seeking transfer must "support its motion with affidavits and other documentation."  *Bachmann Software & Servs. v. Intouch Group, Inc.*, 2008 U.S. Dist. LEXIS 55719, at *39 (D.N.J. July 22, 2008); *see also McMahon v. Arsenberger Trucking Co.*, 2017 U.S. Dist. LEXIS 128383, at *10-12 (E.D. Pa. Aug. 11, 2017) (denying motion to transfer where defendants "failed to include any supporting documentation for their assertion such as 'a list of the names and addresses of witness whom they plan to call, and affidavits showing the materiality of the matter to which these witnesses will testify" (brackets & quotations

omitted)); *Print Data Corp.*, 2002 U.S. Dist. LEXIS 14577, at *22 (moving party must "submit adequate data of record to facilitate the Court's analysis" as to why another forum is more appropriate).

Here, the Individual Defendants utterly fail to meet their burden of showing that Plaintiffs' choice of venue should be disregarded. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995); Zions Opp. at 16-19. This is because their contention that their fraud is somehow centered in Utah and unrelated to New Jersey is simply untrue. As discussed in the accompanying Declaration of Lisa Smiley, the Defendants' fraud was truly national in scope, carried out through pharmacies in Arizona, Iowa, Michigan, Mississippi, Missouri, Nebraska, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas and Utah. Smiley Decl. ¶¶ 9-18. The Peterson Pharmacy in New Jersey falsely adjudicated over four million DME Strips between 2014 and 2017, more than all but one of the Alliance-affiliated pharmacies during that time period. *Id.* ¶ 19. In contrast, Utah pharmacies were winding down their operations by 2014 and by 2015 were hardly selling any test strips at all. *Id.* ¶ 13-15.

Furthermore, the Individual Defendants have not established that the availability of witnesses and documents calls for a transfer of venue. *See* Zions' Opp. at 20-21. Third Circuit law is clear that the location of witnesses provides a basis to transfer only if the witnesses are actually unable or unwilling to attend a

trial in the forum. *Jumara*, 55 F.3d at 879-80. The Individual Defendants have not

shown that this is the case for any witnesses. While the Individual Defendants

might find it more convenient to litigate in Utah, "a court will not grant a transfer

simply because the transferee court is more convenient for the defendants. If the

transfer would merely switch the inconvenience from defendant to plaintiff, the

transfer should not be allowed." *Market Transition Facility v. Twena*, 941 F.

Supp. 462, 467 (D.N.J. 1996).

Indeed, one of the most important witnesses in the case is a resident of New

Jersey. As discussed above, Masum Amin, a former pharmacist at Peterson

Pharmacy in New Jersey, recently testified at her deposition that she complained

repeatedly to Defendants Grant and Paoline about Alliance's fraud but that her

complaints were met only with repeated efforts to persuade her to participate in the

fraud. *See* Mott Decl. ¶¶ 43, 50-54, 65-74. Ms. Amin, a mother of young children

who is employed full time in New Jersey, cannot be compelled to testify in Utah

and is unlikely to appear there voluntarily.

Finally, no considerations of public policy support disregarding Plaintiffs'

choice of venue and transferring this action to Utah. *See* Zions' Opp. at 22-24. To

the contrary, New Jersey "has [an] interest in protecting its residents and

corporations from the alleged wrongful acts of a non-forum corporation."

*Selective Ins. Co. v. Food Mktg. Merch.*, 2013 U.S. Dist. LEXIS 69506, at *20

(D.N.J. May 16, 2013).[13]  As a practical matter, moreover, it would be more efficient for the parties and the courts to continue this ongoing litigation in the venue where it was brought rather than transfer it to Utah where new counsel and judges would need to begin the case anew.  Indeed, the Individual Defendants do not even argue that the interests of public policy or efficiency weigh in favor of transfer.  They fall far short of meeting their burden of showing that this action should be transferred.

## CONCLUSION

For all of the foregoing reasons, the Individual Defendants' motions to dismiss should be denied.

DATED:     May 2, 2018                    Respectfully submitted,

                                          */s/ Peter Harvey__*
                                          Peter Harvey
                                          Geoffrey Potter, Esq. (*pro hac vice*)
                                          Aron Fischer, Esq. (*pro hac vice*)
                                          Joseph R. Richie, Esq. (*pro hac vice*)
                                          Patterson Belknap Webb & Tyler LLP
                                          1133 Avenue of the Americas
                                          New York, NY  10036-6710
                                          Tel: 212-336-2000
                                          Fax: 212-336-2222
                                          gpotter@pbwt.com
                                          afischer@pbwt.com
                                          jrichie@pbwt.com

---

[13] *Accord, e.g.*, *NCR Credit Corp. v. Ye Seekers Horizon*, 17 F. Supp. 2d 317, 323 (D.N.J. 1998); *Howmedica Osteonics Corp. v. Bagwell*, 2016 U.S. Dist. LEXIS 92708, at *10 (D.N.J. July 14, 2016).

## <u>CERTIFICATE OF SERVICE</u>

On May 2nd, 2018, the foregoing was filed electronically. Notice of this filing was sent on this date to all attorneys of record by the Court's CM/ECF system. On May 3rd, 2018, the foregoing was re-filed in accordance with the Clerk's Quality Control Message concerning D.I. 109.

_____*/s/ Peter Harvey*_____
Peter Harvey