UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIFESCAN INC., and JOHNSON & JOHNSON HEALTH CARE SYSTEMS, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>JEFFREY C. SMITH, GEOFFREY S. SWINDLE, STEVEN L. HADLOCK, SAHILY PAOLINE, DAVID GRANT, JUSTIN LEAVITT, BLAINE SMITH, ALISON WISTNER, ADAM KOOPERSMITH, and ZB, N.A.,<br><br>Defendants. | Civil Action No. 2:17-CV-05552-CCC-CLW<br><br>*Filed Electronically* |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT GEOFFREY S. SWINDLE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, PURSUANT TO FED. R. CIV. P. 12(b)(2), FED. R. CIV. P. 12(b)(3), AND FED. R. CIV. P. 12(b)(6)**

           **Buchanan Ingersoll & Rooney P.C.**
           700 Alexander Park, Suite 300
           Princeton, New Jersey 08540-6347
           609-987-6800
           Attorneys for Defendant Geoffrey S. Swindle

*Of Counsel and On the Brief*:
Mary Sue Henifin
Lauren Adornetto Woods

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF ADDITIONAL FACTS AND PROCEDURAL HISTORY ........................2

    Swindle's Contacts with New Jersey Are Unrelated to the Allegations in the FAC .........4

LEGAL ARGUMENT ....................................................................................................................5

    Plaintiffs Have Failed to Produce Any Evidence of Contacts to Establish Personal Jurisdiction Over Swindle ..................................................................................................5

    New Jersey is Not the Proper Venue .................................................................................9

    Plaintiffs' Causes of Action Are Not Adequately Pled as to Swindle ...............................9

CONCLUSION ............................................................................................................................11

## **TABLE OF AUTHORITIES**

**Cases**            **Page(s)**

*Baanyan Software Services, Inc. v. Hima Bindhu Kuncha*,
    433 N.J. Super 466 (App. Div. 2013) ...................................................................................6

*Collins v. James W Turner Construction*,
    2017 BL 14553 (D.N.J. Jan. 18, 2017) ..................................................................................5

*Educational Testing Service v. Katzman*,
    631 F. Supp. 550 (D.N.J. 1986) ............................................................................................6

*Nelligan v. Zaio Corp.*,
    2011 BL 73133 (D.N.J. Mar. 21, 2011) ................................................................................6

*Norben Imp. Corp. v. Metro. Plant & Flower Corp.*,
    2005 BL 66149 (D.N.J. July 15, 2005) .................................................................................8

*Panella v. O'Brien*,
    2006 BL 138465 (D.N.J. Aug. 24, 2006) .............................................................................6

*Piano Wellness, LLC v. Williams*,
    2011 BL 322411 (D.N.J. 2011) ............................................................................................6

*PNY Techs., Inc. v. Salhi*,
    2018 BL 68293 (D.N.J. Feb. 28, 2018) ..............................................................................10

*Ragner Tech Corp. v. Berardi*,
    287 F. Supp. 3d 541 (D.N.J. 2018) ...................................................................................5, 6

**Statutes**

28 U.S.C. § 1391(b) ......................................................................................................................9

28 U.S.C. § 1391(b)(1) .................................................................................................................9

28 U.S.C. § 1391(b)(2) .................................................................................................................9

28 U.S.C. § 1391(b)(3) .................................................................................................................9

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) ..........................................2, 11

