## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIFESCAN, INC. and JOHNSON & JOHNSON HEALTH CARE SYSTEMS, INC., | |
| Plaintiffs, | Civil Action No. 2:17-cv-5552 (CCC/CLW) |
| v. | |
| JEFFREY C. SMITH; GEOFFREY S. SWINDLE; STEVEN L. HADOCK; SAHILY PAOLINE; DAVID GRANT; JUSTIN LEAVITT; BLAINE SMITH; ALISON WISTNER; ADAM KOOPERSMITH; & ZB, N.A.; | *Filed Electronically* |
| | **Oral Argument Requested** |
| Defendants | |

---

### REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT ZB N.A.'S MOTION TO TRANSFER VENUE OR, ALTERNATIVELY, TO DISMISS OR STAY THIS ACTION

---

Liza M. Walsh
Stephen V. Falanga
Christopher M. Hemrick
William T. Walsh, Jr.
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, NJ 07102
(973) 757-1100

*Attorneys for Defendant,*
*ZB, N.A. (d/b/a Zions First National Bank)*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................1

LEGAL ARGUMENT ........................................................................................3

   POINT I ...............................................................................................3
   COUNT ONE SHOULD BE DISMISSED AS IT FAILS TO STATE A
   FRAUD CLAIM AGAINST ZIONS.............................................................3

     A.   Plaintiffs Improperly Conflate Multiple Independent Causes of Action
        into a Single Count For "Fraud" in Violation of Rule 10(b). ................3
     B.   Plaintiffs Have Failed to State a Claim for Aiding and Abetting Fraud
        Against Zions. ...........................................................................4
       1.  Utah Law Does Not Recognize Aiding and Abetting Fraud. ................4
       2.  Even Assuming, Arguendo, New Jersey Law Applies, Plaintiffs Have
          Failed to Plead an Aiding and Abetting Claim Under New Jersey Law 5

   POINT II...............................................................................................11
   PLAINTIFF JJHCS' CLAIMS SHOULD BE DISMISSED FOR LACK OF
   ARTICLE III STANDING...........................................................................11

   POINT III .............................................................................................12
   PLAINTIFFS' REMAINING CLAIMS FAIL AS A MATTER OF LAW ...12

   POINT IV .............................................................................................14
   THE COURT SHOULD TRANSFER VENUE OF THIS CASE TO THE
   DISTRICT OF UTAH PURSUANT TO 28 U.S.C. § 1404(a) ......................14

CONCLUSION ................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

2008 U.S. Dist. LEXIS 105413 (D.N.J. Dec. 9, 2008)............................................12

*Arlandson v. Hartz Mountain Corp.*,
    792 F. Supp. 2d 691 (D.N.J 2011).........................................................5

*Cioni v. Globe Specialty Metals, Inc.*,
    618 Fed. Appx. 42 (3rd Cir. 2015) ........................................................8

*City of Phila. v. Beretta U.S.A. Corp.*,
    277 F.3d 415 (3d. Cir. 2002) ...............................................................10

*Cooper v. Samsung Elecs. Am., Inc.*,
    374 Fed. App'x 250 (3d Cir. 2010)........................................................5

*Crescent International Inc. v. Avatar Communities, Inc.*,
    857 F.2d 943 (3d Cir. 1988) .................................................................4

*Eli Lilly & Co. v. Roussel Corp.*,
    23 F. Supp. 2d 460 (D.N.J. 1998)................................................... 13, 14

*Four River Exploration, LLC v. Bird Reserve, Inc.*,
    No. 09-3158, 2010 U.S. Dist. LEXIS 3227 (D.N.J. Jan. 15, 2010) .....................4

*Gaines v. Krawczyk*,
    354 F. Supp. 2d 573 (W.D.P.A. 2004) ..................................................10

*In re First Alliance Mortgage Co.*,
    471 F.3d 977 (9th Cir. 2006) ............................................................ 8, 11

*Isle of Man) Lt.d v. Jacobs*,
    2017 U.S. Dist. LEXIS 211083 (D.N.J. December 22, 2017) ...........................13

