## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIFESCAN, INC., et al.,<br><br>               Plaintiffs,<br>v.<br><br>JEFFREY C. SMITH., et al.,<br><br>          Defendants | Civil Action No. 17-5552 and 19-8761 (CCC)(JSA)<br><br>**ORDER & OPINION OF THE SPECIAL MASTER JUDGE DENNIS CAVANAUGH, RET. AS TO MERCATO'S MOTION TO COMPEL PLAINTIFF LIFESCAN TO PRODUCE DOCUMENTS WITHHELD AS PRIVILEGED AND TO PROVIDE AN ADEQUATE PRIVILEGE LOG** |
| ROCHE DIAGNOSTICS CORPORATION, et al.,<br><br>               Plaintiffs,<br>v.<br><br>JEFFREY C. SMITH., et al.,<br><br>          Defendants | |

Before the Special Master is a motion filed by the Mercato Defendants ("Mercato" or "Defendant")[1]. In the motion, Mercato seeks an order compelling Plaintiff LifeScan, Inc. ("LifeScan" or "Plaintiff") to produce documents withheld as privileged and to provide an adequate privilege log. Mercato's motion is substantially identical to a motion Defendant has

---

[1] According to the movant, "Mercato," collectively refers to defendants Mercato Management, LLC; Mercato Partners, LLC; Mercato Partners Growth II GP, LLC; Mercato Partners Growth II, LP; Mercato Partners Growth Affiliates II, LP; Mercato Partners AI II, LP; Mercato Partners Ingram, LLC; and Mercato Partners Ingram Co-Invest., LLC. Throughout this Order and Opinion, these entities will simply be referenced as Mercato or Defendant.

filed as to Plaintiff Roche Diagnostics Corporation/Roche Diabetes Care, Inc. ("Roche") for which the Special Master has entered a separate Order and Opinion.

In this motion, as in the companion motion, Mercato specifically seeks an order requiring LifeScan to produce documents wrongly logged as privileged; to produce a revised, adequate privilege log remedying numerous categorical deficiencies; and to produce documents relevant to Mercato's statute of limitations defense because LifeScan, like Roche, has elected to waive privilege due to its reliance on the equitable tolling doctrine. Mercato also requests that LifeScan produce 133 redacted documents it failed to log.

In deciding this motion, the Special Master has reviewed and considered the following items:

1. Mercato's August, 18, 2023 letter-brief in support of its motion to compel with exhibits;

2. LifeScan's September 19, 2023 letter-brief in opposition to Mercato's motion with attachments; and

3. Mercato's September 25, 2023 reply letter-brief which addresses both motions.

For the reasons set forth below and for the same reasons set forth in the Special Master's Order and Opinion as to the companion motion against Roche, Mercato's motion is **GRANTED** in part and **DENIED** in part.

## I.    Procedural History and Factual Background

Once again, as the Special Master writes principally for the benefit of the parties before the court, the discussion which follows will be limited to the procedural history and operative facts directly pertinent to this motion.

This litigation encompasses two separate lawsuits which have been coordinated for discovery purposes but not consolidated.  The lawsuits arise out of what the parties describe as the "Alliance fraud."  That fraud centers on the distribution, sale, and reimbursement of diabetic test strips ("DTS") manufactured by Plaintiffs, LifeScan, Inc. ("LifeScan") and Roche.  Plaintiffs charge that a now-bankrupt entity known as Alliance Medical Holdings LLC ("Alliance") through its officers, directors, investors, and lenders engaged in a scheme to sell nonretail DTS (which tests blood glucose levels for diabetic patients) but were reimbursed by pharmacy benefit managers ("PBMs") for the sale of higher priced retail strips.  This allowed Alliance to profit from the difference and resulted in LifeScan and Roche paying excessive rebates to PBMs.

Mercato was one of the investors in Alliance.  Plaintiffs charge that Defendant was knowledgeable about the fraud and profited from the scheme while it was ongoing.

This motion centers on LifeScan's privilege log.  That log, in the form of a spreadsheet, contains 1,192 items.  LifeScan provided this privilege log on August 28, 2021.  Mercato sent LifeScan a deficiency letter on July 14, 2023, alerting Plaintiff that it had identified some 136 documents which LifeScan had redacted but neglected to include on any privilege log.  Mercato also says it advised LifeScan that the log lacked basic information necessary for an adequate log. According to the movant, shortly thereafter, attempts were made by the parties to reach an accord through meeting and conferring.  However, the parties were unable to resolve the issues and, in Mercato's words, "LifeScan has not produced a revised privilege log and has not cured the majority of the deficiencies" identified by Mercato.

