UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIFESCAN, INC., et al.,<br><br>     Plaintiffs,<br>v.<br><br>JEFFREY C. SMITH., et al.,<br><br>     Defendants | Civil Action No. 17-5552 and 19-8761 (CCC)(JSA)<br><br>**ORDER & OPINION<br>OF THE SPECIAL MASTER<br>JUDGE DENNIS CAVANAUGH, RET.<br>AS TO MERCATO'S MOTION TO<br>COMPEL PLAINTIFF ROCHE TO<br>PRODUCE DOCUMENTS WITHHELD<br>AS PRIVILEGED AND TO PROVIDE AN<br>ADEQUATE PRIVILEGE LOG** |
| ROCHE DIAGNOSTICS CORPORATION, et al.,<br><br>     Plaintiffs,<br>v.<br><br>JEFFREY C. SMITH., et al.,<br><br>     Defendants | |

  Before the Special Master is a motion filed by the Mercato Defendants ("Mercato" or "Defendant")[1]. In this motion, Mercato seeks an order compelling Plaintiff Roche Diagnostics Corporation/Roche Diabetes Care Inc. ("Roche" or "Plaintiff") to produce documents withheld as privileged and to provide an adequate privilege log. This motion is substantially similar to Defendant's motion as to Plaintiff LifeScan which is the subject of a separate Order and Opinion.

---

[1] According to the movant, "Mercato," collectively refers to defendants Mercato Management, LLC; Mercato Partners, LLC; Mercato Partners Growth II GP, LLC; Mercato Partners Growth II, LP; Mercato Partners Growth Affiliates II, LP; Mercato Partners AI II, LP; Mercato Partners Ingram, LLC; and Mercato Partners Ingram Co-Invest., LLC. Throughout this Order and Opinion, these entities will simply be referenced as Mercato.

More specifically, Mercato seeks an Order requiring Roche to:

1. Produce documents wrongly logged as privileged when there is no discernible claim as such;

2. Produce a revised privilege log remedying categorical deficiencies such as a failure to identify the author, date, recipients or subject; and

3. Produce documents relevant to Mercato's statute of limitations defense because Roche "has elected to waive privilege…due to its reliance on the equitable tolling doctrine."

In deciding this motion, the Special Master has reviewed and considered the following items:

1. Mercato's September 8, 2023 letter-brief in support of its motion to compel with exhibits;

2. Roche's September 19, 2023 letter-brief in opposition to Mercato's motion with attachments;

3. Mercato's September 25, 2023 reply letter-brief which addresses both motions.

For the reasons set forth below, Mercato's motion to compel Roche to produce documents improperly withheld as privileged and to provide an adequate privilege log is **GRANTED** in part and **DENIED** in part.

I. **Procedural History and Factual Background**

Yet again, the Special Master writes principally for the benefit of the parties before the court. Therefore, this discussion below will be limited to the procedural history and operative facts directly pertinent to this motion.

This litigation consists of two separate lawsuits which have been coordinated for discovery purposes but not consolidated. The lawsuits arise out of what the parties describe as the "Alliance fraud." That fraud centers on the distribution, sale and reimbursement of diabetic

test strips ("DTS") manufactured by Plaintiffs, LifeScan, Inc. ("LifeScan") and Roche. Plaintiffs charge that a now-bankrupt entity known as Alliance Medical Holdings LLC ("Alliance") through its officers, directors, investors and lenders engaged in a scheme to sell nonretail DTS (which tests blood glucose levels for diabetic patients) but were reimbursed by pharmacy benefit managers ("PBMs") for the sale of higher priced retail strips. This allowed Alliance to profit from the difference and resulted in LifeScan and Roche paying excessive rebates to PBMs.

Mercato was one of the investors in Alliance. Plaintiffs charge that Defendant was knowledgeable about the fraud and profited from the scheme while it was ongoing.

This motion centers on Roche's privilege log dated November 19, 2021. That log, in the form of a spreadsheet, contains 282 items. Mercato's submission is silent as to when the privilege log was received but does state that on August 23, 2023, Mercato sent Roche a deficiency letter which included a request to meet and confer as to the log.[2] Mercato goes on to say that after sending this letter, it reiterated its request to meet and confer and warned Roche that it intended to file a motion to compel sufficiently in advance of the Special Master's scheduled September 28, 2023 conference so as to fully brief the issue. According to Mercato, the only response from Roche occurred on September 5, 2023, at which time Plaintiff indicated that it was in the process of preparing a supplemental production but, as of the date this motion was filed, has failed to do so.