**PRELIMINARY STATEMENT**

In opposing the motion to dismiss filed by Defendant Geoffrey S. Swindle ("Swindle"), Plaintiffs **fail to provide the Court with any evidence** showing that Swindle had any contact with New Jersey related to the allegations in the First Amended Complaint (the "FAC"). For instance, Plaintiffs offer no evidence that Swindle had any contact with any New Jersey pharmacies. By omitting Swindle from the Fraud Count, Plaintiffs implicitly recognize that Swindle had no role in the alleged fraudulent activities of New Jersey pharmacies. Yet, Plaintiffs still improperly lump Swindle together with the other Defendants, who are alleged to have participated in the fraud.[1] By so doing, Plaintiffs attempt to bootstrap their jurisdictional arguments for the other Defendants to Swindle, when in fact, they make no specific allegations as to Swindle's contacts with New Jersey, despite having conducted three depositions and having received over 1.5 million pages of documents from Alliance two months ago. Instead, after five months of discovery, there is no evidence that Swindle had contact with New Jersey that relates to the allegations in the FAC. In summary, Plaintiffs: (1) fail to allege that *Swindle* has had **any contacts with New Jersey**, much less the requisite minimum contacts, that relate to or arise out of the allegations in the FAC; (2) fail to show that venue in New Jersey is proper as to *Swindle*, a Utah resident that the Court does not have personal jurisdiction over; and (3) fail to show properly plead claims as to what *Swindle*, individually is alleged to have done, for which relief

---

[1] The best illustration of Plaintiffs' overreaching is their own glaring omission of Swindle from the section of their opposition that details the evidence of contacts with New Jersey as to each of the other Defendants. (DE 111, p. 36-44.) Plaintiffs give no details as to Swindle, but still group him as one of the "Individual Defendants" that allegedly participated in the conduct at issue. Despite overgeneralizing, Plaintiffs adduce no evidence or specific allegations of any contact between Swindle and New Jersey that relate to or arise out of the claims in the FAC or any evidence that Swindle was involved in the scheme at issue in the litigation to facilitate the submission by pharmacies of insurance claims for Lifescan® Durable Medical Equipment Strips as Retail Strips.

1

may be granted against *Swindle*. For these reasons, the FAC should be dismissed as to Swindle for lack of personal jurisdiction.

Similarly, for the purpose of the Rule 12(b)(6) arguments, Plaintiffs merely lump Swindle with the other Defendants and make no effort to show why the only claims against Swindle (for tortious interference, negligent misrepresentation, and unjust enrichment) are adequately pled. Thus, for the reasons set forth herein, and in Swindle's initial papers (DE 89), dismissal of all claims brought against Swindle is appropriate.

## STATEMENT OF ADDITIONAL FACTS AND PROCEDURAL HISTORY

As founder in 2006 of Alliance Health Networks, Inc. ("Alliance Health Networks") (not to be confused with the entity at issue in this litigation, Alliance Medical Holdings), Swindle developed a marketing business to develop health condition networks for the healthcare industry that included over twenty diseases and chronic health conditions. (*See* Geoffrey S. Swindle Certification[2] ("Swindle Cert."), ¶¶ 1-2.) Alliance Health Networks did not engage in the selling of medical products to consumers. (*See id*.)

In February 2014, Alliance Health Networks was acquired by Ingram Medical. (*See id*. at ¶ 3.) Swindle's personal knowledge regarding to the business activities of Ingram Medical prior to its acquisition of his company, Alliance Health Networks, was limited to the general

---

[2] The terms of Swindle's severance are governed by a Settlement Agreement and Release that includes a broad confidentiality clause that applies to all documents and information relevant to the business of Alliance Medical Holdings. (*See* Swindle Cert., ¶ 9.) Pursuant to the terms of the confidentiality clause in the Settlement Agreement and Release, Swindle was unable to submit a certification in his affirmative papers. (*See id.* at ¶ 10.) On May 23, 2018, Swindle entered into a stipulation with Alliance Medical Holdings and Plaintiffs (DE 114) and, as a result, he was able to author a certification in further support of his motion to dismiss without violating the terms of his severance. (*See* Swindle Cert., ¶ 11; *see also* Lauren Woods Certification ("Woods Certification").)

knowledge that Ingram Medical contacted consumers for the purpose of selling products and diabetic supplies. (*See id.* at ¶ 4.)

After acquiring Alliance Health Networks, Ingram Medical was rebranded as Alliance Medical Holdings. (*See id.* at ¶ 5.) After the acquisition of his company, Swindle continued to have the same responsibilities – developing patient networks, generating leads, marketing and advertising, such as interacting with advertising agencies that bought advertising for medical and pharmaceutical product manufacturers – under his title of Chief Strategy Officer. (*See id.* at ¶¶ 13-15.)