*Kamienski v. New Jersey Attorney General*,
    2015 U.S. Dist. LEXIS 74122 (D.N.J. June 9, 2015) ...................................15

*Leading Edge Logistics, LLC v. Central Trucking, Inc.*,
    2005 U.S. Dist. LEXIS 11821 (E.D. Pa. June 16, 2005) ...............................15

*Montclair State University v. Oracle USA, Inc.*,
    2012 U.S. Dist. LEXIS 119509 (D.N.J. August 23, 2012) ..............................8

*Montich v. Miele*,
    849 F. Supp. 2d 439 (D.N.J. 2012).........................................................5

*Tarr v. Ciasulli*,
    853 A.2d 921 (N.J. 2004) ...................................................................13

*Vermont Agency of Nat. Reserve v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) .................................................................... 11, 12

*Ziemba v. Incipio Technologies, Inc.*,
    No. 13-5590(JLL), 2014 U.S. Dist. LEXIS 129019 (D.N.J. Sept.16,
    2014)............................................................................................9

**Rules and Regulations**

Fed. R. Civ. P. 7.2(a)..............................................................................15
Fed. R. Civ. P. 10 ..............................................................................2-3
Fed. R. Civ. P.12(b)(6)..............................................................................1
Fed. R. Civ. P. 26 ............................................................................ 9, 11,15

## PRELIMINARY STATEMENT

Much like their pleadings, the Opposition to ZB, N.A.'s ("Zions") Motion to Dismiss or Transfer filed by Plaintiffs, LifeScan, Inc. ("LifeScan") and Johnson & Johnson Health Care Systems, Inc. ("JJHCS") (collectively, "Plaintiffs") is replete with mischaracterizations, unsubstantiated allegations and surmise.  While Zions understands the Court must accept Plaintiffs' well-pleaded facts as true and view the facts in the light most favorable to Plaintiffs, the Court should not accept as true legal conclusions masquerading as factual allegations.  This is precisely what Plaintiffs' do in their attempt to sustain their Complaint against Zions.  Through argument and declaration, Plaintiffs now desperately try to recast their deficiently pleaded allegations to salvage a claim that Zions is somehow responsible for aiding and abetting an alleged 5-year-old fraud.[1]  Yet, glaring holes in their claims still exist, further supporting Zions' Motion that dismissal is appropriate under Rule 12(b)(6).

Importantly, Plaintiffs now concede they have ***not*** asserted a cause of action for fraud against Zions, but nonetheless maintain they may assert a separate cause of action for "aiding and abetting" fraud against Zions in the First Claim for Relief against the Individual Defendants.  Given this type of pleading expressly

---

[1] Plaintiffs have apparently been aware of these claims as early as April 2014 but, perhaps going to the bona fides of the claims, waited over three years to assert them.

1

contravenes Fed. R. Civ. P. 10, dismissal of the First Count as to Zions is appropriate on this basis alone.  Additionally, Plaintiffs concede there is no cause of action for "aiding and abetting" fraud under Utah law—which should be the governing law in this case—but nonetheless maintain New Jersey law should apply despite the only nexus to New Jersey being one co-plaintiff, JJHCS, whose claims were dubious at the outset.  But Plaintiffs have now abandoned JJHCS' damages claim and failed to demonstrate JJHCS has Article III standing to pursue any claims whatsoever. Further, assuming, *arguendo*, New Jersey law applied, Plaintiffs have also failed to articulate that Zions was actually aware of the fraud, or a cognizable theory of damages, rendering their aiding and abetting claim ripe for dismissal.

To salvage their remaining claims against Zions, Plaintiffs essentially make "token" arguments, which is not surprising given the remaining Counts for Unjust Enrichment, Negligent Misrepresentation and Tortious Interference are devoid of basis as asserted against Zions.  In short, there are simply no facts to support the remaining causes of action against Zions and dismissal of Counts 2, 3 and 4 is warranted.

Finally, Plaintiffs also fail to rebut Zions' argument that this case should be transferred to the District of Utah, the situs of the alleged fraudulent scheme undertaken by Alliance and where virtually all parties reside.  With JJHCS no longer

asserting claims for damages in this action, there is zero basis to maintain this case in New Jersey.