## II.    Mercato's Argument

Mercato essentially premises this motion on three arguments: (1) Mercato asserts that LifeScan cannot rely on equitable tolling while claiming privilege over documents relevant to

Defendant's statute of limitations defense; (2) LifeScan's log is "wholly inadequate"; and (3) LifeScan has redacted certain documents but failed to include them on the privilege log.  These arguments will be addressed in order.

As to the first argument, Mercato contends that Lifescan has withheld documents relevant to Mercato's statute of limitations defense.  That is, LifeScan has taken the position that the statute should be tolled since Defendants have collectively engaged in fraudulent concealment.  However, Mercato insists that by invoking this equitable doctrine, a party impliedly waives attorney-client privilege over communications relevant to when that party discovered its injury, citing, among other cases, *WLIG-TV, Inc. v. Cablevision Sys. Corp.*, 879 F. Supp. 229 (E.D.N.Y. 1994).  Mercato insists that LifeScan is employing attorney-client privilege as both a sword and a shield, an action not permitted under Third Circuit law, citing *Yarnall v. Phila. Sch. Dist.*, 57 F. Supp. 3d 410, 431 n.15 (E.D.Pa. 2014).  Therefore, by invoking equitable tolling, LifeScan has waived its privilege over communications with its counsel between 2012 and 2015 that "very like reveal" when and how it discovered its injury, referencing Exhibit A at Doc. Nos. 6-8, 16-19, 21, 52, 108-112, 116-118.  In support of its position that these communications must be disclosed, Mercato cites cases from various districts and circuits for the proposition that a party waives privilege over documents relevant to the limitations period when that party asserts equitable tolling principles.

Mercato concludes this argument by noting that there is no dispute that LifeScan hired Patterson Belknap, its counsel in this litigation, to conduct an investigation into Alliance, the company at the heart of this lawsuit, and there is no dispute that the firm was involved in LifeScan's discovery of its injury.  Given these circumstances, LifeScan cannot be permitted to

shield these documents from disclosure while simultaneously seeking to toll the limitations period.

Mercato also charges that the privilege log is "wholly inadequate" and requests an order that LifeScan "promptly produce an adequate privilege log" and to produce documents that have been improperly withheld.  Among other deficiencies, Mercato charges that numerous LifeScan documents are not facially privileged and in many instances, Plaintiff has designated communications as privileged which do not include an attorney but reflect internal LifeScan correspondence.  Mercato goes on to state that given that the Special Master has already considered this issue in similar contexts and found that communications which relate to business matters are not protected by attorney-client privilege, LifeScan should be compelled to disclose such documents or, alternatively, the documents should be submitted for *in camera* review.

Finally, in its July deficiency letter, Mercato identified 136 documents that LifeScan has redacted but failed to include on its log.  (LifeScan has since addressed three of the documents, leaving 133.)  Mercato says LifeScan has no basis for applying privilege redactions while failing to include the designations on the log.

## III.   LifeScan's Opposition

As a general proposition, LifeScan takes the position that Mercato's multiple claims of deficiencies in the privilege log are simply manufactured discovery disputes which Defendant has been delinquent in addressing given that the log was produced in October 2021. Additionally, Mercato has failed to provide a convincing basis for the relief it seeks, using selectively quoted cases to argue that LifeScan has waived its privilege by asserting equitable tolling (a position not supported in this Circuit) and by asserting "half-hearted" references to other deficiencies in the log.

First, as to Mercato's assertion that a party waives privilege when it argues fraudulent concealment, LifeScan argues that this is not the state of the law in this Circuit. Instead, in the Third Circuit, advice of counsel is placed in issue only when a client asserts a claim or defense and attempts to prove that claim or defense by disclosing or describing an attorney-client communication, citing *Rhone-Poulenc Rorer Inc. v. Home Indemn. Co.*, 32 F. 3d 851, 863 (3d Cir. 1994). That circumstance has not occurred here as LifeScan has not disclosed or described its attorney-client communications as part of its equitable tolling defense.