## II.     Mercato's Argument

Mercato premises this motion upon what Defendant contends are three categories of deficiencies: (1) Mercato asserts that numerous documents are not facially privileged; (2) the log

---

[2] Roche's opposition states that the log was served November 19, 2021 – more than a year and nine months before Defendant issued a deficiency letter.

fails to include necessary information; and (3) Roche cannot rely on equitable tolling as to documents relevant to Defendant's statute of limitations defense.

As to the documents for which there is no discernable claim of privilege, citing examples, Mercato says many of the designations fail to include the identity of a single attorney and appear to pertain to routine business matters with no explanation as to why the documents were designated as privileged. Mercato emphasizes that when deciding other motions in this litigation, the Special Master has considered this issue and found that communications which relate to business matters, not legal matters, are not protected by the attorney-client privilege and that business advice is not privileged simply because it emanates from an attorney. As to these documents, Mercato "requests that it be permitted to identify a selection of documents…for *in camera* review…to assess the propriety" of the privilege claims.

As to Defendant's assertion that the log is wholly inadequate, Mercato says that the existing log fails to contain information allowing it to assess the privilege assertions as required under Federal rules. Federal Rule of Civil Procedure 16(b)(5)(A)(ii) obligates a party to produce a log adequately describing the nature of the documents which are not disclosed, but Roche has failed to do so. Defendant cites as examples documents designated as protected by the attorney work product doctrine but for which the log fails to identify any authors or recipients.

As to Roche withholding documents relevant to Mercato's statute of limitations defense, Plaintiffs (Roche and LifeScan) contend that Defendants have collectively engaged in fraudulent concealment which would toll the statute of limitations. By invoking this equitable doctrine, a party impliedly waives attorney-client privilege over communications relevant to when that party discovered its injury, citing among other cases, *WLIG-TV, Inc. v. Cablevision Sys. Corp.*, 879 F. Supp. 229 (E.D.N.Y. 1994). Mercato maintains that Roche is using attorney-client privilege as

both a sword and a shield, an action not permitted under Third Circuit law. By invoking equitable tolling, Roche has waived its privilege over communications "pre-dating March 2015 (as it relates to Mercato)" and must disclose those communications. In support of this, Mercato cites cases from various districts and circuits for the proposition that a party waives privilege over documents relevant to the limitations period when that party asserts equitable tolling principles. Here, Roche has designated "numerous communications between 2011 and 2015 that very likely reveal how and when it discovered its injury." Mercato concludes that the Special Master should compel Roche to produce documents and communications pre-dating March 2015 that relate to when Roche learned or should have learned of its alleged injury.

### III.     Roche's Opposition

Preliminarily, Roche notes that this motion is almost identical to one Mercato has filed to compel LifeScan to produce documents withheld as privileged. Although Roche offered to agree that the Special Master's decision in the LifeScan motion would apply here, Mercato has refused to do so. Plaintiff also makes clear that Roche provided its log on November 19, 2021, but not until September 8, 2023, did Mercato challenge the entries.

While Roche challenges each of Mercato's arguments, Plaintiff primarily attacks Defendant's position that Roche has waived privilege by asserting equitable tolling.

Briefly stated, Mercato's assertion that a party waives privilege when it argues fraudulent concealment is not the law in this Circuit. If true, says Plaintiff, this would represent "a massive loophole in the attorney-client privilege." In this Circuit, advice of counsel is placed in issue only when a client asserts a claim or defense and attempts to prove that claim or defense by disclosing or describing an attorney-client communication, citing *Rhone-Poulenc Rorer Inc. v.*

*Home Indem. Co.*, 32 F. 3d 851, 863 (3rd Cir. 1994) ("*Rhone-Poulenc*").  Roche has not relied on or described its attorney-client communications as part of its equitable tolling defense.

Roche relies on *Brock v. Thomas*, No. 10-687, 2011 WL 13143117, 2011 U.S. Dist. LEXIS 160853 (E.D. Pa. June 28, 2011), in which the defendants argued that the plaintiff waived privilege by asserting equitable tolling to a statute of limitations defense.  The *Brock* court, citing *Rhone-Poulenc*, found that the plaintiff had not relied upon advice from his attorney and therefore defendants could not discover privileged communications.