When it came to Swindle's attention in 2015 that Alliance Medical Holdings was facilitating the selling of Lifescan® Durable Medical Equipment Strips and facilitating the submission of insurance claims for these Strips as Retail Strips, he brought this information to the attention of the General Counsel of Alliance and to members of its Board. (*See* Swindle Cert., ¶ 18.) Finding the response of the General Counsel and Board inadequate, Swindle severed his relationship with Alliance Medical Holdings in October 2015. (*See id.* at ¶ 19.) After his October 2015 severance, he had no personal knowledge of the business activities of Alliance Medical Holdings. (*See id.* at ¶ 8.)

During the less than two years that he worked at Alliance Medical Holdings, Swindle did not directly contact any individuals to encourage them to purchase Lifescan® Strips from Alliance Medical Holdings, nor did he supervise or manage Sales Teams of Alliance Medical Holdings that reached out to individual consumers. (*See id.* at ¶ 15.) Swindle never interacted with small retail pharmacies or any of the retail pharmacies in Alliance's pharmacy network, including any of the retail pharmacies in New Jersey. (*See id.* at ¶ 16.) For instance, Swindle never interacted with Peterson Pharmacy or Peterson Pharmacy employees (including Masum

3

Amin and Robert Bucco), nor did Swindle have any involvement in submission of insurance claims for medical products or manage or direct other employees to do so. (*See id.* at ¶¶ 16-17.) It is noteworthy that Plaintiffs do not make any allegations as to Swindle, and not one of the hundreds of pages of evidence attached to Plaintiffs' papers present any evidence as to Swindle.

### *Swindle's Contacts with New Jersey Are Unrelated to the Allegations in the FAC*

In his role at Alliance Medical Holdings, Swindle traveled to New Jersey on limited occasions, none of which travels relate to any of the allegations in the FAC. (*See id.* at ¶¶ 21-22.) Swindle traveled to the East Coast to meet with advertising agencies located in New York and Philadelphia. (*See id.* at ¶ 23.) Some of these advertising agencies were retained by companies with New Jersey offices to purchase advertising space on Alliance's social networks, including Novo Nordisk and Sanofi Aventis. (*See id.*) Infrequently, while traveling to meetings with the advertising agencies in New York and Philadelphia, Swindle attended meetings with the pharmaceutical companies at their New Jersey office locations to discuss purchase of advertising by the pharmaceutical companies through their advertising agencies. (*See id.*)

In addition, Swindle interacted with two individuals employed by Alliance Medical Holdings who lived in New Jersey: the Vice President of Sales, Joshua Konetzni and Sales Director Kevin Clayton, who worked with Swindle on obtaining ads from advertising agencies representing pharmaceutical companies. (*See id.* at ¶ 24.) Swindle traveled to New Jersey to meet with Mr. Konetzni and Mr. Clayton on limited occasions, engaged in e-mail communications with Mr. Konetzni and Mr. Clayton, and spoke on the telephone with Mr. Kontezni and Mr. Clayton. (*See id.*) His interactions with Mr. Konetzni and Mr. Clayton only related to the sale of advertising to advertising agencies that represented pharmaceutical companies. (*See id.*) Swindle recalls participating in a meeting with Defendant Jeffrey Smith and representatives of Bayer Healthcare, LLC, but he cannot recall whether the meeting was held

4

while the Bayer offices were located in White Plains, New York, or after the Bayer offices moved to New Jersey. (*See id.* at ¶ 25.) Whatever the circumstances, these activities had no relationship to Plaintiffs' allegations in the FAC. (*See id.* at ¶¶ 22.)

## **LEGAL ARGUMENT**

### *Plaintiffs Have Failed to Produce Any Evidence of Contacts to Establish Personal Jurisdiction Over Swindle*

Plaintiffs ask the Court to determine that it has specific jurisdiction over Swindle, despite providing **absolutely no specific allegations or evidence** of contacts between Swindle, individually, and New Jersey for the Court's consideration. (DE 111, pp. 36-44.) While conceding that they have the burden to establish specific jurisdiction (DE 111, p. 32), Plaintiffs have wholly failed to satisfy their burden to show the requisite contacts between Swindle and New Jersey which are related to or arise out of the cause of action in this case. *See Ragner Tech. Corp. v. Berardi*, 287 F. Supp. 3d 541, 551 (D.N.J. 2018).