Accordingly, the Court should dismiss Plaintiffs' Complaint for failure to state a claim as to Zions or transfer venue of this action to the District of Utah.

## LEGAL ARGUMENT

### POINT I

### COUNT ONE SHOULD BE DISMISSED AS IT FAILS TO STATE A FRAUD CLAIM AGAINST ZIONS

**A. Plaintiffs Improperly Conflate Multiple Independent Causes of Action into a Single Count For "Fraud" in Violation of Rule 10(b).**

Plaintiffs concede they are not asserting a fraud claim against Zions.  Rather, Plaintiffs assert distinctly separate causes of action for conspiracy and aiding and abetting the Individual Defendants' alleged fraud based upon Zions (1) extension of credit to Alliance; and (2) allegedly helping Alliance "conceal the identities of its pharmacies from suspicious payers." (Opp. Br. at 5-6).  Plaintiffs' absurd position that it would not promote clarity to plead separate claims against those parties alleged to have committed fraud, and those parties not alleged to have committed fraud, contradicts Fed. R. Civ. P. 10(b).  The rule specifically states: "each claim founded on a separate transaction or occurrence . . . ***must*** be stated in a separate count or defense." Fed. R. Civ. P. 10(b) (emphasis added).  Zions' alleged actions are distinct from the Individual Defendants' alleged actions, and the Court should

3

not sanction Plaintiffs' effort to taint Zions with the Individual Defendants' alleged wrongdoing by lumping all defendants together.  Dismissal is warranted as to Count One on this basis alone.

### B. Plaintiffs Have Failed to State a Claim for Aiding and Abetting Fraud Against Zions.

#### 1. *Utah Law Does Not Recognize Aiding and Abetting Fraud.*

Plaintiffs concede that Utah law does not recognize a cause of action for aiding and abetting fraud. (Opp. Br. at 10-11).  However, Plaintiffs argue that, because they are not a party to the Credit Agreement, its choice of law provision is irrelevant, and New Jersey law should apply.  This is incorrect.  The only nexus to New Jersey this case has is co-plaintiff JJHCS, and Plaintiffs have now abandoned JJHCS' claim for damages and failed to demonstrate JJHCS has Article III standing to pursue any claims.  As a result, Utah law should govern, especially given Plaintiffs explicitly rely upon the Credit Agreement (which applies Utah law) as the sole vehicle to support their claim for aiding and abetting fraud against Zions.

Plaintiffs cannot cherry-pick language in the Credit Agreement to support their claims, and ignore the legal implications arising from other provisions.  *See, e.g. Crescent Int'l Inc. v. Avatar Communities, Inc*., 857 F.2d 943, 944-45 (3d Cir. 1988) (forum selection clause still applies where "the claims asserted arise out of the contractual relation and implicate the contract's terms"); *see also Four River Exploration, LLC v. Bird Res., Inc*., No. 09-3158, 2010 U.S. Dist. LEXIS 3227, at

4

*7 (D.N.J. Jan. 15, 2010) ("[n]on-signatory third-parties 'closely related to [a] contractual relationship' are bound by forum selection clauses contained in contracts underlying relevant contractual relationships.").   The same applies to the law Plaintiffs rely upon for the proposition that a complaint cannot be dismissed based on the law of foreign jurisdiction.[2]  Finally, Plaintiffs' unsupported theory that Utah courts are "unlikely" to permit aiding and abetting fraud is inapposite. (Opp. Br. at 12).  There is no dispute Utah law does not recognize a claim for aiding and abetting fraud and, as such, dismissal of Count One is warranted.