LifeScan also relies on *Brock v. Thomas*, No. 10-687, 2011 WL 13143117, 2011 U.S. Dist. LEXIS 160853 (E.D.Pa. June 28, 2011), in which the defendants argued that the plaintiff waived privilege by asserting equitable tolling to a statute of limitations defense. The *Brock* court, citing *Rhone-Poulenc*, found that the plaintiff had not relied upon advice from his attorney and therefore the defendants could not discover privileged communications.

LifeScan then addresses each case cited by Mercato in support of this position, which Plaintiff argues are either misquoted, implicitly rejected by the Circuit, or did not constitute persuasive authority.[2] Therefore, since all of these cases apply a test that the Third Circuit has rejected, "none of these cases [cited by Mercato] provide a persuasive basis…to find a waiver of privilege." [See, LifeScan's opposition at pp. 7-8.]

---

[2] Those cases which Defendant cites and distinguishes are *Yarnall v. Philadelphia School District,* 57 F. Supp. 3d 410 (E.D. Pa. 2014) (misquoted); *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash. 1975) (rejected by this Circuit); *WLIG-TV, Inc. v. Cablevision Sys. Corp.*, 879 F. Supp. 229 (E.D.N.Y. 1994) (rejected); *Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, 2009 WL 3415375, at *2 (N.D.Cal. Oct. 21, 2009) (rejected); *Outpost Solar, LLC v. Henry, Henry & Underwood, P.C.*, 2017 WL 6729292 (Tenn.Ct.App. Dec. 29, 2017) (rejected); *Connell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420, 423 (S.D.N.Y. 1976) (rejected); and *Conkling v. Turner*, 883 F. 2d 431 (5th Cir. 1989) (rejected). Roche also contends that Mercato misstated the holding in two cases in which the court did not find privilege had been waived –*Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, No. 5:97-CV-369BR1, 1998 U.S. Dist. LEXIS 18428, 1998 WL 1742589 (E.D.N.C. Sep. 25, 1998) and *Johnson Matthey, Inc. v. Research Corp.*, No. 01-cv-8115, 2002 U.S. Dist. LEXIS 13560, 2002 WL 1728566 (S.D.N.Y. July 23, 2002).

Finally, LifeScan maintains that its claim for privilege over documents from 2012 to 2015 was not designed to hide information about its investigations into Alliance so as to obscure when it discovered its injury.  LifeScan has already produced numerous documents related to its investigations into Alliance including many documents from this time frame, as evidenced by the exhibits attached to Mercato's motion.  The documents withheld, LifeScan maintains, reflect legal advice and are "not part of the business-related investigation."

As to Mercato's assertion that LifeScan's log is "wholly inadequate," LifeScan refutes the validity of these "miscellaneous deficiencies."  For example, pointing to Mercato's contention that LifeScan has redacted or designated as privileged documents which relate to third party investigations, the fact that a document discusses such investigations "does not mean that it is *per se* not privileged", i.e., Mercato is unentitled to communications with counsel in which LifeScan employees sought or received legal advice relating to the investigations.  As to entries on the log which do not include attorneys, such correspondence is still privileged – even between non-employee attorneys – if the correspondence reflects or relays legal advice.

Furthermore, a privilege log is not suspect because it designates certain communications as both work product and attorney-client privileged as courts routinely hold documents of this nature can be protected by both, citing *TransWeb, LLC v. 3M Innovative Props. Co.,* No. 10-cv-4413, 2012 U.S. Dist. LEXIS 97534, 2012 WL 2878076, at *6  (D.N.J. Apr. 12, 2012)., *report and recommendation adopted as modified*, 2012 WL 2878075 (D.N.J. July 13, 2012).

LifeScan goes on to say that some of the other deficiencies are baseless.  For example, as to documents withheld entirely, Bates stamp numbers are assigned only to documents actually produced; LifeScan has not included recipients for standalone documents as those documents

have no recipients; and as to documents without authors or dates, LifeScan has produced the information sought in redacted form.

As to the (now) 133 redacted documents, which LifeScan describes as "certain rebate agreements," these documents contain commercially sensitive information irrelevant to the case and do not involve diabetic test strips. LifeScan goes on to say that this practice – to redact irrelevant, commercially sensitive information – has been employed by the parties throughout this litigation and, therefore, constitutes a "longstanding practice" to which Mercato had not previously objected. Moreover, Mercato has been in possession of these documents since 2020 and only now charges that this process of redacting sensitive material constitutes a privilege log deficiency.