Roche goes on to address each of the cases cited by Mercato in support of this position, which it argues are either misquoted, implicitly rejected by this Circuit, or do not constitute persuasive authority.[3]  Therefore, since all of these cases apply a test that the Third Circuit has rejected, "none of these cases provide a persuasive basis…to find a waiver of privilege."  [See, Roche's opposition at p. 8.]

Finally, Roche maintains that its claim for privilege over documents from 2011 to 2015 was not designed to hide information about its investigations into Alliance so as to obscure when it discovered its injury.  Instead, the company has already produced the documentary record into the investigation from this time frame.  Therefore, Roche has produced non-privileged documents on this subject which Mercato can rely on as well as the deposition testimony of individual witnesses.

---

[3] Those cases which Defendant cites and distinguishes are *Yarnall v. Philadelphia School District,* 57 F. Supp. 3d 410 (E.D. Pa. 2014) (misquoted); *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash. 1975) (rejected by this Circuit); *WLIG-TV, Inc. v. Cablevision Sys. Corp.*, 879 F. Supp. 229 (E.D.N.Y. 1994) (rejected); *Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, 2009 WL 3415375, at *2 (N.D.Cal. Oct. 21, 2009) (rejected); *Outpost Solar, LLC v. Henry, Henry & Underwood, P.C.*, 2017 WL 6729292 (Tenn.Ct.App. Dec. 29, 2017) (rejected); *Connell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420, 423 (S.D.N.Y. 1976) (rejected); and *Conkling v. Turner*, 883 F. 2d 431 (5th Cir. 1989) (rejected). Roche also contends that Mercato misstated the holding in two cases in which the court did not find privilege had been waived –*Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, No. 5:97-CV-369BR1, 1998 U.S. Dist. LEXIS 18428, 1998 WL 1742589  (E.D.N.C. Sep. 25, 1998) and *Johnson Matthey, Inc. v. Research Corp.*, No. 01-cv-8115, 2002 U.S. Dist. LEXIS 13560,  2002 WL 1728566  (S.D.N.Y. July 23, 2002).

Turning to the construction of the log itself, Roche says the deficiencies described by Mercato do not stand up to scrutiny.

As to communications which do not identify attorneys at all, correspondence between non-attorney employees is still privileged if it reflects or relays legal advice, citing *TransWeb, LLC v. 3M Innovative Props. Co.*, No. 10-cv-4413, 2012 U.S. Dist. LEXIS 97534, 2012 WL 2878076, at *3 (D.N.J. Apr. 12, 2012). Indeed, says Roche, Mercato has taken the same tact on its own privilege log. Similarly, as to three documents entitled "Meeting Notes," produced in redacted form, Roche says that its redactions were appropriately limited – just nine lines, all reflecting legal advice.

As to a series of Excel spreadsheets, Roche says it produced copies of these spreadsheets in 2019 and in a more recent supplemental production.

Roche also addresses Mercato's position that it improperly designated documents as privileged that concern routine business matters. Roche, addressing each document in turn, maintains that the descriptions confirm that the documents were legal in nature, and therefore privileged. Finally, in response to Mercato's claim that the formatting of the log is deficient – Roche maintains that this is a standard format commonly used by litigants, containing the same fields as those employed by other parties in this action.

### IV. Mercato's Reply

In its reply (which addresses its motions as to both Plaintiffs), Mercato principally examines the issue of whether a party asserting equitable tolling waives its attorney-client privilege in the face of a statute of limitations defense. Mercato urges that Plaintiffs have misrepresented the holding in *Rhone-Poulenc*. According to Mercato, *Rhone-Poulenc* and later cases which cite that decision are "examples of cases in which the attorney-client privilege is

7

sought to be vitiated on grounds *other than the narrow issue of statute of limitations.*" (Emphasis provided by Mercato). Therefore, *Rhone-Poulenc* does not stand for the proposition that the only way a party waives privilege is by placing an attorney's advice in issue. Rather, this is one example in which a court may find waiver. Here, Plaintiff's "embrace" of the equitable tolling doctrine to defeat the statute of limitations results in a waiver of privilege as to communications relevant to when and how Plaintiff discovered its alleged injuries.