The tactic of lumping Swindle in with other Defendants and claiming that Alliance Medical Holdings engaged in fraud, is legally insufficient to establish individual jurisdiction over Swindle. The United States District Court for the District of New Jersey has held that "jurisdiction over employees of a corporation does not arise automatically from jurisdiction over a corporation." *Collins v. James W Turner Construction*, 2017 BL 14553, at *10 (D.N.J. Jan. 18, 2017). Even if Plaintiffs had produced evidence of Swindle's contacts with New Jersey, which they haven't, such evidence would need to show that Swindle, as an individual acting on behalf of Alliance, engaged in intentional contacts with New Jersey, and that such contacts give rise to Swindle's liability to Plaintiffs for tortious interference, unjust enrichment, and negligent misrepresentation. *See Panella v. O'Brien*, 2006 BL 138465 (D.N.J. Aug. 24, 2006). Plaintiffs have clearly put forth no such evidence as to Swindle – and the Court cannot find that specific

5

jurisdiction exists without it. *See id.* (holding that to confer jurisdiction over corporate officers, there must be acts which, if proven, would give rise to personal liability); *see also Piano Wellness, LLC v. Williams,* 2011 BL 322411 (D.N.J. 2011) (holding that actions taken in the forum state are irrelevant where Plaintiffs do not allege that such contacts specifically arose from or related to the issues in the case); *see also Ragner Tech., supra,* 287 F. Supp. 3d at 552 (holding that direction of national advertisements to New Jersey was not sufficient to establish personal jurisdiction, because "as a general rule, an individual whose contacts with the forum state are in his corporate capacity does not thereby become subject to jurisdiction in his individual capacity").[3]

Given the clear requirement of individual action in the forum state, Plaintiffs' arguments as to the Court's specific jurisdiction over Swindle are unavailing. Plaintiffs ignore the fact that it is their burden to establish personal jurisdiction and attempt to shift the burden, pointing to a lack of evidence or affidavits. However, Swindle's Certification and discovery responses establish that the Court has no jurisdiction over him. (*See* Swindle Certification, ¶¶ 15-17, 22; *see also* Woods Certification, ¶ 21; *see* Woods Certification, Exhibit D, Swindle's Responses to Requests for Admissions, Nos. 1 through 3; *see also* Woods Certification, Exhibit F, Swindle's Responses to First Set of Interrogatories, Nos. 1 through 7.) And, while Plaintiffs contend that

---

[3] Even if the Court found it significant that Swindle interacted with Alliance employees who lived in New Jersey, for reasons unrelated to the allegations in the FAC, telephonic and electronic communications with individuals and entities located in New Jersey alone are insufficient to establish personal jurisdiction. *See Baanyan Software Servs., Inc. v. Hima Bindhu Kuncha*, 433 N.J. Super 466 (App. Div. 2013); *see also Nelligan v. Zaio Corp.,* 2011 BL 73133 (D.N.J. Mar. 21, 2011) ("While the Court agrees that mail and telephone communication may support specific jurisdiction in some instances, it is only where the plaintiff's claims arise out of those communications"); *see also Educational Testing Serv. v. Katzman,* 631 F. Supp. 550 (D.N.J. 1986).

the discovery confirms that the "Defendants" were purposefully involved with and carried out numerous torts in New Jersey, they do not cite to one piece of evidence or specific allegation purporting to show *Swindle's* individual involvement in carrying out these torts.  **Indeed, they do not cite to any evidence related to Swindle at all.**

Plaintiffs ask to complete jurisdictional discovery in lieu of the Court granting dismissal. This request should be disregarded by the Court, since Plaintiffs:  (1) had five months to conduct fact and jurisdictional discovery; (2) held three depositions related to the jurisdiction issue; (3) had over two months to review the Alliance Documents and opposed Defendants' requests to delay depositions so there would be more time to review the Alliance documents; (4) conducted written discovery; (5) have not previously asked the Court for a postponement to conduct additional discovery; and (6) never noticed the deposition of Swindle, despite having ample opportunity to do so.