### 2. Even Assuming, Arguendo, New Jersey Law Applies, Plaintiffs Have Failed to Plead an Aiding and Abetting Claim Under New Jersey Law

### i.   The allegations in the Complaint do not properly plead Zions had actual knowledge of the alleged fraud.

Even assuming, *arguendo,* New Jersey law applied, Plaintiffs nonetheless fail to state an aiding and abetting claim against Zions.  With their Opposition, Plaintiffs finally articulate the false statements they claim the Individual Defendants made to

---

[2] Courts in this circuit and district routinely find that facts are sufficiently developed to conduct the choice of law analysis at the motion to dismiss stage. *See, e.g.*, *Cooper v. Samsung Elecs. Am., Inc*., 374 Fed. App'x 250, 255 n.5 (3d Cir. 2010); *Arlandson v. Hartz Mountain Corp*., 792 F. Supp. 2d 691, 709 (D.N.J 2011). Plaintiffs have not plead a set of facts to support a finding that New Jersey law governs this action. *See Montich v. Miele*, 849 F. Supp. 2d 439, 445, 448 (D.N.J. 2012) (characterizing *Harper* as requiring only "a threshold inquiry into whether a choice-of-law issue needs a fuller factual record" and going ahead with the choice of law analysis because plaintiff failed even "to indicate what other facts are necessary to decide this issue").

support the fraud claim: "the submission of insurance claims for LifeScan's retail test strips when in fact a different product, mail-order Durable Medical Equipment (DME) test strips, are being dispensed." (Opp. Br. at 6). While dubious to support a claim for fraud against the Individual Defendants even if true, this articulation is significant because there is nothing in the Complaint or documents relied upon by Plaintiffs that supports Zions ever being aware of these actions. Indeed, there is no allegation in the Complaint that supports a fair inference that Zions was aware of the alleged actions by the Individual Defendants in the submission of fraudulent insurance claims.

Instead, Plaintiffs attempt to conflate the issue by reasserting their baseless claim *that Alliance* (who is *not* a party to this action by Plaintiffs' design) disclosed its allegedly fraudulent behavior to Zions in Paragraph 17 of Alliance's Credit Agreement disclosures, which provides:

> 17. Certain Subsidiaries of Borrower are licensed as retail pharmacies. Such Subsidiaries applied for such license classification because each of the pharmacy benefit managers, with whom such Subsidiaries have contracted, owns its own mail order companies and will not contract with such Subsidiaries if such Subsidiaries are licensed as a mail order pharmacy; however, substantially all of such Subsidiaries' business is delivered by common courier. Such Subsidiaries bill the patient's insurance under the retail pharmacy benefit but ship mail order diabetic testing supplies nationwide. ***Due to such practices of such Subsidiaries, it is possible that a pharmacy benefit manager may terminate its relationship with such subsidiary and seek contractual remedies.***

6

*See* Walsh Cert., Ex. C (emphasis added); Comp. at ¶ 98.  The quoted language does not remotely support an allegation that Zions had knowledge of fraud.  In fact, in contested hearings in Alliance's bankruptcy case over the approval of a settlement between Alliance and Zions and in which LifeScan was an objector, the Honorable Marvin Isgur, U.S.B.J., concluded: "I don't ever see where the bank knew that it was funding into something illegal." Walsh Cert., Ex. D (*Uplift RX, LLC v. Alliance Health Networks,* No. 17-32186-H1-11; March 26, 2018 Hr'ing Trans. 135:11-13[3]).

Obviously, the Bankruptcy Court concluded the way it did because the disclosure does ***not*** state that Alliance submitted false insurance claims on a box-by-box basis, or that Alliance dispensed to customers lower priced DME Strips and submitted those sales for reimbursement as Retail Strips.  The disclosure provides that PBMs may seek ***contractual*** remedies against Alliance-subsidiary pharmacies because PBMs "will not contract with such Subsidiaries if such Subsidiaries are licensed as a mail order pharmacy" and "substantially all of such Subsidiaries' business is delivered by common courier."  Simply put, Alliance's disclosure of a

---

[3] LifeScan fully participated in 3 days of evidentiary hearings in the bankruptcy case and did not to object to or contest the Bankruptcy Court's findings which approved the settlement agreement between Alliance and Zions. *See also,* Walsh Cert., Ex. D (March 26, 2018 Hr'ing Trans. 21:10-11 ("I haven't seen any evidence that the bank had any actual awareness of a criminal violation."); 24:7-14; 48:6-16; 133:23-25 ("I find that it is extremely unlikely that there will be any material claim against the bank.").

possible breach of contract issue with PBMs is not notice of fraud. *Cioni v. Globe Specialty Metals, Inc*., 618 Fed. Appx. 42, 47 (3rd Cir. 2015) (a claim sounding in contract cannot be converted into fraud); *Montclair State Univ. v. Oracle USA, Inc*., 2012 U.S. Dist. LEXIS 119509, *34 (D.N.J. Aug. 23, 2012) ("Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law.").