## IV.    Mercato's Reply

In its reply (which addresses its motions as to both Plaintiffs), Mercato principally examines the issue of whether a party asserting equitable tolling waives its attorney-client privilege in the face of a statute of limitations defense. Mercato urges that Plaintiffs have misrepresented the holding in *Rhone-Poulenc*. According to Mercato, *Rhone-Poulenc* and later cases which cite that decision are "examples of cases in which the attorney-client privilege is sought to be vitiated on grounds ***other than the narrow issue of statute of limitations***." (Emphasis provided by Mercato). Therefore, *Rhone-Poulenc* does not stand for the proposition that the only way a party waives privilege is by placing an attorney's advice in issue. Rather, this is one example in which a court may find waiver. Here, Plaintiffs "embrace" of the equitable tolling doctrine to defeat the statute of limitations results in a waiver of privilege as to communications relevant to when and how Plaintiff discovered its alleged injuries.

Moreover, both Plaintiffs, who are represented by the same law firm, have put their counsel's advice in issue by arguing that they relied on outside counsel to investigate Alliance but still could not discover injury.  As an example, Mercato points to LifeScan's pleadings in which it describes dispatching personnel to Utah to investigate the Alliance fraud.  The personnel included outside counsel.  Plaintiffs charge that Alliance "stymied" this investigation which might have uncovered evidence to support a lawsuit years earlier.  Hence, Plaintiffs are using the involvement of outside counsel as both a sword and shield.  The privilege log shows Plaintiff LifeScan was represented by counsel as far back as 2013, and the log is replete with designations for communications with Patterson Belknap and non-attorneys throughout 2014 and 2015. While Plaintiffs have asserted that concealment efforts were at the heart of the Alliance scheme, documents describing conversations as to Alliance have been withheld.  Simply stated, Plaintiffs' reliance on their outside counsel's investigation of Alliance, including advice as to when their claims accrued, should result in a waiver.

As to the adequacy of the log, Mercato says that Plaintiffs could have, but failed to, remedy designations that lack basic information.  As to communications which do not involve lawyers, Mercato agrees that communications between non-attorneys can be privileged if they reflect legal advice obtained from counsel.  The problem here is that Plaintiffs have failed to assert how these communications are privileged and they bear the burden of doing so. Therefore, Plaintiffs should be required to provide a description as to how a communication between non-lawyers is privileged.

## V.    General Review of Log

LifeScan's privilege log, as noted, is in the form of a spreadsheet and contains 1,192 items.  Typical of such logs, there are rows and columns ("fields") containing subject headings

that include the basis for the privilege, the nature and description of the document, the author, the sender, other recipients, and Bates stamp numbers which correspond to the documents.

Given the relative volume of the documents listed in the log, it is not practical for the Court to provide a detailed analysis of each entry or even of each entry which Mercato contends is deficient. However, in terms of certain alleged deficiencies, the following are noted.

Document numbers 809 through 1125, while listing the basis for withholding the document, the subject line (in some cases), the file name, the nature and description of the item and the Bates number, there is no sender or recipient listed. However, essentially as to each entry, the description of the item is either a Word document, a presentation, a spreadsheet or similar document. This certainly suggests that the withheld item is in the form of an individual or "standalone" document for which there would be no sender or recipient.

Some other documents, as Mercato indicates, *appear* to be exchanges between non-lawyers (and apparently LifeScan employees) but have been withheld as work product or as attorney-client privileged. (See, for example, document numbers 2-4.)

There are other entries for which the basis of withholding include both attorney-client privilege and attorney work product. See, for example, document number 70.

Finally, there are a series of documents listed as numbers 6-8, 16-19, 21, 32, 108-112 and 116-118 which are said to be protected by attorney-client privilege and which date to 2014. Mercato claims that these entries, as well as other communications not enumerated, between LifeScan and its counsel from 2012 and 2015 "very likely reveal when and how it discovered its injury." While some of these documents reference Medsource (Alliance's predecessor) or Alliance itself, on their face, there is no cogent way to assess whether – or not – these entries actually reflect documents which would support Mercato's statute of limitations defenses.

10

## VI.    Analysis and Findings

In the Special Master's view, this motion is complicated by the fact that the parties do not squarely meet the issues head on.  That is, is this a motion to compel or is this a motion seeking a revised privilege log as a prelude to such a motion or is it both?  With this said, the Special Master will address what appear to be the principal issues which form the basis of this motion.