Moreover, both Plaintiffs, who are represented by the same law firm, have put their counsel's advice in issue by arguing that they relied on outside counsel to investigate Alliance but still could not discover injury. As an example, Mercato points to LifeScan's pleadings in which it describes dispatching personnel to Utah to investigate the Alliance fraud. The personnel included outside counsel. Plaintiffs charge that Alliance "stymied" this investigation which might have uncovered evidence to support a lawsuit years earlier. Hence, Plaintiffs are using the involvement of outside counsel as both a sword and shield. The privilege log shows Plaintiff LifeScan was represented by counsel as far back as 2013 and is replete with designations for communications with Patterson Belknap and non-attorneys throughout 2014 and 2015. While Plaintiffs have asserted that concealment efforts were at the heart of the Alliance scheme, documents describing conversations as to Alliance have been withheld. Simply stated, Plaintiffs' reliance on their outside counsel's investigation of Alliance, including advice as to when their claims accrued, should result in a waiver.

As to the adequacy of the log, Mercato says that Plaintiffs could have, but failed to, remedy designations that lack basic information. As to communications which do not involve lawyers, Mercato agrees that communications between non-attorneys can be privileged if they reflect legal advice obtained from counsel. The problem here is that Plaintiffs have failed to

assert how these communications are privileged and bears the burden of doing so. Therefore, Plaintiffs should be required to provide a description as to how a communication between non-lawyers is privileged.

## V.    General Review of Privilege Log

Roche's privilege log, as noted, is in the form of a spreadsheet and contains 280 items. Typical of such logs, there are rows and columns ("fields") containing subject headings that include the basis for the privilege, the nature and description of the document, the author, the sender, other recipients, and Bates stamp numbers which correspond to the documents.

Given the relative volume of the documents listed in the log, it is not practical for the Court to provide a detailed analysis of each entry or even of each entry which Mercato contends is deficient. However, in terms of certain alleged deficiencies, the following are noted.

Document numbers 179-182 *appear* to consist of a summary and spreadsheets reflecting Roche sales to Medsource, Alliance's predecessors. They are designated as being protected by attorney-client privilege, yet no attorney (indeed no one) is listed as an author or recipient of the documents and on their face would seem to be business records, not communications relating to legal advice.

Documents 25-32, also designated at attorney-client privileged, consist of Word documents with titles that include "Brand Protection Activities Update – July 2016" and "Pipeline Agenda." Yet, despite the claim of attorney-client privilege, there is no indication that the documents were produced by or directed to counsel for Roche.

As noted, Mercato takes the position that there are communications between 2011 and 2015 which have been withheld as privileged that "very likely" reveal how and when Roche discovered its injury. Mercato identifies a series of documents as falling into this category.

9

They are documents 9, 10, 53, 70, 71, 76, 92, 231, 239, 254, 255, 256 and 257. While many, although not all, reference Medsource (Alliance's predecessor), there is simply no cogent way to assess whether – or not – these entries reflect documents which would support Mercato's statute of limitations defenses and/or undermine Roche's position that the defendants collectively engaged in fraudulent concealment tolling the statute.

In short, there are deficiencies within the log but this does not support the proposition that Roche failed to provide an "adequate" log on the whole.

**VI.   Analysis and Findings**

In the Special Master's view, this motion is complicated by the fact that the parties do not squarely meet the issues head on. That is, is this a motion to compel or is this a motion seeking a revised privilege log as a prelude to such a motion or is it both? With this said, the Court will address what appear to be the principal issues which form the basis of this motion.

As to Mercato's contention that the overall format of the privilege log is fatally deficient, the Special Master finds that this contention is without substantial merit.

While the Federal Rules of Civil Procedure do not employ the term privilege "logs" *per se*, Fed. R. Civ. P. 26(b)(5)(A), entitled Claiming Privilege or Protecting Trial-Preparation Materials, effectively governs the preparation of "logs." The Rule provides:

> (A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) Expressly make the claim; and
>
> (ii) Describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the claim.

Put another way, a party's log need only provide adequate information to allow another party to assess whether the privilege claims are viable. It is the finding of the Special Master that Roche's privilege log generally meets this criteria.

The log created by Roche follows a standard or common format (and a format employed by the other parties to this litigation). It contains all the subject headings that typically appear in a privilege log – document number, date, privilege basis, description, senders and recipients, etc. Accordingly, the log facially meets the requirements set forth under Fed. R. Civ. P. 26(b)(5)(A), i.e., the log generally provides information which allows other parties to assess Roche's claims of privilege.