Again, in an effort to obscure the lack of any factual allegations or evidence as to Swindle individually, Plaintiffs' attempt to bootstrap their fraud allegations to gain jurisdiction over Swindle, while failing to note, as is required by candor to the tribunal, that **Plaintiffs' have not alleged fraud against Swindle.**  Plaintiffs incorrectly state that jurisdiction exists over Swindle because all of the "Individual Defendants" (a definition used by Plaintiffs that encompasses Swindle), "supervised and participated in Alliance's pervasive fraud" and that "[d]iscovery produced to date revealed that the Individual Defendants were in fact intimately involved with Alliance's New Jersey pharmacies and the fraud those pharmacies carried out in New Jersey."  (DE 111, pp. 31, 36.)  However, as distinguished from the other Defendants, Plaintiffs' FAC does not allege fraud against Swindle. (DE 41, First Claim for Relief, Fraud (Including Aiding & Abetting Fraud and Conspiracy to Commit Fraud) Against all Defendants

7

but Swindle**.)  And, even more significantly, the documents and evidence that Plaintiffs put before the Court **do not show that Swindle had *any* involvement with Alliance's New Jersey pharmacies, intimate or otherwise, or that he had any involvement in the submittal of insurance claims for Lifescan® strips or the fraud that these pharmacies are alleged to have carried out.[4]**  If such evidence existed, Plaintiffs would surely have included it in their opposition, as it did with all other Defendants.  (DE 111, pp. 36-44.)

In an implicit acknowledgement that they have no arguments to support the Court's specific jurisdiction over Swindle, Plaintiffs attempt to argue, without any legal support whatsoever, that "judicial efficiency" trumps the law on personal jurisdiction.  Plaintiffs' state: "because personal jurisdiction over the other individual defendants has been conclusively established . . . the interests of judicial efficiency would be best served by litigating Plaintiffs' claims against Wistner, Koopersmith, and Swindle here."  (DE 111, p. 46.)  But the law on personal jurisdiction does not involve "judicial efficiency" as one of the tests.  And, the only case referenced by Plaintiffs as support does not confer personal jurisdiction based on judicial efficiency, either.  *See Norben Imp. Corp. v. Metro. Plant & Flower Corp.,* 2005 BL 66149 (D.N.J. July 15, 2005) (personal guarantees confer personal jurisdiction over two shareholders in a family business with a total of three shareholders).

---

[4] Former Peterson Pharmacy employees Robert Bucco and Masum Amin testified that they do not know Swindle and did not recognize his name. (*See* Woods Certification, Exhibit G, Robert Bucco Deposition Transcript, April 6, 2018, 144:20-146:11; see also Ryan Mott Certification, Exhibit 1, Masum Amin Deposition Transcript, April 12, 2018, 24:8-11).  Moreover, Dow Jones, the former owner of Peterson Pharmacy, testified that he only met Swindle once, at a golf outing. (*See* Ryan Mott Certification, Exhibit 2, Dow Jones Deposition Transcript, April 25, 2018, 91:12-92:6).  None of the documents that relate to Peterson Pharmacy contain any reference to Swindle, and his name does not appear on any of the emails or documents relied upon by Plaintiffs to support their position that the Court has personal jurisdiction over the other Defendants. (*See* Ryan Mott Certification, Exhibits 3 through 15, Exhibits 17 through 27, Exhibit 29 through 36.)

For the reasons set forth herein and in Swindle's affirmative papers (DE 89), Plaintiffs' FAC should be dismissed as to Swindle for lack of personal jurisdiction.