Plaintiffs' strong reliance on the Ninth Circuit's holding in *In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006) to support its proposition that Zions "substantially assisted" Alliance's alleged fraud is also misplaced. The *First Alliance* case actually supports the dismissal of claims against Zions as the Ninth Circuit made clear ordinary business transactions a bank performs for a customer do not support an aiding and abetting claim unless "***the bank actually knew*** those transactions were assisting the customer in committing a specific tort." *Id.* at 995 (emphasis added).   When discussing what the lender in *First Alliance* "actually knew," the Court noted that a disclosure to the lender expressly revealed its customer's "fraudulent lending practices." *Id.* at 986.   Here, Plaintiffs' bald allegation that Zions substantially assisted a fraud is insufficient.  Plaintiffs' fraud claim concerns ***which*** product Alliance pharmacies dispensed versus what they claimed in PBM reimbursements; the Paragraph 17 disclosure concerns only ***how***

8

product was delivered and says nothing about which products were dispensed or claimed.

**ii.    Even if the Paragraph 17 disclosure said what Plaintiffs allege, the damages Plaintiffs seek as per their Rule 26 Disclosures do not flow from the alleged "upcoding" fraud.**

Plaintiffs' aiding and abetting claim against Zions should also be dismissed because the damages Plaintiffs seek do not flow from the Alliance pharmacies' alleged submission of fraudulent reimbursement claims to PBMs.  In their Rule 26 disclosures, Plaintiffs state:

> As set forth in its Amended Complaint, LifeScan seeks monetary relief. LifeScan is entitled to damages in the amount of ***the difference between the price for which it sold the DME Strips diverted by Defendants and the price it would have received for the Retail Strips the patients would otherwise have purchased***. This amounts to no less than $40 million.

*See* Walsh Cert., Ex. E (emphasis added).   Importantly, there is no mention whatsoever of JJHCS, or the notion that Plaintiffs' damages arise from the rebates JJHCS allegedly paid PBMs.[4]  While Plaintiffs discuss JJHCS "damages" in their Opposition, it is axiomatic that pleadings may not be amended through a party's briefs.  *See, e.g.*, *Ziemba v. Incipio Technologies, Inc.*, No. 13-5590 (JLL), 2014 U.S. Dist. LEXIS 129019 at *3 (D.N.J. Sept.16, 2014). Moreover, Plaintiffs' careful

---

[4] The fact that Plaintiffs have now abandoned JJHCS' damage claim confirms JJHCS lacks standing in this case and that venue is not appropriate in New Jersey.

articulation of Alliance's alleged "upcoding" scheme makes clear any benefit accruing to Alliance from its fraudulent conduct would have arisen exclusively from buying a low-cost product and submitting an insurance claim for a more expensive product. Alliance neither received nor benefited in any way from rebates allegedly paid, and Plaintiffs do not contend otherwise.

With Plaintiffs' "rebates" damages theory set aside, Plaintiffs are left only with their dubious claim for "lost profits" damages.[5]  Plaintiffs seem to suggest that, absent Alliance allegedly purchasing diverted DME Strips from a third-party (who were not in privity with LifeScan to begin with), Plaintiffs would have sold Alliance Retail Strips.   This assumption is unfounded, conclusory and not entitled the presumption of truth.  Without it, Plaintiffs' lost profits theory fails.  Plaintiffs' alleged "lost profits" also do not flow directly and proximately from Alliance's purported fraud because any possible impact on LifeScan's sales would be purely incidental, too remote, with too many intervening factors.  "An injury that is too remote from its causal agent fails to satisfy tort law's proximate cause requirement and claims premised on such remote causal connections are subject to dismissal." *Gaines v. Krawczyk*, 354 F. Supp. 2d 573, 586 (W.D.P.A. 2004) (citing *City of Phila.*

---

[5] Plaintiffs also appear to claim damages based upon lost ***revenue***, where they would be limited only to lost ***profits***. If cognizable at all, Plaintiffs' lost profits would be substantially less than $40mm based upon the allegations in the Complaint.