As to Mercato's contention that the overall format of the privilege log is fatally deficient, the Special Master finds that this contention is without substantial merit.

While the Federal Rules of Civil Procedure do not employ the term privilege "logs" *per se*, Fed. R. Civ. P. 26(b)(5)(A), entitled Claiming Privilege or Protecting Trial-Preparation Materials, effectively governs the preparation of "logs."  The Rule provides:

> (A) *Information Withheld.*  When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i)  Expressly make the claim; and
>
> (ii) Describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the claim.

Put another way, a party's log need only provide adequate information to allow another party to assess whether the privilege claims are viable.  It is the finding of the Special Master that LifeScan's privilege log generally meets this criteria.

The log created by LifeScan follows a standard or common format (and a format employed by the other parties to this litigation).  It contains all the subject headings that typically appear in a privilege log – document number, date, privilege basis, description, senders and recipients, etc.  Accordingly, the log facially meets the requirements set forth under Fed. R. Civ.

11

P. 26(b)(5)(A), i.e., the log generally provides information which allows other parties to assess LifeScan's claims of privilege.  Therefore, the Special Master finds that there is no basis to require LifeScan to produce a new, "adequate" privilege log.

As noted, Mercato also argues that there are numerous documents that are not privileged since they facially relate to business rather than legal matters.  Consequently, Mercato charges that these communications do not fall within the protection of the attorney-client privilege.  Although not inclusive of all documents which Mercato says falls into this category of deficiency, the movant references document numbers 52, 69, 84-86 and 102.  In order to assess whether in fact such communications constitute business-related matters, Mercato is **ORDERED** to identify no more than 10 documents from the privilege log for *in camera* review, while LifeScan is **ORDERED** to produce those documents for *in camera* review to the Special Master.

The Court now turns its attention to the categories of documents upon which the parties most seriously disagree as to their privilege status and which they seem to suggest are the most significant to this litigation.  These are the communications Mercato contends took place between 2012 and 2015 between LifeScan and its counsel and "very likely reveal when and how it discovered its injury."   These include, but are not limited to, document numbers 6-8, 16-19, 21, 52, 108-112, 116-118.   [See, Mercato's letter-brief at p. 8; Exhibit A.]   As to these documents, Mercato says they are discoverable due to what the movant contends is LifeScan's reliance on the equitable tolling doctrine.  Mercato asserts that "the law is clear" that when a plaintiff relies on the equitable tolling doctrine to toll the statute of limitations, it waives privilege over communications that could reveal when a claim has accrued.  On the other hand, LifeScan maintains that in the Third Circuit, this is not the law and instead only when a party

actively places advice of counsel in issue to support a claim or defense is the privilege waived. The parties, therefore, disagree as to the controlling authority.

Mercato relies on a series of decisions from District courts and Circuit courts outside of the Third Circuit. These opinions, in turn, are founded upon a 1975 decision emanating from the Eastern District of Washington entitled *Hearn v. Rhay*, 68 F.R.D. 574, (E.D.Wash. 1975). Given the significance of *Hearn*, the court will address that decision in some detail here.

In *Hearn*, the court found that an implied waiver existed when (1) there was an assertion of privilege arising from an affirmative act, such as filing suit; (2) through the affirmative act, a party put protected information at issue by making it relevant to the case; and (3) the application of the privilege denied the opposing party access to information vital to the defense. *Id*. at 581. *Hearn* was a civil rights action brought by a prison inmate who sought discovery from the defendant penitentiary personnel as to legal advice rendered by the Washington State attorney general. The defendants asserted their actions were protected by good faith immunity. To prove his claim, the plaintiff was obligated to show that the prison officials had acted in bad faith. *Id*. at 578.

The threshold issue in *Hearn* was whether the communications between the officials and the attorney general were protected by attorney-client privilege even though some of the communications were shared with third parties. The court concluded that communications which involved third parties were not privileged. However, the court went on to say that the question remained whether the defendants could be compelled to answer questions and produce documents as to communications received which did not include the participation of third parties, "an issue of first impression." The court then recognized what it described as a "new and narrowly limited exception for the attorney-client privilege which applies to civil rights suits

against state officials…wherein the defendant asserts the affirmative defense of good faith immunity." *Id.* at 580.