Nevertheless, this does not mean that the log is not without some deficiencies. As the movant correctly points out, there are some entries in which the log indicates that documents are being withheld as privileged or protected yet do not list lawyers as senders or recipients of the documents. Accordingly, these entries do not adequately describe the nature of the document in a manner which allows a party to assess the validity of the claim. As to these entries, Roche is **ORDERED** to provide an adequate description as to how these communications between non-lawyers is privileged or protected.

As to Mercato's request that it be permitted to identify a selection of documents from the log for *in camera* review to assess whether the advice rendered is business advice or legal advice, the Special Master grants this request. Therefore, Mercato is **ORDERED** to identify no more than 10 documents from the privilege log for the purpose of *in camera* review, while Roche is **ORDERED** to produce those documents for *in camera* review by the Special Master.

The Special Master now turns his attention to the category of documents upon which the parties most seriously disagree as to their privilege status and which they seem to suggest are the

most significant to this litigation.  Defendant categorizes these documents as communications between LifeScan and its counsel between 2011 and 2015 "that very likely reveal when and how it discovered its injury."  [See, Mercato's Letter-Brief at p. 10; Exhibit A at Doc. Nos. 9, 10, 53, 70, 71, 76, 92, 231, 239, 254, 255, 256 and 257.]  As to these documents, Mercato says they are discoverable due to what the movant contends is Roche's reliance on the equitable tolling doctrine.  Mercato asserts that "the law is clear" that when a plaintiff relies on the equitable tolling doctrine to toll the statute of limitations, it waives privilege over communications that could reveal when a claim has accrued.  On the other hand, Roche maintains that in the Third Circuit, this is not the law and instead only when a party actively places advice of counsel in issue to support a claim or defense is the privilege waived.  The parties, therefore, disagree as to the controlling authority.

Mercato relies on a series of decisions from District courts and Circuit courts outside of the Third Circuit.  These opinions, in turn, are founded upon a 1975 decision emanating from the Eastern District of Washington entitled *Hearn v. Rhay*, 68 F.R.D. 574, (E.D.Wash. 1975).  Given the significance of *Hearn*, the Special Master will address that decision in some detail here.

In *Hearn*, the court found that an implied waiver existed when (1) there was an assertion of privilege arising from an affirmative act, such as filing suit; (2) through the affirmative act, a party put protected information at issue by making it relevant to the case; and (3) the application of the privilege denied the opposing party access to information vital to the defense.  *Id*. at 581.  *Hearn* was a civil rights action brought by a prison inmate who sought discovery from the defendant penitentiary personnel as to legal advice rendered by the Washington State attorney general.  The defendants asserted their actions were protected by good faith immunity.  To prove

his claim, plaintiff was obligated to show that the prison officials had acted in bad faith. *Id*. at 578.

The threshold issue in *Hearn* was whether the communications between the officials and the attorney general were protected by attorney-client privilege even though some of the communications were shared with third parties. The court concluded that communications which involved third parties were not privileged. However, the court went on to say that the question remained whether the defendants could be compelled to answer questions and produce documents as to communications received which did not include the participation of third parties, "an issue of first impression." The court then recognized what it described as a "new and narrowly limited exception for the attorney-client privilege which applies to civil rights suits against state officials…wherein the defendant asserts the affirmative defense of good faith immunity." *Id*. at 580.

It is this narrow and limited decision in *Hearn*, which, as noted, is relied upon throughout subsequent decisions that Mercato says, show that the "law is clear" that reliance upon the equitable tolling doctrine constitutes a waiver. Those decisions include *WLIG-TV, Inc. v. Cablevision Systems Corporation*, 979 F. Supp. 229 (E.D.N.Y. 1994); *Landmark Screens, Ltd. Liab. Co. v. Morgan, Lewis & Bockius Ltd. Liab. P'ship*, No. C08-02581, 2009 U.S. Dist. LEXIS 102579, 2009 WL 3415375 (N.D. Cal. Oct. 21, 2009); and *Outpost Solar, LLC v. Henry, Henry & Underwood, P.C.*, No. M2016-00297, 2017 WL 6729292, 2017 Tenn. App. LEXIS 841, at *21-22 (Ct. App. Dec. 29, 2017).