### *New Jersey is Not the Proper Venue*

Plaintiffs cannot establish that New Jersey is the proper venue for this lawsuit, under 28 U.S.C. § 1391(b). First, Swindle is not a New Jersey resident, so venue is not proper under 28 U.S.C. § 1391(b)(1). Second, Plaintiffs have failed to show that the Court has specific jurisdiction over Swindle, so venue is not proper under 28 U.S.C. § 1391(b)(3). Third, Plaintiffs have not shown how "a substantial part of the events or omissions giving rise to the claim" actually occurred in New Jersey, which would render New Jersey the proper venue under 28 U.S.C. § 1391(b)(2). Plaintiffs concede that "the Defendants' fraud was truly national in scope, carried out through pharmacies in Arizona, Iowa, Michigan, Mississippi, Missouri, Nebraska, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas and Utah." (DE 111, p. 48.)

Plaintiffs essentially ignore 28 U.S.C. § 1391(b), arguing, for example, that venue is proper by virtue of public policy, and that Masum Amin – described as "one of the most important witnesses in the case" – is a resident of New Jersey. (DE 111, p. 49.) Moreover, Plaintiffs conflate the improper venue arguments made by Swindle, with the motion to transfer venue brought by Defendant ZB, N.A. None of these arguments change the fact that this is a diversity case, that 28 U.S.C. § 1391(b) is the statute that governs venue in diversity cases, and that Plaintiffs have not established that venue is proper as to Swindle under 28 U.S.C. § 1391(b).

### *Plaintiffs' Causes of Action Are Not Adequately Pled as to Swindle*

In a further bid to confuse the Court, Plaintiffs' erroneously cite to Swindle's motion papers as part of their argument that they have properly pled the fraud claims in the FAC, despite the fact that no fraud is pled against Swindle, and Swindle makes no argument regarding the Plaintiffs' fraud pleadings. (DE 111, p. 14.) Plaintiffs would like the Court to forget that there is

9

no fraud pled against Swindle, because their fraud allegations are intertwined with their claims for unjust enrichment, negligent misrepresentation, and tortious interference.

As to unjust enrichment, Plaintiffs argue that all of the defendants, including Swindle, "have orchestrated a wide fraudulent scheme" and "are not just innocent third parties," but, in fact, no such allegations are made against Swindle in the FAC. (DE 111, p. 26.) Plaintiffs also rely on various cases where the defendants were alleged to have committed fraud, and were not merely innocent third parties, but these holdings do not apply to Swindle, who is not alleged to have committed fraud.[5] For these reasons and for the reasons set forth in Swindle's affirmative papers, Plaintiffs have not adequately pled an unjust enrichment claim against Swindle.

Plaintiffs argue that negligent misrepresentation is adequately pled as to the "Individual Defendants" because they have "adequately pleaded fraud," once again ignoring that Swindle is excluded from the fraud claim in the FAC. (DE 111, p. 27.) Moreover, as to the tortious interference claim against Swindle, Plaintiffs contend that "the FAC details how each Individual Defendant worked to maintain such fraud as Alliance's foundational practice." (DE 111, p. 30 (internal quotation omitted).) But these arguments are unavailing as to Swindle – since Plaintiffs' expressly exclude him from the fraud claim. Without any other argument as to the sufficiency of the negligent misrepresentation and tortious interference pleadings against Swindle, and for the reasons set forth in Swindle's affirmative papers, both of these claims must be dismissed.

---

[5] The other case cited by Plaintiffs, *PNY Techs., Inc. v. Salhi*, 2018 BL 68293 (D.N.J. Feb. 28, 2018), is not applicable because, in that case, the defendant did not deny receiving a benefit from the plaintiff. Moreover, the Court was analyzing the facts on the record to decide a motion for summary judgment, not the sufficiency of the pleadings on a motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, Swindle's Motion to Dismiss Plaintiffs' First Amended Complaint in accordance with Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) should be granted.

> BY:*/s/ Lauren Adornetto Woods*
> Mary Sue Henifin, Esq.
> Lauren Adornetto Woods, Esq.
> Buchanan Ingersoll & Rooney P.C.
> 700 Alexander Park, Suite 300
> Princeton, New Jersey 08540-6347
> 609-987-6800
> Attorneys for Defendant
>  Geoffrey S. Swindle

DATE:    June 1, 2018