*v. Beretta U.S.A. Corp.,* 277 F.3d 415, 423 (3d. Cir. 2002)).  In any event, Zions'
connection to Plaintiffs' alleged lost profits theory is ***non-existent***.

Stripping away Plaintiffs' conclusory and self-serving assertions, the only
well-pleaded facts remaining are that Zions extended credit to Alliance and opened
certain bank accounts for its pharmacies, subject to a Deposit Account Control
Agreement ("DACA").  As the case of *First Alliance* relied on by Plaintiffs makes
clear, lending money and opening bank accounts are what banks do—these are
typical and lawful practices that occur in the lender-borrower relationship.  These
facts do not plausibly support any wrongdoing by Zions.  Accordingly, Plaintiffs'
aiding and abetting and conspiracy[6] claims against Zions should be dismissed.

## POINT II

### PLAINTIFF JJHCS' CLAIMS SHOULD BE DISMISSED FOR LACK OF ARTICLE III STANDING

Plaintiffs ignore several critical facts raised in Zions' moving brief supporting
JJHCS' lack of standing. (Opp. Br. at 15-16).  First, the "Damages" section in the
Complaint does not mention JJHCS or its alleged payment of rebates.  Second,
JJHCS did not file, and is not a party to, LifeScan's Proof of Claim in Alliance's
bankruptcy case, which seeks the same damages arising from the same alleged facts

---

[6] Plaintiffs' conspiracy claim against Zions fails for the same reasons as its aiding and abetting claim.

set forth in the Complaint. Finally, as noted above, Plaintiffs' Rule 26 Disclosures include **no mention** of damages suffered by JJHCS through its alleged payment of rebates.

Plaintiffs citation to *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773–74 (2000) is misplaced. That case dealt with the Fraudulent Claims Act, and the assignment of a claim by the U.S. Government pursuant thereto. *Id.* That statute is not at issue here. Moreover, Plaintiffs have not alleged LifeScan assigned any claims to JJHCS. That JJHCS allegedly served as a vehicle through which **LifeScan** paid rebates does not demonstrate JJHCS suffered an injury-in-fact. Comp. at ¶¶ 8 (alleging that "LifeScan" (not JJHCS) paid rebates); Opp. Br. at 15 (stating JJHCS paid claims "on behalf of" **LifeScan**). Accordingly, JJHCS' claims should be dismissed for lack of standing.

## POINT III

## PLAINTIFFS' REMAINING CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs remaining claims for Unjust Enrichment, Negligent Misrepresentation and Tortious Interference fail as a matter of law and must be dismissed. Plaintiffs have entirely ignored that unjust enrichment is not an independent tort and must be dismissed "where a plaintiff asserts an unjust enrichment cause of action along with tort claims and there appear to be no allegations that the plaintiff expected or anticipated remuneration from the

12

defendant." *Torres-Hernandez v. CVT Prepaid Solutions*, Inc., 2008 U.S. Dist. LEXIS 105413 at 25-26 (D.N.J. Dec. 9, 2008).[7]  Plaintiffs have not alleged they anticipated remuneration from Zions and their citation to *Equiom (Isle of Man) Lt.d v. Jacobs* supports dismissal on this basis. *See* 2017 U.S. Dist. LEXIS 211083, *10 (D.N.J. Dec. 22, 2017) (no unjust enrichment unless "the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred").  Plaintiffs' unjust enrichment claim should be dismissed.

Plaintiffs' negligent misrepresentation claim must be dismissed because Plaintiffs do not allege Zions made ***any*** misrepresentation to Plaintiffs.  Plaintiffs citation to a hostile work environment and sexual harassment case under New Jersey's Law Against Discrimination is unavailing as that statute is not at issue here, and it did not address negligent misrepresentation.   That case also required ***knowledge*** as a prerequisite to concert liability of any kind. *Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004).  For the reasons already stated, Plaintiffs have not pleaded facts suggesting Zions had knowledge of any misrepresentation by any party.