It is this narrow and limited decision in *Hearn*, which, as noted, is relied upon throughout subsequent decisions that Mercato says, show that the "law is clear" that reliance upon the equitable tolling doctrine constitutes a waiver. Those decisions include *WLIG-TV, Inc. v. Cablevision Systems Corporation*, 979 F. Supp. 229 (E.D.N.Y. 1994); *Landmark Screens, Ltd. Liab. Co. v. Morgan, Lewis & Bockius Ltd. Liab. P'ship*, No. C08-02581, 2009 U.S. Dist. LEXIS 102579, 2009 WL 3415375 (N.D. Cal. Oct. 21, 2009); and *Outpost Solar, LLC v. Henry, Henry & Underwood, P.C.*, No. 2016-00297, 2017 WL 6729292, 2017 Tenn. App. LEXIS 841, at \*21-22 (Ct. App. Dec. 29, 2017).

While some courts have cited *Hearn* favorably, other courts across the country addressing *Hearn* have either distinguished that decision or, having acknowledged the holding in *Hearn*, failed to rely upon it while determining the existence of a waiver or have limited its application.

For example, in *Connell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420 (S.D.N.Y. 1976), the defendants in a securities litigation moved for summary judgment based on the statute of limitations. The plaintiffs charged that the defendants were estopped from asserting the bar "by virtue of the fact that they had prevailed upon plaintiffs to withhold suit[.]" *Id.* at 422. The defendants sought communications with the plaintiffs' former attorneys to determine the actual reason they withheld suit. In reaching its decision, the New York District Court noted that it was "remarkable how little authority appears to be squarely on point." *Id.* The court then addressed *Hearn* but found it was inapposite since in *Hearn* the parties had explicitly relied upon the advice of counsel as a defense, which was not the situation before the court. Nonetheless, the court was

persuaded by the logic in *Hearn's* reasoning. The court went on to say that where a litigant seeks to avoid a statutory protection established for the benefit of his adversary (e.g. a statute of limitations), by a claim that his adversary is estopped from asserting such protection; and where it appears that there is a good faith basis for believing that invasion of the attorney-client privilege would shed light on the validity of such claim of estoppel, the party making such assertion must be deemed to have waived the privilege. *Id*. at 423.

Similarly, in *Johnson Matthey, Inc. v. Research Corp.,* No. 01-cv-8115, 2002 U.S. Dist. LEXIS 13560, 2002 WL 1728566 (S.D.N.Y. July 23, 2002), the court examined *Hearn*, relied on it in part, but limited its application. The plaintiff asserted a fraudulent concealment claim as a basis for overcoming the statute of limitations while the defendant sought disclosure of attorney-client communications to determine when the plaintiff first learned of facts concerning the royalties at issue. *Id*. at *2. In reaching its decision and in addition to addressing *Hearn*, the court also looked at *Rhone-Poulenc,* stating that the Third Circuit had held "the mere fact that a party's state of mind is at issue in a litigation should not effect a broad waiver of the attorney-client privilege," and the court distinguished cases "in which the advice of counsel has been directly placed in issue…from those in which the advice of counsel is merely relevant." The *Johnson Matthey* court went on to say, "[t]he court [in *Rhone-Poulenc*] held that in the latter category of cases, attorney-client *communications* should be shielded from disclosure, although a party may still be required to disclose the *facts* known to it, even if those facts that were communicated to, or learned from, a lawyer. *Id*. at *4 (emphasis in original). In short, in a case where a plaintiff asserted fraudulent concealment in the face of a statute of limitations defense,

the court found that the facts – but not the advice – derived from the communication were discoverable.[3]

Contrary to Mercato's assertion, LifeScan maintains that in this Circuit there is clear cut authority that advice of counsel only becomes an issue when a client asserts a claim or defense based on that advice then attempts to prove that claim or defense by disclosing or describing an attorney-client communication.   LifeScan relies primarily on *Rhone-Poulenc*, to support this position.

In *Rhone-Poulenc*, the principal plaintiff purchased a company, Armour, which produced Factorate, a blood clotter used by hemophiliacs.   Users of Factorate claimed they had been infected by HIV and sued.   The plaintiff sought to have the claims covered under its liability policies but this was denied by the defendant-insurers who charged that *Rhone-Poulenc* was aware when it procured the policies that the transmission of HIV from Factorate was a known risk but failed to disclose this knowledge.   The defendants sought discovery of the information Rhone-Poulenc possessed prior to purchasing the policies.   This information was primarily derived from an investigation in connection with its decision to purchase Armour, including documents prepared by law firms.   *Id*. at 586.   Defendants served subpoenas on the firms.   *Id*. at 855-856.