While some courts have cited *Hearn* favorably, other courts across the country addressing *Hearn* have either distinguished that decision or, having acknowledged the holding in

*Hearn*, failed to rely upon it while determining the existence of a waiver or have limited its application.

For example, in *Connell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420 (S.D.N.Y. 1976), the defendants in a securities litigation moved for summary judgment based on the statute of limitations. The plaintiffs charged that the defendants were estopped from asserting the bar "by virtue of the fact that they had prevailed upon plaintiffs to withhold suit[.]" *Id*. at 422. The defendants sought communications with the plaintiffs' former attorneys to determine the actual reason they withheld suit. In reaching its decision, the New York District Court noted that it was "remarkable how little authority appears to be squarely on point." *Id*. The court then addressed *Hearn* but found it was inapposite since in *Hearn* the parties had explicitly relied upon the advice of counsel as a defense, which was not the situation before the court. Nonetheless, the court was persuaded by the logic in *Hearn's* reasoning. The court went on to say that where a litigant seeks to avoid a statutory protection established for the benefit of his adversary (e.g. a statute of limitations), by a claim that his adversary is estopped from asserting such protection; and where it appears that there is a good faith basis for believing that invasion of the attorney-client privilege would shed light on the validity of such claim of estoppel, the party making such assertion must be deemed to have waived the privilege. *Id*. at 423.

Similarly, in *Johnson Matthey, Inc. v. Research Corp.,* No. 01-cv-8115, 2002 U.S. Dist. LEXIS 13560, 2002 WL 1728566 (S.D.N.Y. July 23, 2002), the court examined *Hearn*, relied on it in part, but limited its application. The plaintiff asserted a fraudulent concealment claim as a basis for overcoming the statute of limitations while the defendant sought disclosure of attorney-client communications to determine when the plaintiff first learned of facts concerning the royalties at issue. *Id*. at *2. In reaching its decision and in addition to addressing *Hearn*, the

14

court also looked at *Rhone-Poulenc,* stating that the Third Circuit had held "the mere fact that a party's state of mind is at issue in a litigation should not effect a broad waiver of the attorney-client privilege," and the court distinguished cases "in which the advice of counsel has been directly placed in issue…from those in which the advice of counsel is merely relevant." The *Johnson Matthey* court went on to say, "[t]he court [in *Rhone-Poulenc*] held that in the latter category of cases, attorney-client *communications* should be shielded from disclosure, although a party may still be required to disclose the *facts* known to it, even if those facts that were communicated to, or learned from, a lawyer. *Id*. at *4 [emphasis in original]. In short, in a case where a plaintiff asserted fraudulent concealment in the face of a statute of limitations defense, the court found that the facts – but not the advice – derived from the communication were discoverable.[4]

Contrary to Mercato's assertion, Roche maintains that in this Circuit there is clear cut authority that advice of counsel only becomes an issue when a client asserts a claim or defense based on that advice then attempts to prove that claim or defense by disclosing or describing an attorney-client communication. Roche relies primarily on *Rhone-Poulenc*, to support this position.

In *Rhone-Poulenc*, the principal plaintiff purchased a company (Armour) which produced Factorate, a blood clotter used by hemophiliacs. Users of Factorate claimed they had been infected by HIV and sued. The plaintiff sought to have the claims covered under its liability

---

[4] See also, *Conkling v. Turner*, 883 F. 2d 431 (5th Cir. 1989) (in the face of plaintiff's claim that the RICO statute of limitations was tolled because he was unaware of a key fact supporting his claim, the court permitted defendants to depose his attorney but restricted the deposition to facts known by plaintiff as opposed to things known by his attorneys but unknown to him) and see *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, No. 5:97-CV-369BR1, 1998 U.S. Dist. LEXIS 18428, 1998 WL 1742589 (E.D.N.C. Sep. 25, 1998) (the court after addressing *Hearn* precluded plaintiff from obtaining communications between the defendant banks and their attorneys when defendants' witnesses raised attorney-client privilege "in a defensive manner to lines of communication explored by plaintiffs' own counsel").