_____

[7] As set forth in Zions' moving brief, Utah law is in accord with New Jersey law concerning the elements of these causes of action. For the sake of brevity, Zions cites only to the New Jersey case law for purposes of this Reply. However, Zions maintains that Utah law controls.

Finally, Plaintiffs are silent as to their failure to allege the existence of any "particular anticipated contract" with which Zions allegedly interfered. *See Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 494 (D.N.J. 1998). Plaintiffs also fail to articulate how Zions allegedly "interfered" with any such contract and ignore the absence of any plausible causal connection between any such interference and Plaintiffs' claimed losses. *Id.*   There are simply no facts to support the elements of this claim against Zions.

**POINT IV**

**THE COURT SHOULD TRANSFER VENUE OF THIS CASE TO THE DISTRICT OF UTAH PURSUANT TO 28 U.S.C. § 1404(a)**

Plaintiffs' own allegations demonstrate venue should be transferred to Utah. All Defendants except Koopersmith reside in Utah. *See* Comp. at ¶¶ 13-24.  Plaintiffs assert that, "*[t]hrough Alliance*, Defendants ran a brazen scheme to defraud Plaintiffs." Comp. at ¶ 4 (emphasis added).  Alliance, the Individual Defendants, and Zions operated out of Utah.  The fruit of the alleged fraud was sent to Utah via a "'sweep' into a centralized account controlled *by Alliance*[.]" Comp. at ¶ 104 (emphasis added).  The alleged fraud was dependent upon "software provided *by Alliance*," Comp. at ¶¶ 62, 66 (emphasis added).  This critical component of the alleged fraud was developed in and supplied from Utah.  Plaintiffs allege "[i]t was [] essential that *Alliance deceive PBMs* into believing it was dispensing Retail Strips

14

at brick and mortar retail pharmacies, when it was in fact dispensing DME Strips by mail." Comp. at ¶ 61 (emphasis added). This makes clear the targets of the "alleged fraud" were PBMs, not Plaintiffs in New Jersey. Even if Plaintiffs were the targets, with JJHCS no longer asserting claims for damages in this action and LifeScan not located in New Jersey, there is zero basis to maintain this case in New Jersey and every reason to transfer it to Utah.

Plaintiffs argue this case should remain in New Jersey because **one** of their witnesses, Masum Amin, resides in New Jersey and would allegedly be unavailable to testify in Utah. This argument fails. First, Ms. Amin appears nowhere on Plaintiffs' Rule 26 Disclosures. Such an important witness, and one argued in support of venue in New Jersey, would have to be designated in Plaintiffs' initial disclosures as a person "likely to have discoverable information." *See* Rule 26(a). Regardless, the potential unavailability of a single witness is insufficient to avoid transfer of a case pursuant to § 1404(a). *See Leading Edge Logistics, LLC v. Cent. Trucking, Inc.*, 2005 U.S. Dist. LEXIS 11821 at *4-5 (E.D. Pa. June 16, 2005) (transferring case under § 1404(a) where many of defendants' potential witnesses would be subject to subpoena power of transferee forum, as opposed to a single witness identified by plaintiff).[8]

_____

[8] The declaration of Lisa M. Smiley is riddled with legal conclusions and hearsay and constitutes an inappropriate attempt by Plaintiffs to amend their pleadings in

## <u>CONCLUSION</u>

For the foregoing reasons, and those set forth in its moving papers, Zions respectfully requests that the Court dismiss Plaintiffs' Complaint for failure to state a claim as to Zions or transfer venue of this action to the District of Utah.

WALSH PIZZI O'REILLY FALANGA LLP
*Attorneys for Defendant ZB, N.A. (d/b/a Zions First National Bank)*

By:      *s/ Liza M. Walsh*
               Liza M. Walsh
               Stephen V. Falanga
               Christopher M. Hemrick
               William T. Walsh, Jr.

Date:    June 1, 2018

---

contravention of the Federal Rules. As such, the Court should disregard the Smiley declaration in its entirety pursuant to L. Civ. R. 7.2(a). *Kamienski v. N.J. Attorney General,* 2015 U.S. Dist. LEXIS 74122 (D.N.J. June 9, 2015).