In analyzing the validity of subpoenas, the court stated that the carriers were seeking to discover more than just information about what facts the plaintiff and Armour had gathered as to

---

[3]  See also, *Conkling v. Turner*, 883 F. 2d 431 (5ᵗʰ Cir. 1989) (in the face of plaintiff's claim that the RICO statute of limitations was tolled because he was unaware of a key fact supporting his claim, the court permitted defendants to depose his attorney but restricted the deposition to facts known by plaintiff as opposed to things known by his attorneys but unknown to him) and see *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, No. 5:97-CV-369BR1, 1998 U.S. Dist. LEXIS 18428, 1998 WL 1742589  (E.D.N.C. Sep. 25, 1998) (the court after addressing *Hearn* precluded plaintiff from obtaining communications between the defendant banks and their attorneys when defendants' witnesses raised attorney-client privilege "in a defensive manner to lines of communication explored by plaintiffs' own counsel").

potential AIDS-related claims, but to discover advice counsel provided as to the legal significance of those facts.  The court stated that there was authority for the proposition that a party can waive the attorney-client privilege by asserting claims or defenses that put an attorney's advice in issue, citing as examples legal malpractice actions and patent infringement matters.  *Id*. at 863.  In those cases, the court stated, the client "has made a decision and taken the affirmative steps…to place the advice of the attorney in issue."  Nevertheless:

> [A]dvice is not an issue merely because it is relevant, and does not necessarily become an issue merely because the attorney's advice might affect the client's state of mind in a relevant manner.  The advice of counsel is placed in issue when the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication.

> [*Id*. at 863 (citations omitted).]

The court went on to note that some decisions have extended the finding of a waiver to cases where a client's state of mind may be an issue and courts have allowed the opposing party discovery of attorney-client communications to test the client's contention.  In making this point, the court referenced *Hearn*.  However, after citing *Hearn*, the court stated:

> These decisions [*Hearn* and others] are of dubious validity.  While the opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed.  Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.

> [*Id*. at 864.]

The court concluded that the plaintiff had not waived the attorney-client privilege by filing suit or placing its state of mind in issue.  Since the plaintiff had not interjected the advice of counsel as an essential element of the claim, the magistrate judge's decision below (which

found in favor of the defendants) was in error. Accordingly, the court reversed the District Court's affirmation of the magistrate judge's decision and remanded for further proceedings. *Id.* at 866.

In *Brock v. Thomas*, 2011 WL 13143117, 2011 U.S. Dist. LEXIS 160853, another court in this District addressed this issue in the wake of the decision in *Rhone-Poulenc*. *Brock* involved a RICO conspiracy in which discovery was sought from the plaintiff's former bankruptcy attorney after he had urged the statute of limitations should be equitably tolled due to the defendant's fraudulent concealment. The defendant argued that the plaintiff waived the privilege by asserting equitable tolling and by disclaiming knowledge of a property sale at issue. *Id*. at *2.

In reaching its decision, the *Brock* court stated that this Circuit has "long held" that attorney advice "is not an issue merely because it is relevant, and does not necessarily become an issue because the attorney's advice might affect the client's state of mind in a relevant manner," *Id.* (quoting *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 863).. The court went on to say that the plaintiff had not placed his communications with the attorney at issue "because he had not disclosed, described or explicitly relied on them." And, while some courts have held that the at-issue implied waiver is viable when the holder makes assertions, the truth of which can only be assessed by examining privileged communications, the Third Circuit appears to have rejected this test. *Id*. at *3.

The issue here as to whether LifeScan has waived attorney-client privilege through its assertion of equitable tolling is indeed a close and difficult question and, as the court stated in *Connell,* 407 F. Supp. 420*,* one where there is remarkably little authority squarely on point. Contrary to Mercato's position, the law is not clear as to this issue. However, the Special Master

finds that *Rhone-Poulenc*, a decision from this Circuit, is generally on point and controlling of this issue.  While Mercato asserts that *Rhone-Poulenc* is limited as an example of a case "in which the attorney-client privilege is sought to be vitiated on grounds other than the narrow issue of statute of limitations," citing WLIG-TV, 879 F. Supp. at 229, the court finds that this decision has broader implications which certainly include the circumstances here and the discovery issue which forms the basis of this motion.