court also looked at *Rhone-Poulenc,* stating that the Third Circuit had held "the mere fact that a party's state of mind is at issue in a litigation should not effect a broad waiver of the attorney-client privilege," and the court distinguished cases "in which the advice of counsel has been directly placed in issue…from those in which the advice of counsel is merely relevant." The *Johnson Matthey* court went on to say, "[t]he court [in *Rhone-Poulenc*] held that in the latter category of cases, attorney-client *communications* should be shielded from disclosure, although a party may still be required to disclose the *facts* known to it, even if those facts that were communicated to, or learned from, a lawyer. *Id*. at *4 [emphasis in original]. In short, in a case where a plaintiff asserted fraudulent concealment in the face of a statute of limitations defense, the court found that the facts – but not the advice – derived from the communication were discoverable.[4]

Contrary to Mercato's assertion, Roche maintains that in this Circuit there is clear cut authority that advice of counsel only becomes an issue when a client asserts a claim or defense based on that advice then attempts to prove that claim or defense by disclosing or describing an attorney-client communication. Roche relies primarily on *Rhone-Poulenc*, to support this position.

In *Rhone-Poulenc*, the principal plaintiff purchased a company (Armour) which produced Factorate, a blood clotter used by hemophiliacs. Users of Factorate claimed they had been infected by HIV and sued. The plaintiff sought to have the claims covered under its liability

---

[4] See also, *Conkling v. Turner*, 883 F. 2d 431 (5th Cir. 1989) (in the face of plaintiff's claim that the RICO statute of limitations was tolled because he was unaware of a key fact supporting his claim, the court permitted defendants to depose his attorney but restricted the deposition to facts known by plaintiff as opposed to things known by his attorneys but unknown to him) and see *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, No. 5:97-CV-369BR1, 1998 U.S. Dist. LEXIS 18428, 1998 WL 1742589 (E.D.N.C. Sep. 25, 1998) (the court after addressing *Hearn* precluded plaintiff from obtaining communications between the defendant banks and their attorneys when defendants' witnesses raised attorney-client privilege "in a defensive manner to lines of communication explored by plaintiffs' own counsel").

policies but this was denied by the defendant-insurers who charged that *Rhone-Poulenc* was aware when it procured the policies that the transmission of HIV from Factorate was a known risk but failed to disclose this knowledge. The defendants sought discovery of the information Rhone-Poulenc possessed prior to purchasing the policies. This information was primarily derived from an investigation in connection with its decision to purchase Armour, including documents prepared by law firms. *Id*. at 586. Defendants served subpoenas on the firms. *Id*. at 855-856.

In analyzing the validity of subpoenas, the court stated that the carriers were seeking to discover more than just information about what facts the plaintiff and Armour had gathered as to potential AIDS-related claims, but to discover advice counsel provided as to the legal significance of those facts. The court stated that there was authority for the proposition that a party can waive the attorney-client privilege by asserting claims or defenses that put an attorney's advice in issue, citing as examples legal malpractice actions and patent infringement matters. *Id*. at 863. In those cases, the court stated, the client "has made a decision and taken the affirmative steps…to place the advice of the attorney in issue." Nevertheless:

> [A]dvice is not an issue merely because it is relevant, and does not necessarily become an issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue when the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication.
>
> [*Id*. at 863 (citations omitted).]

The court went on to note that some decisions have extended the finding of a waiver to cases where a client's state of mind may be an issue and courts have allowed the opposing party discovery of attorney-client communications to test the client's contention. In making this point, the court referenced *Hearn*. However, after citing *Hearn*, the court stated:

16

> These decisions [*Hearn* and others] are of dubious validity. While the opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed. Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.
>
> [*Id.* at 864.]

The court concluded that the plaintiff had not waived the attorney-client privilege by filing suit or placing its state of mind in issue. Since the plaintiff had not interjected the advice of counsel as an essential element of the claim, the magistrate judge's decision below (which found in favor of the defendants) was in error. Accordingly, the court reversed the District Court's affirmation of the magistrate judge's decision and remanded for further proceedings. *Id.* at 866.

In *Brock v. Thomas*, No. 10-687, 2011 WL 13143117, 2011 U.S. Dist. LEXIS 160853, another court in this District addressed this issue in the wake of the decision in *Rhone-Poulenc*. *Brock* involved a RICO conspiracy in which discovery was sought from the plaintiff's former bankruptcy attorney after he had argued the statute of limitations should be equitably tolled due to the defendant's fraudulent concealment. The defendant argued that the plaintiff waived the privilege by asserting equitable tolling and by disclaiming knowledge of a property sale at issue. *Id.* at *2.