LifeScan has not alleged that it is in any sense relying upon advice of counsel in support of its claims, nor does Mercato directly assert that LifeScan is doing so.  Instead, Mercato charges that in the face of a statute of limitations defense, Plaintiff contends the statute is equitably tolled.  The premise behind the tolling is that Alliance and individuals and entities then associated with this now defunct company at the center of this lawsuit, engaged in deceptive actions and concealed facts which prevented Plaintiff from timely discovering the true nature of the scheme Alliance concocted to sell non-retail DTS but to be reimbursed for retail DTS.  In part, LifeScan employed attorneys to investigate Alliance's conduct and, according to Mercato, by employing counsel to investigate Alliance, both Plaintiffs have now placed communications with counsel and advice rendered in issue.  Mercato seeks production of documents listed on the privilege log (between 2012 and 2015) "that very likely reveal how and when [LifeScan] discovered its injury."

A party's reliance upon counsel's assistance in investigating an alleged fraud is not the same as asserting a party has relied upon advice of counsel.  As the Special Master sees it, up to and including this point of the litigation, Plaintiff has not affirmatively employed its communications with counsel in support of its claim or as a "defense" to Defendant's assertion that LifeScan has violated the statute of limitations by failing to timely file suit.

19

However, this determination does not rest there.  A further inquiry is required.  As the court stated in *Rhone-Poulenc*:

> In summary, we emphasize that our holding is not meant to preclude disclosure of the knowledge the insureds possessed at the time they obtained coverage.  Facts are discoverable, the legal conclusions regarding those facts are not.  A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer.

[*Id*. at 864.]

Therefore, to properly assess this matter and in order to determine whether the disputed documents, in fact, reflect legal advice rather than factual information as part of a business-related investigation, the Special Master finds that an *in camera* review should be conducted.  Given the volume of documents which Mercato charges fall into this category, there is no practical way for the court to conduct a cohesive review of each document.  Therefore, the Special Master **ORDERS** that Mercato again identify no more than ten (10) documents from the privilege log for *in camera* review while LifeScan is **ORDERED** to produce those documents to the Special Master.

Finally, there remains the issue of the 133 redacted documents which Mercato says Plaintiff failed to include on the privilege log.  LifeScan counters that these documents do not merely involve diabetes test strips, but also reflect rebates for other products manufactured by Johnson & Johnson, LifeScan's then parent company.  The parties have otherwise collectively agreed to handle documents of this nature by redacting commercially sensitive information.  Moreover, Mercato has possessed these documents since 2020 and only now raises this issue.  Given that LifeScan's position has been unrefuted in Mercato's reply, the Special Master sees no

reason to order production of these documents or otherwise to include those documents under a revised privilege log.  Therefore, this aspect of Mercato's motion to compel is **DENIED**.

## VII.   Conclusion

For the reasons set forth in this Order and Opinion, within the parameters described above, Defendant Mercato's motion is **GRANTED** in part and **DENIED** in part.

Specifically, the Special Master **ORDERS** as follows:

1. To the extent that Mercato seeks an Order compelling LifeScan to provide a new, "adequate" privilege log, Mercato's motion is **DENIED**;

2. As to log entries which do not list attorneys as senders or recipients, LifeScan is **ORDERED** to provide an adequate description as to how these communications between non-lawyers are privileged or protected;

3. Within seven (7) days, Mercato is **ORDERED** to identify no more than ten (10) documents from LifeScan's privilege log as to entries which it contends concern business as opposed to legal advice;

4. Within seven (7) days of Mercato identifying documents described immediately above, LifeScan is **ORDERED** to produce those documents for *in camera* review to the Special Master;

5. As to documents which Mercato contends are communications between LifeScan and its counsel from 2012 to 2015 that "very likely reveal when and how it discovered its injury," Mercato is ordered to identify no more than ten (10) documents for the purpose of submitting those documents for *in camera* review to the Special Master;

6.  Within seven (7) days of Mercato identifying the documents described immediately above, LifeScan is **ORDERED** to submit those documents for *in camera* review to the Special Master; and

7.  As to the 133 documents that Mercato charges LifeScan has redacted but failed to include in its privilege log, this aspect of the motion is **DENIED**.

Date:   December 18, 2023

*Dennis M. Cavanaugh*
DENNIS M. CAVANAUGH
Special Master

22