In reaching its decision, the *Brock* court stated that this Circuit has "long held" that attorney advice "is not an issue merely because it is relevant, and does not necessarily become an issue because the attorney's advice might affect the client's state of mind in a relevant manner," *Id.* (quoting *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 863). The court went on to say that the

17

plaintiff had not placed his communications with the attorney at issue "because he had not disclosed, described or explicitly relied on them." *Id.* And, while some courts have held that the at-issue implied waiver is viable when the holder makes assertions, the truth of which can only be assessed by examining privileged communications, the Third Circuit appears to have rejected this test. *Id*. at *3.

The issue here as to whether Roche has waived attorney-client privilege through its assertion of equitable tolling is indeed a close and difficult question and, as the court stated in *Connell,* 407 F. Supp. 420*,* one where there is remarkably little authority squarely on point. Contrary to Mercato's position, the law is not clear as to this issue. However, the Special Master finds that *Rhone-Poulenc*, a decision from this Circuit, is generally on point and controlling of this issue. While Mercato asserts that *Rhone-Poulenc* is limited as an example of a case "in which the attorney-client privilege is sought to be vitiated on grounds other than the narrow issue of statute of limitations," citing *WLIG-TV,* 879 F. Supp. at 229, the court finds that this decision has broader implications which certainly include the circumstances here and the discovery issue which forms the basis of this motion.

Roche has not alleged that it is in any sense relying upon advice of counsel in support of its claims, nor does Mercato directly assert that Roche is doing so. Instead, Mercato charges that in the face of a statute of limitations defense, Plaintiff contends the statute is equitably tolled. The premise behind the tolling is that Alliance and individuals and entities then associated with this now defunct company at the center of this lawsuit, engaged in deceptive actions and concealed facts which prevented Plaintiff from timely discovering the true nature of the scheme Alliance concocted to sell non-retail DTS but to be reimbursed for retail DTS. In part, LifeScan then employed attorneys (who now also represent Roche) to investigate Alliance's conduct.

18

According to Mercato, by employing counsel to investigate Alliance, both Plaintiffs have now placed communications with counsel and advice rendered in issue. Mercato seeks production of documents listed on the privilege log (between 2011 and 2015) "that very likely reveal how and when [Roche] discovered its injury."

A party's reliance upon counsel's assistance in investigating an alleged fraud is not the same as asserting a party has relied upon advice of counsel. As the Special Master sees it, up to and including this point of the litigation, Plaintiff has not affirmatively employed its communications with counsel in support of its claim or as a "defense" to Defendant's assertion that Roche has violated the statute of limitations by failing to timely file suit.

However, this determination does not rest there. A further inquiry is required. As the court stated in *Rhone-Poulenc*:

> In summary, we emphasize that our holding is not meant to preclude disclosure of the knowledge the insureds possessed at the time they obtained coverage. Facts are discoverable, the legal conclusions regarding those facts are not. A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer.

[*Id*. at 864.]

Therefore, to properly assess this matter and to determine whether the disputed documents, in fact, reflect legal advice rather than factual information as part of a business-related investigation, the Special Master **ORDERS** that Roche submit for *in camera* review document numbers 9, 10, 53, 70, 71, 76, 92, 231, 239, 254, 255, and 257.

## VII. Conclusion

For the reasons set forth in this Order and Opinion, within the parameters described above, Defendant Mercato's motion is **GRANTED** in part and **DENIED** in part.

Specifically, the Special Master **ORDERS** as follows:

1. To the extent that Mercato seeks an Order compelling Roche to provide a new, "adequate" privilege log, Mercato's motion is **DENIED**;

2. As to log entries which do not list attorneys as senders or recipients, Roche is **ORDERED** to provide an adequate description as to how these communications between non-lawyers are privileged or protected;

3. Within seven (7) days, Mercato is **ORDERED** to identify no more than ten (10) documents from Roche's privilege log as to entries which it contends concern business as opposed to legal advice;

4. Within seven (7) days of Mercato identifying documents described immediately above, Roche is **ORDERED** to produce those documents for *in camera* review to the Special Master; and

5. As to document numbers 9, 10, 53, 70, 71, 76, 92, 231, 239, 254, 255 and 257, Roche is **ORDERED** to submit those documents for *in camera* review to the Special Master within seven (7) days.

Date:  December 18, 2023                *Dennis M. Cavanaugh*
                                         DENNIS M. CAVANAUGH
                                         Special Master